UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JURJITA VAICAITIENE, on behalf of
herself and all others similarly
situated,

                  Plaintiff,

      - against -

PARTNERS IN CARE, INC.; AND
VISITING NURSE SERVICE OF NEW
YORK, INC.;

            Defendants.

---

**No. 04 Civ. 9125 (RMB)**

**ECF CASE**

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR NOTICE

       Plaintiff respectfully submits this memorandum of
law in support of her motion for an order pursuant to
section 216(b) of the Fair Labor Standards Act ("FLSA"), 29
U.S.C.A. § 216(b) directing notice of this action to the
following similarly situated individuals:

> All non-exempt current and former employees of
> Partners in Care and Visiting Nurse Service of
> New York who were not paid overtime at any time
> during the past three years.

       Plaintiff seeks damages on behalf of the
foregoing class and equitable relief enjoining defendant
from further violations of the FLSA.

**Factual Background**

VNSNY, together with its wholly-owned subsidiary Partners in Care, is the largest not-for-profit home health care agency in the United States. Declaration of Karl J. Stoecker dated April 20, 2005 ("Stoecker Decl."), Exh. A. According to its web-site VNSNY's employs a total staff of 9,700, including 3,810 home health aides, 2100 registered nurses, 500 rehabilitation therapists, and 450 social workers. *Id.* Defendants administrative staff work out of offices located at 1250 Broadway, New York, New York. Stoecker Decl., Exhs. A and B.[1]

Plaintiff was employed by VNSNY as a home health aide through Partners in Care from in or about September 2002 through March of 2004. Affidavit of Jurgita Vaicaitiene sworn to on April 20, 2005 ("Vaicaitiene Aff.") ¶ 1.

---

[1] For all intents and purposes VNSNY and Partners in Care are a single integrated enterprise. With the exception of the Chairman of the Board, each Partners in Care Board member is also an Officer or Director of VNSNY. (Stoecker Decl., Exh. B at 30) (Annual Report 2003). Carol Raphael, the President and Chief Executive Officer of VNSNY is also sits on the Board of Partners in Care. *Id.* Both companies are represented by the same attorneys in this action.

As a VNSNY home health aide plaintiff was responsible for the care of VNSNY patients. Her duties included, but were not limited to, attending to the patient's personal care such a general hygiene, bathing, dressing and the like. Assisting or accompanying the VNSNY patient with daily activities such as walking, exercising, eating, or administering medication and other activities. Vaicaitiene Aff. ¶ 2; Stoecker Decl., Exh. A.

VNSNY home health aides also performed services typically performed by trained personnel (such as registered or practical nurses) including the monitoring of patient's vital signs (to the extent warranted by the patient's medical condition) and the administration of medical treatments including catheter placement, feeding tubes and other items. Vaicaitiene Aff. ¶ 3.

Although it varied from patient to patient, approximately thirty percent (30%) of plaintiff's overall work-time on behalf of defendants was devoted to general household work including cleaning of all the rooms in the VNSNY patient's house or apartment, household laundry, including laundry for the VNSNY patient's family members, household food-shopping,

3

cooking, food preparation and dishwashing and other tasks that were not directly related to the patient or to any particular patient. Vaicaitiene Aff. ¶ 4.[2]

VNSNY carefully coordinates and oversees the care of every patient it services.[3] All of plaintiff's work for VNSNY patients, for example, was overseen by the VNSNY nurses who supervised home health aides such as plaintiff. At the commencement of each VNSNY patient assignment plaintiff was given written instructions by a VNSNY nurse regarding the patient's care. Vaicaitiene Aff. ¶ 6.[4]

---

[2] The task code form provided by defendants assigned codes for time spent on non-patient related general household work, including "clean[ing]", "grocery shopping", "laundry", "travel time" and other "non-personal" matters." Vaicaitiene Aff. ¶ 5.

[3] As explained on the VNSNY/Partners in Care web-site and in the VNSNY 2003 Annual Report, included thereon:

> "[E]very patient in our care, whether receiving certified or licensed services, has a single professional who coordinates all services and who can answer patient's questions. The nurse or therapist, working closely with the patient's physician or managed care case manager, will provide care directly and/or arrange for all authorized home care services."

Stoecker Decl., Exh. B.

[4] In addition to directly overseeing the care of each patient in its system, VNSNY establishes unified management, labor and quality control policies for its entire organization, including Partners in Care:

> "Our culture of continuous quality improvement infuses every aspect of the education of our staff, how we care for patients, and our standards for clinical outcomes. Being the leader in quality care means we take our best

In addition, plaintiff reported directly to VNSNY nurses each time they visited the patients under her care. In the event she had concerns or problems with a patient she would report such matters to a VNSNY nurse. Vaicaitiene Aff. ¶ 7.

From time to time plaintiff discussed with supervising VNSNY nurses the extent to which she was called upon to do general household work which was not related to the care of the VNSNY patients. On such occasions she was told to do her best to keep each patient happy and to accommodate requests for general household work to avoid patient complaints. Vaicaitiene Aff. ¶ 8.

During her employment by the defendants plaintiff worked substantial amounts of overtime, i.e., hours in excess of forty per week, but she was not paid overtime compensation for these additional hours. Vaicaitiene Aff. ¶ 10. Defendants' failure to pay overtime compensation was consistent with the policy stated in its Employee Handbook that employees would "be paid at the regular hourly rate of pay for all

---

work and apply those lessons throughout the organization. . . "
Stoecker Decl., Exh. A.

5

hours worked up to forty (40) and then time and a half (1.5x) minimum wage <u>or</u> payment at the regular hourly rate, whichever is greater, for all hours worked over forty (40) per week." Vaicaitiene Aff. ¶ 11.

### Argument

#### NOTICE TO "SIMILARLY SITUATED" CURRENT AND FORMER EMPLOYEES OF THE DEFENDANTS IS APPROPRIATE

Section 216(b) of the FLSA provides, in pertinent part, that an action

> May be maintained against any employer ... in any Federal or State court of competent jurisidiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

It is well-settled that federal district courts have the power and authority to oversee the issuance of notice to other potential members of collective actions brought pursuant to FLSA section 216(b). In <u>Hoffman-La Roche, Inc., v. Sperling</u>, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the United States Supreme Court resolved a split in the Circuits on this question by underscoring the

6

importance of timely notice and the District Courts'

essential role in facilitating that goal:

> [The benefits of a collective action] depend
> on employees receiving accurate and timely
> notice concerning the pendency of the
> collective action, so that they can make
> informed decisions about whether to
> participate.  Section 216(b)'s affirmative
> permission for employees to proceed on
> behalf of those similarly situated must
> grant the court the procedural authority to
> manage the process of joining multiple
> parties . . .

493 U.S. at 170, 110 S. Ct. at 486.[5]

Prior to the Supreme Court's decision in

Hoffman-La Roche, the Second Circuit was among those

that had already endorsed the district court's

authority to oversee notice pursuant to section 216(b)

in keeping "with the broad remedial purpose of the

[FLSA and] the interest of courts in avoiding

multiplicity of suits."  Braunstein v. Eastern

Photographic Laboratories, Inc., 600 F.2d 335

(1978)(Per Curium).

Following Hoffman-La Roche, the courts of this

District have recognized that:

> The Supreme Court's decision in Hoffman
> clearly authorizes and, in fact, advocates
> that the district court exercise its

---

[5] Hoffman-La Roche was an action under the Age Discrimination in
Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. which
incorporates section 216(b) of the FLSA. See 493 U.S. at 167-68, 110 S.
Ct. at 485.

> discretion early in the litigation to permit
> discovery of the names and addresses of
> discharged employees to ensure that such
> potential plaintiffs are promptly and
> accurately notified.

Krueger v. New York Telephone Co., 1993 WL 276058 at 1
(S.D.N.Y. July 21, 1993); See also Legrand v. Education
Management Corp., 2004 WL 1962076 (S.D.N.Y. Sept. 2,
2004); Gjurovich v. Emmanuel's Marketplace, Inc., 282
F. Supp.2d 91 (S.D.N.Y. 2003); Jacobsen v. The Stop &
Shop Supermarket Company, 2003 WL 21136308 (S.D.N.Y.
May 15, 2003); Harrington v. Educational Management
Corp., 2002 WL 1009463 (S.D.N.Y., May 17, 2002);
Realite v. Ark Restaurants Corp., 7 F. Supp.2d 303,
305-06 (S.D.N.Y. 1998); Hoffman v. Sbarro, Inc., 982
F.Supp. 249 (S.D.N.Y. 1997).

The requirements of Fed. R. Civ. P. 23 do not
apply to collective actions pursuant to 216(b).
Instead, notice in such an action is appropriate where
plaintiff(s) make a "modest factual showing sufficient
to demonstrate that they and potential plaintiffs
together were victims of a common policy or plan that
violated the law." Realite v. Ark Restaurants Corp., 7
F. Supp.2d 303, 305-06 (S.D.N.Y. 1998)(motion for
notice to employees of 15 restaurants and corporate
parent appropriate).

8

The burden on plaintiffs seeking collective
action certification "is not a stringent one, and the
Court need only reach a preliminary determination that
potential plaintiffs are 'similarly situated.'"
Realite, 7 F. Supp.2d at 306 citing Jackson v. New York
Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995). See
also Foster v. The Food Emporium, 140 LC (CCH) ¶34,062
at 51,869 (S.D.N.Y. April 26, 2000); Hoffman v. Sbarro,
Inc., 982 F. Supp. 249 (S.D.N.Y. 1997);  Grayson v. K-
Mart Corp., 79 F.3d 1086, 1096 (11th Cir.), cert.
denied, 519 U.S. 982, 117 S. Ct. 435, 136 L. Ed.2d 332
(1996)( section 216(b)'s "similarly situated"
requirement is more flexible than the requirements of
Fed. R. Civ. P. 20 (joinder) such that the claims and
positions of employees need not be identical); Thiebes
v. Wal-Mart Stores, Inc., 1999 WL 1081357 (D. Ore. Dec.
1, 1999); Garner v. G.D. Searle Pharmaceuticals & Co.,
802 F. Supp. 418 (M.D. Ala. 1991).

Plaintiff has amply met this burden here.
Defendants have all but conceded that no overtime was
paid to plaintiff and other home health aides employed
by the defendants in purported reliance on the FLSA's
"companionship services" exemption and, specifically,
on a Department of Labor ("DOL") interpretive

regulation, codified at 29 C.F.R. § 552.109(a). Letters
from Kathy H. Chin, Esq. dated Febraury 2, and March
21, 2005. Annexed to the Stoecker Declaration as
Exhibit C.  Indeed, the "Payment Policies" stated in
defendants' Employee Handbook confirm that defendants
failed to pay overtime on a company-wide basis.
Vaicaitiene Aff., Exh. D.

    A.    **Defendants' Arguments Addressed to the Merits of
Plaintiff's Claims Are Irrelevant to This Motion.**

On this motion plaintiff is required to make
only a modest, preliminary showing that there *may* be
similarly situated individuals, who, like plaintiff,
were not paid overtime compensation by the defendants.
Defendants' contention that, during the period of
plaintiff's employment, she was not legally entitled to
overtime, is thus both irrelevant and erroneous.

As discussed above, it is inappropriate to
consider the merits of plaintiff's overtime claim on
this motion. Nonetheless, even were the Court to do so,
notice would still be appropriate because plaintiff has
stated a colorable claim for relief.

In short, the FLSA does – *and always has* –
required overtime payments to home health aides

employed by agencies such as defendants. *Coke* did not
change the law or announce any new rule in that regard.
Rather, it merely held that the DOL's *interpretation* of
the law was erroneous.[6]  Coke v. Long Island Care at
Home, 376 F.3d 118 (2nd Cir. 2004).

        Defendants' contention that its pre-Coke good
faith reliance on the DOL's interpretation forecloses
plaintiff's overtime claim is erroneous. As discussed
in the Second Circuit's opinion in *Coke*, the
circumstances of the DOL's adoption of 29 C.F.R. §
552.109's should certainly have put defendants on
notice that this interpretation "was not authoritative,
or was qualified or incomplete." Marshall v. Baptist
Hospital, Inc., 473 F. Supp. 465, *478 ((M.D. Tenn.
1979). It's inconsistency with the statutory scheme,
and, indeed, the DOL's own initial interpretation; the

---

[6]     The Second Circuit's stay of the mandate in *Coke* pending a
petition for *certiorari* in no way detracts from the force or
effect of its opinion and is relevant only to the parties before
it.  The stay was issued without opinion and is in no way
indicative of the Court's thinking on the issue. Stoecker Decl.,
Exh. D. Indeed, the *Coke* defendants moved for reconsideration
after the Court issued its July, 2004, opinion proffering the same
arguments that they did on the motion for a stay and the former
motion was denied.

        Thus the law in this Circuit is that overtime must be paid
to the home health aides such as those employed by defendants.
The Second Circuit's stay of the mandate in *Coke* effects only the
parties in that action and merely forestalls the grant of their
remedy.  Defendants cannot predicate their merits argument on the
slim possibility that the Supreme Court could change the law at
some time in the future in the unlikely event it grants *cert*.

11

latter's failure to put it out for notice and comment; and it's failure to offer any reasoning for it or to explain its hasty about-face on the issue, render any reliance on it questionable at best and certainly a matter which cannot be resolved summarily, or on a motion to dismiss. In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, 300 F. Supp.2d 1020, *1053 (D. Oregon 2004)("Congress did not intend the good faith defense to apply 'where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him.'")

In sum, whether the "safe harbor" affirmative defense granted by 29 U.S.C. § 259(a), applies to defendants' pre-Coke conduct, is a question of fact that is certainly not amenable to resolution on this motion or, indeed, even a motion for summary judgment. Its resolution, should defendants chose to pursue this affirmative defense, will have to await trial. Equal Employment Opportunity Commission v. Home Insurance Company, 672 F.2d 252 *263-66 (2d Cir. 1982)( summary judgment on 259(a) defense reversed); Hultgren v. County of Lancaster, 753 F. Supp. 809, *830 (D. Nebraska 1990)("The issue of good faith [under section

259] is a question of fact and all the facts and
background must be reviewed.").

### B.    Notice Should Issue To Current And Former Employees Of The Defendants Whose Employment Was Limited To The Post-Coke Period.

Defendants appear to concede, as they must, that
plaintiff is "similarly situated" to home health aides
employed and not paid overtime compensation by the
defendants before the Second Circuit's <u>Coke</u> decision.  They
contend, however, that she is not "similarly situated" to
persons employed by defendants solely post-<u>Coke</u>. Stoecker
Decl., Exh. C (March 21, 2005, Chin letter).

This argument completely misapprehends the
"similarly situated" requirement.  For purposes of
sending notice the Court does not have to determine
that plaintiff and all noticees are, in fact,
"similarly situated."  As the Court in <u>Gjurovich</u> noted,
a motion for notice concerns only whether notice should
"be sent to those people who, at this very preliminary
stage of the litigation, *might* be potential
plaintiffs." *Id.* at 105 <u>citing Realite</u>, 7 F. Supp.2d at
308. (emphasis added). The Court is not now called upon
to determine, "that those being notified, 'are, in
fact, similarly situated' to the plaintiff." *Id.*

13

Ultimately, of course, the claim of each plaintiff who opts into the action will stand on its own.  Plaintiff does not act in a representative capacity and the court may later determine, after discovery is complete, that opt-ins are not appropriate parties to this action *Id.* at 105, citing Realite, 7 F. Supp.2d at 308.[7]

### C.    Notice Should be Sent to All Non-Exempt Employees of VNSNY and Partners in Care Who Were Not Paid Overtime Compensation.

Defendants contention that only home health aides employed by Partners in Care are arguably "similarly situated" to plaintiff is erroneous.  Plaintiff proposes sending notice to all non-exempt employees of both defendants who were not paid overtime compensation for hours worked in excess of forty hours per week.  All were subject to a "common plan or policy" which denied them overtime compensation and all were employed by the same "joint employer", i.e., VNSNY and its wholly-owned subsidiary Partners in Care.  Zheng v. Liberty Apparel Company, Inc., 355 F.3d 61 (2nd Cir. 2003)(plaintiffs were

---

[7] It just so happens that if plaintiff proves her claim at trial, she will, *a fortiori*, prove the claim of every home health aide employed by defendant solely post *Coke*. The Second Circuit's *Coke* decision, however, has apparently not deterred defendants from continuing their policy of denying overtime to home health aides. Indeed defendant's continuing failure to pay overtime after *Coke,* is plainly indicative of *bad faith* and substantially undercuts any good faith affirmative defense they may attempt to mount in this action.

jointly employed by direct employer and manufacturer on whose garments they worked where, among other things, they are directly supervised by manufacturers' agents); Chen v. Street Beat Sportswear, Inc., 2005 WL 774323 (E.D.N.Y. April 6, 2005)(same); Astudillo v, U.S. News & World Report, 2004 WL 2075179 (S.D.N.Y. Sept. 17, 2004)("primary consideration [to determine employer status for FLSA purposes] is whether it 'possessed the power to control the worker in question.'").

Here, of course, plaintiff cared for VNSNY patients and was directly supervised and controlled by VNSNY personnel. Equally significant, the compensation policies at issue were formulated by VNSNY personnel, including virtually all of Partners in Care Board members who are also officers and directors of VNSNY. There is thus no question that Partners in Care and VNSNY are "joint employers."

Judge Sotomayor's decision in Realite is right on point. There the Court directed notice both to employees of the corporate defendant that directly employed the plaintiffs and to employees of the corporate parent, including those employed by other restaurants owned by the corporate parent (apparently through other corporate entities. Realite, 7 F.

Supp.2d at 303-04, 307-08. See also Jackson, 163 F.R.D.

429 (notice sent to employees of parent corporation).[8]

## Conclusion

For the reasons stated above, plaintiff

requests the entry of an order directing the

defendants to furnish the names and addresses of all

"similarly situated" individuals as defined on page

one herein, and further directing the issuance of

notice to those individuals.

---

[8] In Realite Judge Sotomayor held this was appropriate
notwithstanding that noticees held a variety of positions ranging from
waiter, porter and pizza-maker to security guard and bartender. Id. at
304.

Dated: April 20, 2005
     New York, New York

               Respectfully submitted,

               LAW OFFICES OF KARL J. STOECKER

               By: _____
               Karl J. Stoecker (KS-6034)
               18 East 41st Street
               New York, New York 10017
               Telephone: (212) 818-0080