UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JURJITA VAICAITIENE, on behalf of herself and all others similarly situated,

          Plaintiff,

- against -

PARTNERS IN CARE, INC.; AND VISITING NURSE SERVICE OF NEW YORK, INC.;

          Defendants.

**No. 04 Civ. 9125 (RMB)**

**ECF CASE**

**DECLARATION OF KARL J. STOECKER IN SUPPORT OF MOTION FOR NOTICE**

---

      Karl J. Stoecker, being duly sworn, deposes and says:

      1. I am counsel to plaintiff in this action. I submit this declaration in support of plaintiff's motion for notice to persons employed by defendants within the last three years that are "similarly situated" to the Plaintiff.

      2. Annexed hereto as Exhibit A are true and correct copies of excerpts from the web-site jointly maintained by defendants Visiting Nurse Service of New York ("VNSNY") and Partners in Care at www.vnsny.org.

      3. Annexed hereto as Exhibit B is a true and correct copy of the 2003 VNSNY Annual Report as set forth on the foregoing web-site.

4. Annexed hereto as Exhibit C are true and correct copies of letters dated February 2, and March 21, 2005, from Kathy H. Chin, Esq., counsel for both defendants in this action, to the Court.

I hereby affirm under penalty of perjury that the foregoing is true and correct.

Dated: April 20, 2005
       New York, New York

_____
Karl J. Stoecker

Exhibit A

**Visiting Nurse Service Of New York**
**We Bring The Caring Home**

1-888-VNS-1-CALL (1-888-867-1225)

Contact Us   to learn more or arrange for services

| About Us | Our Services | Our Service Area | Senior Care Center | How You Can Help | Careers |

- Mission & Guiding Principles
- **Corporate Information**
  - VNSNY At-A-Glance
- News & Events
- Our History
- Our Innovations
- Center for Home Care Policy & Research
- Contact VNSNY

## CORPORATE INFORMATION

With over 6,650 highly skilled caregivers, VNS is the largest not-for-profit home health care agency in the nation. In 2002, we made 2,200,000 professional home visits to more than 100,000 patients. From Flatbush to Riverdale, Chinatown to Harlem, New Hyde Park to Old Westbury, our caregivers travel throughout New York City and Nassau County, seeing an average of 27,600 patients each day.

Licensed by the New York State Department of Health, we are fully accredited by the Community Health Accreditation Program (CHAP) of the National League for Nursing. Our CHAP accreditation - which also includes commendations for quality management and care coordination - assures you that the quality of care provided by VNS is nationally recognized for its excellence.

**VNS at a Glance:**
President and Chief Executive Officer: Carol Raphael
Chairman of the Board: Douglas D. Broadwater

**Service Area:**
New York City and Nassau County

**Service Statistics:**
Largest not-for-profit home health care provider in the U.S.
Average daily census: 27,600
2000 total patients served: 100,000
2000 total professional home visits: 2,200,000

**Staff:**
Total employees: 9,700, including...
Registered Nurses: 2,100
Rehabilitation Therapists: 500
Social Workers: 450
Home Health Aides: 3,810

**Age Distribution of Caseload (2002):**
Birth - 5:.......5.7%
6--20:..........3.0%
21-45:.........9.6%
46-65:.........21.7%
66-75:.........19.8%
76-90:.........34.1%
91+: ...........5.9%

**Length of Stay Distribution of Caseload (2002):**
Under 1 week.............18.1%
1 week-1 month...........29.3%
1 month-3 months.........30.9%
3 months-6 months.........6.5%
6 months - 1 year.........0.1%
Over 1 year..............13.6% Active

**Major Diagnoses (2000):**
Cerebrovascular Disease
Diabetes
HIV/AIDS
Congestive Heart Failure
Hypertension
Osteoarthritis

**How Does VNS Provide Patient Services?**

The Visiting Nurse Service of New York (VNSNY) is a not-for-profit organization dedicated to home and community-based health care. The agency was established in 1893 by Lillian D. Wald, the founder of public health nursing in the United States.

Today, VNSNY is the parent organization of several not-for-profit companies whose staff provide and coordinate the care of patients residing throughout New York City and in Nassau County. The information below is designed to:

1. Explain the relationship among VNSNY's group of companies,
2. Describe the services available to patients and families through VNSNY's various companies,
3. Identify the services that may be provided, on a contractual basis, by companies other than VNSNY's own network of companies, and
4. Describe the payment methods for home health care.

Patients who enter our care system may receive services from only one VNSNY company, or from several companies, depending on their needs. VNSNY staff will work with you and your physician to identify your care needs and either draw upon the resources available within our group of companies or inform you of private and other community services available.

If you have any questions about the information in this pamphlet, or require information about home care service that is not provided here, you may speak directly with your nurse or call the Customer Care Center of the Visiting Nurse Service of New York at 1-888-VNS-1-CALL (1-888-867-1225).

**What is Home Health Care?**

Home health care can be broadly defined as any care that is provided to patients in their place of residence. There is an important distinction, however, between certified services and licensed services. Certified services are those that, under specific circumstances, may be covered by Medicare and/or Medicaid or commercial insurance carriers, including Managed Care Plans. Licensed services may be reimbursed by commercial insurance carriers and managed care plans and may also be purchased on a private pay basis.

Both certified and licensed services are available through VNSNY's network of companies. Depending upon a patient's home care needs, the plan of care approved by a patient's physician or managed care case manager, or a patient's personal preferences, the services provided in a patient's home may be either certified or licensed, or both.

The eligibility and coverage criteria established by Medicare and Medicaid, and by commercial insurance plans, are very specific and determine both the amount of service provided by VNSNY companies and the duration of service provided by VNSNY companies. It is important for health care consumers to understand their health benefits and the limitations that may be placed on when and how much home care service is permitted. Your nurse can help you understand your benefits.

**How is VNSNY Organized?**

The Visiting Nurse Service of New York includes the companies and specialized programs identified below. Depending upon a patient's home care needs, these companies and unique programs collaborate, when and as necessary, to deliver patient services.

Visiting Nurse Service of New York - a not-for-profit "parent" company which provides administrative and support services, such as financial management and fund-raising, to its group of companies.

Visiting Nurse Service of New York Home (VNSNY Home Care) - a certified home health agency that provides skilled nursing care, rehabilitation therapies and other professional services, as well as certified home health aide services.

Congregate Care Living - a specialized program offered in select residential settings with a high proportion of senior residents. In most settings, a Visiting Nurse Service of New York Home Care nurse is on site to help coordinate services and to provide health education and health screenings.

Long Term Home Health Care Program - a specialized, Medicaid funded program that provides a range of services to patients who might otherwise be placed in a nursing home.

Visiting Nurse Service of New York Hospice Care - a Medicare certified program that provides end of life care to patients and their families.

VNS Group Health Home Care - a certified agency that provides skilled nursing care, rehabilitation therapies and other professional services, as well as certified home health aide services, in Staten Island only.

Partners in Care - a licensed home care agency that provides home health aide services on a contract basis to VNSNY Home Care. It also provides home health aide and professional services to patients and families who pay privately.

VNS Family Care Services - a Medicaid funded program that provides home attendant services to NYC Human Resources Administration clients in the Bronx and Manhattan. It also provides home health aide services to VNSNY Home Care on a contract basis.

VNS CHOICE - a certified, Medicaid managed long term care plan that provides a broad range of services to patients in their homes and at various community locations. Members must be eligible for Medicaid, and must also meet nursing home eligibility criteria.

The table of organization below indicates the relationship between VNSNY, its subsidiaries and specialized programs.

| Visiting Nurse Service of New York |



To facilitate the management and delivery of home health services, VNSNY subsidiaries have offices in each borough of New York City and in Nassau County.

**Who Coordinates a Patient's Home Health Care Services?**

Thousands of patients rely each day upon VNSNY subsidiaries for home health care services. As you might imagine, the delivery and management of patient care throughout VNSNY's service area (New York City and Nassau County) is a complex task. But every patient in our care, whether receiving certified or licensed services, has a single professional who coordinates all services and who can answer patient questions. The nurse or therapist, working closely with the patient's physician or managed care case manager, will provide care directly and/or arrange for all authorized home care services.

**Who Provides a Patient's Home Health Care Services?**

Most patient care is provided directly by staff of VNSNY companies. Home health aide services are provided either by Partners in Care (a VNSNY company) or by carefully selected agencies that provide certified aide service under contract with VNSNY Home Care.

Durable medical equipment and supplies are arranged through contractors. Some rehabilitation therapists may provide service on a contractual basis.

But whenever a home care service, product or supply is provided on a contract basis, patients can be assured that VNSNY companies have exercised the utmost care is selecting service contractors that meet the highest quality standards in home health care.

**Methods of Payment for Home Health Care.**

The major sources of funding for home health care services are Medicare, Medicaid, Commercial Insurance (including Managed Care Plans) and Direct Private Payment.

As noted earlier, however, the amount and duration of certified services provided by VNSNY subsidiaries are determined by Medicare and/or Medicaid or a patient's commercial insurance carrier.

Patients may elect on their own to supplement their care with licensed services provided by Partners in Care (a VNSNY company) or another agency, or patients may elect to continue care if their service is terminated by Medicare, Medicaid or a commercial insurance carrier, but such services must then be purchased on a private pay basis. These private pay services must be arranged directly between the patient or family and Partners in Care or other licensed agency.

**A Commitment to Quality Care.**

The Visiting Nurse Service of New York, with a century-long tradition of caring in the New York metropolitan area, is committed to the highest standards of quality and patient service.

Please speak to your visiting nurse or call the Customer Care Center at 1-888-VNS-1-CALL (1-888-867-1225), if you have questions or wish to learn more about VNSNY.

© Copyright 2004 Visiting Nurse Service of New York. All rights reserved.
privacy statement | terms of use

home | site map | contact us

# Visiting Nurse Service Of New York
*We Bring The Caring Home*

**Manhattan Office**
1250 Broadway (Corner of 32nd Street)
New York, NY 10001

Directions:
Subway: F, Q, W, 1, 2, 3, 9, N, R to 34th Street, Herald Square
Bus: M05, M06, M07 to 32nd Street, M04 to 32/Broadway, M34 to Broadway



Directions:

By Subway:

    B, D, F, N, Q, R, or PATH to 33/34th Street/Avenue of the Americas.

    1, 2, 3 or 9 (Seventh Avenue Lines) to 34th Street/Penn Station.  One block East.

    A, C or E (Eighth Avenue Subway) to 34th Street/Penn Station.  Two blocks East.

    6 (Lexington Avenue Line) to 33rd Street.  Three blocks West.

By Train:

    Long Island Railroad, New Jersey Transit, Amtrak to Penn Station.  One block East

    From Westchester/Connecticut:  Metro-North to Grand Central Station, subway shuttle to Times Square to 1, 2, 3, or 9 subway trains downtown one stop.  One block East.



**1-888-9-GET-HELP**
**(1-888-943-8435)**

Contact Us for more information or to arrange for our services

Home        Our Services        Contact Us

- Post Operative Procedure Services
- Ambulatory Escort Service
- Skilled Nursing Care
- Home Health Aide Services
- At Home...Where I Belong
- Elder Care
- Corporate Wellness

**Home Health Aide Services**

At Partners in Care, we make every effort to provide you with the best in home health aide services.

What do we look for in a home health aide? For starters, each must be highly skilled, credentialed and trained before they care for patients. We also want someone who is by nature helpful, personable and friendly. All of our home health aides are carefully screened and have submitted to a criminal background check. Once hired, they receive additional specialized training. Moreover, all Partners in Care employees are insured.

Our home health aides can help with:

- Personal care and general assistance
- Bathing and dressing
- Feeding
- Cooking and meal preparation
- Light housekeeping
- Shopping
- Laundry
- Getting to and from doctor and dentist appointments
- Round-the-clock personal care in the hospital following an operation
- Companion services

Additionally, when you receive home health aide services from Partners in Care, a registered nurse will be assigned to your care. The RN will develop a personalized plan of care for you as well as supervise your home health aide. The registered nurse will also make periodic nursing assessments to review and revise your plan of care as necessary.

© Copyright 2004. Partners In Care, a subsidiary of the Visiting Nurse Service of New York




http://www.vnsny.org/partnersincare/services_hhas.html                                    4/19/2005

Exhibit B

VISITING NURSE SERVICE OF NEW YORK
ANNUAL REPORT 2003

# IN HEALTH CARE

TABLE OF CONTENTS →

1→ INTRODUCTION
2→ A MESSAGE FROM THE CHAIRMAN AND PRESIDENT
4→ EXPERT AND COMPASSIONATE CARE
6→ INNOVATION
8→ MEASURABLE RESULTS
10→ REACHING OUT TO DIVERSE PATIENT POPULATIONS
12→ PROMOTING A BETTER QUALITY OF LIFE
14→ SELFLESS CONTRIBUTIONS FROM VOLUNTEERS
18→ ADVANCES IN HOME CARE RESEARCH
20→ COMMITMENT TO THE COMMUNITY
28→ FINANCIAL SUMMARY
30→ DIRECTORS OF VISITING NURSE SERVICE OF NEW YORK
32→ HOW WE CARE
32→ WHO WE CARED FOR: 2003



In 2003, the Visiting Nurse Service of New York (VNSNY) turned 110 years old. From our earliest days, we have been at the forefront in finding innovative solutions to health care challenges. In fact, being innovative is not only part of our culture, it is a key element of our Mission Statement: To be a leader in the development of innovative services that enable people to function as independently as possible in their community.

Our passion to innovate has resulted in many VNSNY "firsts." The *first* home health care organization to equip its nurses with pen-based Tablet PCs that include, among other features, the full clinical record of a patient as well as a medication database. The *first* to use digital cameras on a wide-scale basis to photograph hard-to-heal wounds. The *first* to launch multicultural programs. The *first* to establish a research center to conduct scientifically rigorous research that will promote the delivery of cost-effective care in the home and community. As the needs of patients and the community have changed over the decades, VNSNY has changed to address those needs.

And in the process, we've grown. Today, the Visiting Nurse Service of New York is the largest not-for-profit home health care organization in the nation, with 2,200 registered and advanced practice nurses, 675 rehabilitation therapists (physical, occupational and speech), 600 social workers, 4,350 home health aides, 165 clinicians (physicians, nutritionists, psychologists), plus a highly dedicated and experienced support staff. On any given day, VNSNY provides home- and community-based services to over 25,000 patients, from newborn infants to men and women in their 90s, and some who are over 100 years old. (Our oldest patient in 2003 was nearly as old as VNSNY itself — 108 years old.) Our services range from short-term care following a hospitalization, accident or illness, long-term care due to a chronic illness or disability, or care management of an elderly parent or other family member. We provide this care in every neighborhood of New York City as well as Nassau County. And for the first time last year, we began serving parts of Westchester County.

This annual report highlights our cutting edge approach to home care and public health problems in 2003 — our 110th year in existence.

**ANDREW N. SCHIFF, MD**

Andrew N. (Drew) Schiff, MD joined the VNSNY Board of Directors in 1996 continuing his family's long tradition of service to VNSNY. Drew's great-great grandfather was Jacob Henry Schiff, the financier and major New York City philanthropist whose early and steadfast support enabled Lillian Wald and Mary Brewster to found the Visiting Nurse Service of New York. Drew's mother, Lisa Schiff, served on the VNSNY Board from 1974 until 1996. Throughout his childhood, Drew was keenly aware of VNSNY and the critical role his family has played in its life.

When Drew was on staff at New York-Presbyterian Hospital, he referred many of his patients to VNSNY for home care after discharge. He now serves as a Managing Director of Perseus-Soros, a biopharmaceutical fund, and maintains his position as clinical assistant professor of medicine at New York-Presbyterian Hospital. His unique combination of clinical and financial skills makes him an invaluable member of the Board, where he serves on the Investment Subcommittee.

"Jacob Schiff understood the importance of home health care and social services at a time when few people did," Drew said. "I'm proud to be part of an organization to which my family has had such a strong connection, and which has such an outstanding and important tradition of serving the health care needs of New York."

## DIRECTORS OF VISITING NURSE SERVICE OF NEW YORK

**Members of The Board of Directors of Visiting Nurse Service of New York and Visiting Nurse Service of New York Home Care**
James L. Bailey
Margaret A. Bancroft
Elizabeth R. Bramwell
Douglas D. Broadwater
Arnold I. Burns
Susan E. Champion, MD, MPH
E. Mary C. Davidson
Eugene F. Doyle, MD
Anne Bick Ehrenkranz
Claire M. Fagin, RN, PhD
Alice C. Frelinghuysen
M. Jane Gaillard
Stephen V. R. Goodhue
John R. Gordon
Mary R. (Nina) Henderson
Dorothy Hidalgo
Peter L. Hutchings
Attallah Kappas, MD
Steven E. Katz, MD
Per G. H. Lofberg
Arthur S. Lukach, Jr.
Kwan-Lan (Tom) Mao
Mercedes A. Mestre
Mathy Mezey, RN, EdD
Phyllis J. Mills, RN
Kathleen Mortimer
Juliet Patterson
Valerie S. Peltier
Carl H. Pforzheimer III
George Reader, MD
Paula L. Root
Perri Peltz Ruttenberg
Andrew N. Schiff, MD
Frederick S. Schiff
Sharon R. Shapiro
Kenneth G. Standard
Robert A. Straniere
Frank S. Vigilante
David O. Wicks
John E. Zuccotti

**Officers of Visiting Nurse Service of New York**
Douglas D. Broadwater
  *Chairman*
Paula L. Root
  *Vice-Chairman*
Carol Raphael
  *President and Chief Executive Officer*
Joan Marren
  *Chief Operating Officer*

Arthur S. Lukach, Jr.
  *Secretary/Treasurer*
Samuel Heller
  *Chief Financial Officer*
Susan Regan
  *Assistant Secretary*

**Officers of Visiting Nurse Service of New York Home Care**
Margaret A. Bancroft
  *Chairman*
Juliet Patterson
  *Vice-Chairman*
Carol Raphael
  *President and Chief Executive Officer*
Joan Marren
  *Chief Operating Officer*
Arthur S. Lukach, Jr.
  *Secretary/Treasurer*
Samuel Heller
  *Chief Financial Officer*
Susan Regan
  *Assistant Secretary*

**Partners In Care**
Richard Fender
  *Chairman*
Anne Bick Ehrenkranz
Stephen V. R. Goodhue
John R. Gordon
Mercedes A. Mestre
Carol Raphael
Frederick S. Schiff

**VNS CHOICE**
Phyllis J. Mills, RN
  *Chairman*
Rose Dobrof
Mary Jane Koren, MD
Kwan-Lan (Tom) Mao
David O. Wicks

**VNS CHOICE Community Care**
Phyllis J. Mills, RN
  *Chairman*
Kwan-Lan (Tom) Mao
David O. Wicks

**Family Care Services**
Paula L. Root
  *Chairman*
Catherine Alicia Georges, RN, EdD
Verona P. Greenland RN, MPH
Arthur S. Lukach, Jr.
Joan Marren

**Visiting Nurse Service of New York Hospice Care**
Mathy Mezey, RN, EdD
  *Chairman*
Nessa Coyle, RN, MS, NP, PhD
E. Mary C. Davidson
Amber Jones
Attallah Kappas, MD
Diane Meier, MD

**VNS Group Health Home Care**
M. Jane Gaillard
  *Chairman*
Charles Blum
Frank Branchini
Alice C. Frelinghuysen
Samuel Heller
Per G. H. Lofberg
Carol Raphael
Robert A. Straniere

**Volunteer Council of the Visiting Nurse Service of New York**
Dorothy Hidalgo
  *President*
Co-Chair, Loyette Project
Patricia Ewert
  *First Vice President*
  *Post President*
  *Co-Chair, Loyette Project*
Juliet Patterson
  *Second Vice President*
  *Co-Chair, Loyette Project*
Edith DuPuy
  *Recording Secretary*
  *Chair, Toy Drive*
Patricia Zalar
  *Corresponding Secretary*
E. Mary C. Davidson
  *Development Liaison*
  *Steering Committee*
Paula Dooley
  *Chair, Knitting*
Maryann Muccini
  *Chair, Douglaston Committee*
Patricia Ludorf
  *Chair, Manhattan Committee*

**Strategic Management Group**
Carol Raphael
  *President and Chief Executive Officer*
Joan Marren
  *Chief Operating Officer*
Robert Banks, Jr.
  *Vice President/Compliance and Internal Audit*
Charles Blum
  *Vice President/Legal and Government Affairs*
Roberta Brill
  *Vice President/Operations*
Elizabeth Buff
  *Vice President/Quality Management Services and Clinical Excellence*
Lyle Churchill
  *Vice President/Marketing Communications and Development*
Denise Davin
  *Vice President/Human Resources and Labor Counsel*
Jeanne Dennis
  *Executive Director/VNSNY Hospice Care*
Ilana Edison
  *Vice President/Performance Improvement*
Penny Feldman
  *Vice President/Research and Evaluation*
Holly Michaels Fisher
  *Executive Director/VNS CHOICE*
  *Vice President/Program Planning VNSNY*
Marki Flannery
  *President/Partners in Care*
George Germann
  *Vice President and Chief Information Officer*
Samuel Heller
  *Vice President/Finance and Corporate Management Services*
Ingrid Jimenez
  *Vice President/Operations*
Elaine Keane
  *Vice President/Business Development*
Paul Roth
  *Vice President/Operations*

30

31→

Exhibit C

Exhibit C

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000 Fax 212 504 6666
www.cadwalader.com

February 2, 2005

**BY HAND**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
40 Centre Street
Courtroom 706
New York, New York 10007

Re:   Vaicaitiene v. Partners In Care, Inc. and Visiting
      Nurse Service of New York, Inc., 04 Civ. 9125 (RMB)

Dear Judge Berman:

As counsel for defendants in the above-referenced proceeding, we write in accordance with Section 2A of Your Honor's "Individual Practices" in anticipation of filing a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The basis for the motion is as follows:

Plaintiff has brought this action to recover overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). By her complaint, plaintiff alleges that she is a home health aide formerly employed by defendants, and that she has been denied overtime wages for work she performed in excess of forty hours per week. Complaint, ¶ 1, 4. Defendants wish to file a motion to dismiss this action on the grounds that FLSA and its regulations provide that employers are <u>not</u> required to pay overtime wages to home health aides, since home health aides fall within the "companionship services" exemption to FLSA. 29 U.S.C. § 213(a)(15). This exemption applies to employees who provide "fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her

Kathy H. Chin   Tel 212 504 6542   Fax 212 504 6666   kathy.chin@cwt.com

# CADWALADER

Honorable Richard M. Berman
February 2, 2005

own needs." 29 C.F.R. § 552.6. In her complaint, plaintiff describes her employment duties as assisting "aged and infirm individuals" with "personal care, bathing, dressing and feeding as well as housekeeping, shopping, laundry and other matters." Complaint, ¶ 9. By her own description, plaintiff plainly falls within the "companionship services" exemption to FLSA.

By regulation, employees performing companionship services are exempt notwithstanding the fact that they "are employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a). By operation of this regulation, home health aides employed by entities such as defendants have been exempt from FLSA for almost 30 years. As noted in prior correspondence to Your Honor, this regulation was declared unenforceable in a July 22, 2004 decision of the Second Circuit (see Coke v. Long Island Care at Home, 376 F.3d 118 (2d Cir. 2004)); however, at this time, no mandate has issued. After the petition for rehearing was denied, a motion to further stay the mandate pending the filing of a petition for certiorari was filed on January 17, 2005 and remains sub judice at this time.

If Coke is overturned, and the mandate never issues, the "companionship services" exemption remains available to defendants and plaintiff has no claim under FLSA. Without a FLSA claim, supplemental jurisdiction over plaintiff's second cause of action fails, and the complaint must be dismissed in its entirety. If Coke stands, plaintiff still has no basis for relief, since FLSA provides that no employer will be liable for failure to pay overtime if he relied upon an administrative regulation that is later determined by judicial authority to be invalid or of no legal effect. 29 U.S.C. § 259(a). During the time of plaintiff's employment, April 2002

Page 2

# CADWALADER

Honorable Richard M. Berman
February 2, 2005

own needs." 29 C.F.R. § 552.6. In her complaint, plaintiff describes her employment duties as assisting "aged and infirm individuals" with "personal care, bathing, dressing and feeding as well as housekeeping, shopping, laundry and other matters." Complaint, ¶ 9. By her own description, plaintiff plainly falls within the "companionship services" exemption to FLSA.

By regulation, employees performing companionship services are exempt notwithstanding the fact that they "are employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a). By operation of this regulation, home health aides employed by entities such as defendants have been exempt from FLSA for almost 30 years. As noted in prior correspondence to Your Honor, this regulation was declared unenforceable in a July 22, 2004 decision of the Second Circuit (see Coke v. Long Island Care at Home, 376 F.3d 118 (2d Cir. 2004)); however, at this time, no mandate has issued. After the petition for rehearing was denied, a motion to further stay the mandate pending the filing of a petition for certiorari was filed on January 17, 2005 and remains sub judice at this time.

If Coke is overturned, and the mandate never issues, the "companionship services" exemption remains available to defendants and plaintiff has no claim under FLSA. Without a FLSA claim, supplemental jurisdiction over plaintiff's second cause of action fails, and the complaint must be dismissed in its entirety. If Coke stands, plaintiff still has no basis for relief, since FLSA provides that no employer will be liable for failure to pay overtime if he relied upon an administrative regulation that is later determined by judicial authority to be invalid or of no legal effect. 29 U.S.C. § 259(a). During the time of plaintiff's employment, April 2002

Page 2

# CADWALADER

Honorable Richard M. Berman
February 2, 2005

through March 2004 (Complaint, ¶ 4), the regulations undeniably exempted home health aides from FLSA. It was not until several months after plaintiff's employment had ended, on July 22, 2004, that the Second Circuit held 29 C.F.R. § 552.109(a) to be unenforceable. FLSA simply does not allow plaintiffs to require their employers to provide retroactive overtime pay for work performed during a time when they fell within a class of employees that was exempt from the overtime provisions of the Act.

Alternatively, defendants respectfully submit that in the unusual circumstances presented, the Court may in the interest of efficient disposition of these matters stay these proceedings pending a final decision in Coke. See Goldstein v. Time Warner New York City Cable Group, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998).

If the Court deems it appropriate, we are available at the Court's convenience to appear for a pre-motion conference.

Respectfully,

Kathy A. Chin

cc:  Karl J. Stoecker, Esq.
     Attorney for Plaintiff
     (via facsimile)

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

March 21, 2005

**BY HAND**

Honorable Richard M. Berman
United States District Judge for the
  Southern District of New York
United States Courthouse
40 Centre Street -- Courtroom 706
New York, New York 10007

Re:   Vaicaitiene v. Partners in Care, Inc. and Visiting Nurse
      Service of New York, Inc. 04 Civ. 9125 (RMB)

Dear Judge Berman:

We are the attorneys for defendants Partners in Care and Visiting Nurse Service Of New York ("VNS"). As required by this Court's order of March 15, 2005, we write in response to plaintiff's letter of March 14, 2005 requesting a pre-motion conference.

Defendants will oppose the motion described in plaintiff's letter. Any notice sent to "a class consisting of all non-exempt persons employed by defendants who worked more than forty hours in any week and were not paid overtime compensation" is overly broad and, moreover, outlines a class that appears to be broader than that suggested by the allegations of plaintiff's complaint, which describes plaintiff specifically as a home health aide. Complaint, ¶ 1. Plaintiff cannot send a notice to an ill-defined class whose parameters are unsupported even by the allegations of her own complaint. "While the factual showing that they must make at this stage is 'modest', it must be 'sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Levinson v. Primedia, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. 2003). Here, there has been no showing beyond the pleading, and yet plaintiff's letter suggests that the class may be a group different and broader than the class described in that pleading. See Complaint, ¶ 10. From home health aides, the group has become all non-exempt employees of both defendants. How will this new group be similarly situated to the home health aide formerly employed by Partners in Care who is thus far the sole plaintiff? It should be noted that if plaintiff's proposed class were limited to home health aides (who would be the only persons even arguably "similarly situated" to her), the class could not include employees of defendant VNS, as VNS has no employees who are home health aides. It is thus unclear that plaintiff can describe a class "similarly situated" to plaintiff that could possibly justify sending a notice to employees of both named defendants.

Kathy H. Chin  Tel 212 504 6542  Fax 212 504 6666  kathy.chin@cwt.com

# CADWALADER

Honorable Richard M. Berman
March 21, 2005

The notice proposed by plaintiff is also defective because there is no indication of the time frame contemplated. Critical to the question of the appropriate time frame for any notice is the issue of whether the Coke decision will have retroactive effect. As the Court may recall from defendants' February 2, 2005 letter, the regulation which made the "companionship services" exemption from FLSA applicable to home health aide employees of entities such as defendants was declared unenforceable in a July 22, 2004 decision entitled Coke v. Long Island Care At Home, 376 F.3d 118 (2d Cir. 2004). However, until that decision, the regulation had been in effect for 30 years, and constituted the applicable law with respect to payment of overtime to home health aides such as plaintiff. Indeed, throughout the time plaintiff was employed by defendant Partners in Care, the exemption applied to her such that no overtime payments were required by FLSA. Plaintiff could not have been the "victim of a common policy or plan that violated the law," because her employer was following the law as it was stated at that time. In any event, defendants may not be held liable for any overtime pay for the period pre-Coke by operation of 29 U.S.C. § 259, also described in defendants' February 2, 2005 letter, and general principles of retroactive effect of judicial decisions. Simply put, prior to July 22, 2004, home health aides were unquestionably exempt from the overtime requirements of FLSA. Notice to home health aides such as plaintiff for any period of time pre-Coke would be inappropriate and unnecessary absent a finding that defendants may be held liable in that time frame at all.

Finally, notice would be inappropriate and unjustified because of the unsuitability of plaintiff as a class representative. As a former employee of Partners in Care whose period of employment ended prior to the Coke decision, it is unclear that Ms. Vaicaitiene has standing to assert the claims articulated in the complaint at all and in any event, her interests are very different from those of the home health aides currently employed by Partners in Care.

Accordingly, the motion described in plaintiff's letter of March 14, 2005 must be denied until such time as plaintiff defines and substantiates a class of "similarly situated" plaintiffs and certain threshold issues are resolved.

Respectfully,

*Kathy H. Chin*

Kathy H. Chin

cc: Karl J. Stoecker, Esq.
    Attorney for Plaintiff
    (via facsimile)

Page 2