UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

JURJITA VAICAITIENE, on behalf of herself and all          :        04-CV-9125 (RMB) (THK)
others similarly situated,                                                   (Electronically Filed)

                                                                               :

                                                Plaintiff,

                                                                               :

                        -against-

                                                                               :

PARTNERS IN CARE, INC.; and VISITING NURSE
SERVICE OF NEW YORK, INC.,                                       :

                                                Defendants.   :

------------------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION FOR NOTICE

CADWALADER, WICKERSHAM & TAFT LLP
Office and Post Office Address:
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000

Attorneys for Defendants Partners in Care and
Visiting Nurse Service Of New York

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT ..................................................................................................... 3

POINT I     NOTICE WOULD BE INAPPROPRIATE AND PREMATURE AT THIS
            TIME ................................................................................................... 3

            A.    Notice Should Not Be Issued On The Basis Of A Non-Final
                  Decision Currently Under Review ............................................... 5

            B.    Even If The Coke Decision Were Upheld, There Is No Basis To
                  Issue Notice For Any Period Of Time Pre-Coke ......................... 7

            C.    Plaintiff Is An Inadequate Class Representative ....................... 11

POINT II    THE NOTICE PROPOSED IS OVERLY BROAD ............................ 12

            A.    Plaintiff Has Not Shown That She Is Similarly Situated To "All
                  Non-Exempt Employees" ........................................................... 12

            B.    Plaintiff Has Not Shown That She Is Similarly Situated To
                  Employees Of Both Defendants ................................................. 13

            C.    The Proposed Time Frame Of Three Years Is Inappropriate ..... 16

            D.    Under The Terms Of The Proposed Notice, Plaintiff Would Not Be
                  A Member Of The Class ............................................................. 16

CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES:</u>

<u>Beardslee</u> v. <u>Brown</u>,
    393 F.3d 899 (9th Cir. 2004), <u>cert. denied</u>, 125 S. Ct. 982 (2005) ...........................7

<u>Belcher</u> v. <u>Shoney's, Inc.</u>,
    927 F. Supp. 249 (M.D. Tenn. 1996)...............................................13

<u>Braunstein</u> v. <u>Eastern Photo. Labs., Inc.</u>,
    600 F.2d 335 (2d Cir. 1978), <u>cert. denied</u>, 441 U.S. 944 (1979) ...............................4

<u>Coke</u> v. <u>Long Island Care At Home, Ltd.</u>,
    376 F.3d 118 (2d Cir. 2004), <u>pet. for cert. filed</u>,
    73 U.S.L.W. 3603 (U.S. Mar. 29, 2005) (No. 04-1315)....................3, 5, 6

<u>Cox</u> v. <u>Acme Health Servs., Inc.</u>,
    55 F.3d 1304 (7th Cir. 1995) ........................................................6

<u>Donihoo</u> v. <u>Dallas Airmotive, Inc.</u>,
    No. Civ. A. 3:98-CV-0109-P, 1998 WL 91256 (N.D. Tex. Feb. 23, 1998) ...........12

<u>EEOC</u> v. <u>Home Insurance Co.</u>,
    672 F.2d 252 (2d Cir.), <u>aff'd in part</u>, <u>rev'd in part</u>,
    913 F.2d 498 (8th Cir. 1990) ........................................................8

<u>Foster</u> v. <u>Food Emporium</u>,
    No. 99 Civ. 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000)...........11

<u>Gjurovich</u> v. <u>Emmanuel's Marketplace, Inc.</u>,
    282 F. Supp. 2d 91 (S.D.N.Y. 2003)................................................11

<u>Harris</u> v. <u>Dorothy L. Sims Registry</u>,
    No. 00 C 3208, 2001 U.S. Dist. LEXIS 23263, 2001 WL 78448
    (N.D. Ill. Jan. 29, 2001) .............................................................6

<u>Hoffman</u> v. <u>Sbarro, Inc.</u>,
    982 F. Supp. 249 (S.D.N.Y. 1997) ............................................. 10-11

<u>Hoffman-LaRoche, Inc.</u> v. <u>Sperling</u>,
    493 U.S. 165 (1989)...................................................................4

<u>Hultgren</u> v. <u>County of Lancaster</u>,
    753 F. Supp. 809 (D. Neb. 1990)................................................. 8-9

PAGE(S)

In re Farmers Ins. Exch. Class Reps.' Overtime Pay Litig.,
    300 F. Supp. 2d 1020 (D. Or. 2003) ...................................................................10

Jackson v. New York Tel. Co.,
    163 F.R.D. 429 (S.D.N.Y. 1995) .................................................................11, 16

Jacobsen v. Stop & Shop Supermkt. Co.,
    No. 02 Civ. 5915, 2003 WL 21136308 (S.D.N.Y. 2003) ......................................11

Johnston v. Volunteers of Am., Inc.,
    213 F.3d 559 (10th Cir. 2000), cert. denied, 531 U.S. 1072 (2001) .........................6

Krueger v. New York Tel. Co.,
    Nos. 93 Civ. 0178, 0179, 1993 WL 276058 (S.D.N.Y. July 21, 1993) ..................11

LeGrand v. Education Mgmt. Corp.,
    No. 03 Civ. 9798, 2004 WL 1962076 (S.D.N.Y. Sept. 2, 1976) ..........................11

Levinson v. Primedia,
    No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ..........................12

Madison v. Resources for Human Dev., Inc.,
    233 F.3d 175 (3d Cir. 2000)...................................................................................6

Marshall v. Baptist Hospital, Inc.,
    668 F.2d 234 (6th Cir. 1981) ...........................................................................9-10

Mary Ann Pensiero, Inc. v. Lingle,
    847 F.2d 90 (3d Cir. 1988)...................................................................................7

McCune v. Oregon Sr. Servs. Div.,
    894 F.2d 1107 (9th Cir. 1990) ..............................................................................6

McLaughlin v. Richard Shoe Co.,
    86 U.S. 128 (1988) .............................................................................................16

McQuay v. AIG, Inc.,
    No. 4:01CV00661 WRW, 2002 WL 32475212 (E.D. Ark. Oct. 25, 2002)......................12-13

Mike v. Safeco Ins. Co. of Am.,
    274 F. Supp. 2d 216 (D. Conn. 2003) .....................................................................7

Mineo v. Port Auth. of N.Y. & N.J.,
    779 F.2d 939 (3d Cir. 1985), cert. denied, 478 U.S. 1005 (1986) ..........................8

Pfaahler v. Consultants for Architects, Inc.,
    No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000).....................................11

**PAGE(S)**

Pfohl v. Farmers Ins. Grp.,
    No. CV03-3080 DT, 2004 WL 554834 (C.D. Cal. Mar. 1, 2004)............................................15

Realite v. Ark Restaurants Corp.,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...............................................................................15

Reed v. Mobile Cty. Sch. Sys.,
    246 F. Supp. 2d 1227 (S.D. Ala. 2003)............................................................................12

Salyer v. Ohio Bur. of Workers' Comp.,
    83 F.3d 784 (6th Cir.), cert. denied, 519 U.S. 964 (1996) ............................................6

Sheffield v. Orius Corp.,
    211 F.R.D. 411 (D. Or. 2002) .........................................................................................13

Terwillinger v. Home of Hope, Inc.,
    21 F. Supp. 2d 1294 (N.D. Okla. 1998)..........................................................................6

Thiebes v. Wal-Mart Stores, Inc.,
    No. Civ. 98-802, 1999 WL 1081357 (D. Or. Dec. 1, 1999) ..........................................11

United States v. Doe (In re Grand Jury Investigation),
    399 F.3d 527 (2d Cir. 2005).............................................................................................7

United States v. Simmons,
    923 F.2d 934 (2d Cir.), cert. denied, 500 U.S. 919 (1991) .......................................6-7

United States v. Swan,
    327 F. Supp. 2d 1068 (D. Neb. 2004) .............................................................................7

Vengurlekar v. Silverline Techs., Ltd.,
    220 F.R.D. 222 (S.D.N.Y. 2003) ...............................................................................11, 12

Walsche v. First Invs. Corp.,
    981 F.2d 649 (2d Cir. 1992)..............................................................................................8

Welding v. Bios Corp.,
    353 F.3d 1214 (10th Cir. 2004) .......................................................................................6

Zheng v. Liberty Apparel Co.,
    355 F.3d 61 (2d Cir. 2003).........................................................................................14, 15

## STATUTES & OTHER AUTHORITIES:

29 C.F.R. § 552.109(a).......................................................................................................5

**PAGE(S)**

42 C.F.R.:
    § 484.30(a) ...................................................................................................14
    § 484.36(c) ...................................................................................................14
    § 484.36(d) ...................................................................................................14
    § 484.36(d)(4) ..............................................................................................14

29 U.S.C.:
    § 213(a)(15) ...................................................................................................5
    § 251(a) ........................................................................................................10
    § 255(a) ........................................................................................................16
    § 259(a) ..........................................................................................................8

H.R. No. 71, 80th Cong., 1st Sess. (1947), reprinted in 1947 U.S.C.C.A.N. 1029 .......................10

12 N.Y.C.R.R. § 142-2.2 ...................................................................................................7

## PRELIMINARY STATEMENT

Defendants Partners in Care and Visiting Nurse Service Of New York submit this memorandum of law in opposition to plaintiff's motion dated April 20, 2005 and served and filed thereafter. Plaintiff's notice of motion states the relief requested as an order "directing defendants to furnish the names and addresses of 'similarly situated' individuals and directing the mailing of such notice to all such individuals" without specifying what notice is suggested. The electronic docket describes plaintiff's motion as a first motion to certify class. Plaintiff's Memorandum Of Law In Support Of Motion For Notice ("Plaintiff's Memo") states that plaintiff seeks an order "directing notice of this action to the following similarly situated individuals:

> All non-exempt current and former employees of Partners in Care
> and Visiting Nurse Service of New York who were not paid
> overtime at any time during the past three years."

Plaintiff's Memo at 1. The conclusion of Plaintiff's Memo indicates that the relief requested is "an order directing defendants to furnish the names and addresses of all similarly situated individuals as defined on page one herein, and further directing the issuance of notice to those individuals." Id. at 16. The terms of the notice itself are unspecified.

Defendants oppose the issuance of an order (i) directing them to provide the names and addresses of "All non-exempt current and former employees of Partners in Care and Visiting Nurse Service of New York who were not paid overtime at any time during the past three years" and (ii) directing issuance of any as yet unspecified notice to those individuals. In addition, defendants oppose any class certification for a class consisting of those individuals, all on the ground that notice at this time would be inappropriate and premature and that the parameters of the class suggested are in any event overly broad, as more fully set forth herein and in the accompanying affidavits.

## STATEMENT OF FACTS

This action was brought by plaintiff Jurgita Vaicaitiene[1] as a collective action pursuant to the Fair Labor Standards Act ("FLSA") for alleged failure to pay overtime in accordance with the FLSA and as a class action for alleged violation of the New York State Labor Law. See Complaint. By the instant motion, plaintiff seeks the Court's assistance to send notice of her FLSA claim to "similarly situated" individuals. Ms. Vaicaitiene is the only named plaintiff. The electronic docket herein reveals that no consent form has been filed by Ms. Vaicaitiene or any other individual to date. See Declaration of Kathy H. Chin dated May 20, 2005 ("Chin Decl."), ¶ 1.

As Ms. Vaicaitiene alleged in her Complaint, she "was employed as a home health aide by defendant Partners in Care. . . ." Complaint, ¶ 4. Her employment was terminated by that defendant in March 2004 with a notation not to re-hire. See Affidavit of Jay M. Conolly, sworn to May 20, 2005 ("Conolly Aff."), ¶ 2. Although Ms. Vaicaitiene now claims in her affidavit to have been employed "by the defendants," the exhibits annexed to her affidavit all clearly demonstrate that she was employed by Partners in Care, which is correctly identified in the Employee Handbook For Home Health Aides as a subsidiary of Visiting Nurse Service Of New York (Exhibit B to Vaicaitiene Aff.). Her pay stubs (Exhibit C to Vaicaitiene Aff.) demonstrate that she was paid by Partners in Care and the payment policies followed (Exhibit D to Vaicaitiene Aff.) are identified as those of Partners in Care. A visiting nurse orders home health aide services and, on a home health aide's first visit to a patient's home, a visiting nurse meets with the home health aide to review the patient's Plan of Care. The nurse will make visits

---

[1] In the complaint plaintiff's name appears as "Jurjita Vaicaitiene." At the end of her affidavit in support of her motion (the "Vaicaitiene Aff."), the signature line is for "Jurgita Vaicaitiene." This memorandum will utilize that spelling. It should be noted that the affidavit at the outset fails both to recite the name of the affiant and to indicate that she is presenting her testimony under oath.

subsequently to be sure that services are being provided to the patient in accordance with the Plan of Care, as required by applicable regulation. However, the nurses do not supervise and control home health aides' work schedules or terms and conditions of employment. In any event, these visiting nurses are not employees of Visiting Nurse Service of New York. See Affidavit of Marian Haas ("Haas Aff."), ¶¶ 3-4.

Throughout the time Ms. Vaicaitiene was employed by Partners in Care, she was exempt from FLSA's overtime requirements by operation of regulations issued by the United States Department of Labor. She was paid overtime in accordance with the provisions of the applicable Collective Bargaining Agreement. See Conolly Aff., ¶ 11. It was only in July 2004, after she had been terminated, that the Second Circuit in Coke v. Long Island Care At Home, Ltd., 376 F.3d 118 (2d Cir. 2004), pet. for cert. filed, 73 U.S.L.W. 3603 (U.S. Mar. 29, 2005) (No. 04-1315), struck down the regulation that for 30 years had made home health aides employed by agencies such as defendant Partners in Care exempt from FLSA's overtime requirements. However, the mandate of the Coke decision has never issued. The mandate was stayed by the Second Circuit by decision dated March 22, 2005. The stay was extended when the petition for certiorari was filed in the Supreme Court shortly thereafter and counsel for petitioner notified the circuit clerk. The stay remains in effect at this time pursuant to Rule 41(d)(2)(B) of the Federal Rules of Appellate Procedure. See Chin Decl., ¶¶ 4-5.

## ARGUMENT

### POINT I

### NOTICE WOULD BE INAPPROPRIATE AND PREMATURE AT THIS TIME

Plaintiff's opening premise is that federal district courts have the power and authority to oversee issuance of notice to potential plaintiffs in FLSA collective actions, citing to

the seminal case of Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989). Plaintiff's Memo at 6-7. Defendants do not disagree, and welcome the assistance of the Court in controlling any efforts of the plaintiff to disseminate notice of her claims. In Sperling, before suit was commenced, a letter was mailed to 600 employees advising them that an action would be brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). 400 consents were filed. Cross-motions ensued, with plaintiffs asking that the Court order the employer to produce names and addresses of similarly situated employees and send notice to all potential plaintiffs, and with defendant asking the Court to invalidate the previously filed consents as based on misleading solicitations. The question for the Supreme Court was whether in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to potential plaintiffs. The Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . in ADEA actions by facilitating notice to potential plaintiffs." Id. at 169. The Court went on to observe that a trial court has a "substantial interest in communications that are mailed for single actions involving multiple parties," noting that "class actions serve important goals but also present opportunities for abuse. . . ." Id. at 171.

Sperling thus suggests that early intervention by the Court in cases such as this collective action is not intended to use the power of the federal courts to provide as broadly worded a notice as possible to as many potential plaintiffs as possible, as plaintiff seems to believe. Rather, the Court's intervention is intended to control the process so as to avoid the kind of confusion created at the outset of the Sperling litigation. Similarly, Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979), also cited by plaintiff, held only that the district court could order notice "in an appropriate case."

This is not "an appropriate case." Threshold questions of law are presented by this case that must be determined before any attempt is made to craft a class or send out notices. The first rests upon the determination of the Supreme Court with respect to the <u>Coke</u> decision. The second purely legal question is the issue of retroactivity of the <u>Coke</u> decision if it is upheld.

**A.    Notice Should Not Be Issued On The Basis Of A Non-Final Judicial Decision Currently Under Review**

Before the <u>Coke</u> decision, the black letter law was clear with respect to overtime compensation of home health aides such as plaintiff under FLSA. Indeed, as the Second Circuit explained at the outset in its <u>Coke</u> decision, in challenging her employer agency's failure to pay her in accordance with FLSA requirements, plaintiff Coke "acknowledge[d] that the 'companionship services' exemption to the FLSA, as defined and interpreted by the [Department of Labor] regulations, applies to her employment and that if the regulations at issue are enforceable, she cannot prevail." 376 F.3d at 122. The regulatory scheme challenged had been in effect for some 30 years,[2] and the issues raised had been explored on a number of occasions.

---

[2]    In 1974, Congress amended FLSA to broaden its coverage to a previously unprotected group of workers, those performing "domestic services." However, Congress chose not to extend coverage to employees engaged in "babysitting services" and "companionship services," carving out an exemption that withholds FLSA benefits from such employees. FLSA thus specifically provides an exemption for those employed within the home "to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited in the regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(15). Pursuant to this authority, the Secretary promulgated a series of regulations soon after the 1974 amendment. The regulations challenged by Coke were first, 29 C.F.R. § 552.6, which defines "companionship services" as "those services which provide fellowship, care and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general housework: Provided however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked." The second regulation challenged by Coke was 29 C.F.R. § 552.109, which provides that employees performing companionship services are exempt notwithstanding that they "are employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a).

The full citations to these cases were collected by the Second Circuit in footnote 2 of its decision.[3]

In Coke, the Second Circuit upheld the enforceability of the regulation that defined the "companionship services" exemption, 29 C.F.R. § 552.6, but held that the regulation that extended the exemption to employers such as defendants was unenforceable. See id. at 129, 135. A few months later, plaintiff brought this suit.

Absent the Second Circuit decision in Coke, the Complaint alleges no colorable claim against defendants under FLSA, as Ms. Vaicaitiene's employment by Partners in Care falls within the "companionship exemption" extended to third-party agencies such as Partners in Care. Nevertheless, plaintiff asks this Court to authorize notice as if Coke is final and binding precedent. Coke is not at this time entitled to such deference.

Plaintiff's protestations to the contrary notwithstanding (Plaintiff's Memo at 11 n.6), the Second Circuit's determination to stay the mandate of Coke is not a meaningless procedural exercise. As the Second Circuit held in United States v. Simmons, 923 F.2d 934 (2d Cir.), cert. denied, 500 U.S. 919 (1991), "[a] Court of Appeals decision does not become effective until its mandate issues." Id. at 956. In Simmons, a defendant argued that an en banc ruling of the Second Circuit should be enforced and was binding "law of the case" even though issuance of the Court's mandate was stayed while the decision was reviewed, and ultimately reversed, by the Supreme Court. The Second Circuit recognized that since no mandate had

---

[3]    Footnote 2 lists the cases in chronological order as follows:  McCune v. Oregon Sr. Servs. Div., 894 F.2d 1107 (9th Cir. 1990); Cox v. Acme Health Servs., Inc., 55 F.3d 1304 (7th Cir. 1995); Salyer v. Ohio Bur. of Workers' Comp., 83 F.3d 784 (6th Cir.), cert. denied, 519 U.S. 964 (1996); Terwillinger v. Home of Hope, Inc., 21 F. Supp. 2d 1294 (N.D. Okla. 1998); Johnston v. Volunteers of Am., Inc., 213 F.3d 559 (10th Cir. 2000), cert. denied, 531 U.S. 1072 (2001); Madison v. Resources for Human Dev., Inc., 233 F.3d 175 (3d Cir. 2000); Harris v. Dorothy L. Sims Registry, No. 00 C 3208, 2001 U.S. Dist. LEXIS 23263, 2001 WL 78448 (N.D. Ill. Jan. 29, 2001); Welding v. Bios Corp., 353 F.3d 1214 (10th Cir. 2004); see Coke, 376 F. 3d at 122 n.2.

issued the "decision was never binding on the proceedings below" and "never became the 'law of the case.'" Id.; accord United States v. Doe (In re Grand Jury Investigation), 399 F.3d 527, 529 n.1 (2d Cir. 2005) (when mandate not issued, appeal "technically still pending before our panel"); Beardslee v. Brown, 393 F.3d 899, 901 (9th Cir. 2004) ("'An appellate court's decision is not final until its mandate issues'") (citation omitted), cert. denied, 125 S. Ct. 982 (2005); Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97 (3d Cir. 1988); see also United States v. Swan, 327 F. Supp. 2d 1068, 1071-72 (D. Neb. 2004) (declining to follow Eighth Circuit decision since decision not final without issuance of mandate). Since no mandate has issued in the Coke case (see Chin Decl., ¶¶ 3-5, the decision has not become effective, is non-final, and cannot be enforced.

By asking the Court's assistance in sending notice to potential plaintiffs on the basis of Coke, plaintiff is essentially asking this Court to assume that Coke will become the controlling law of this Circuit.[4] Notice on such a basis would be entirely inappropriate.

**B.    Even If The Coke Decision Were Upheld, There Is No Basis To Issue Notice For Any Period Of Time Pre-Coke**

The second threshold question of law is whether, if Coke is upheld, it should be applied retroactively. Again, it is clear that Coke should not be applied retroactively, whether

---

[4]    Plaintiff devotes much of her affidavit to discussion of the specific tasks she performed as a home health aide, presumably in an effort to demonstrate that even were Coke to be reversed, she would still have a claim based on the 20% exception to the companionship exemption. However, if plaintiff wishes to bring a representative action on that basis, she would first have to amend her Complaint, which does not articulate any such claim. Furthermore, even if she did so, she could not bring a collective action, as the individualized showings necessary to establish such a class render such a proceeding inappropriate. Thus, in Mike v. Safeco Insurance Co. of America, 274 F. Supp. 2d 216 (D. Conn. 2003), plaintiff's motion to proceed as a collective action was denied where plaintiff's FLSA exemption depended on whether he had spent more than 50% of his time performing executive, administrative, or professional work, requiring the Court to hear evidence for each proposed plaintiff of day-to-day tasks. The Court concluded that "[t]he nature of Mike's claim necessarily precludes proceeding on a collective basis." Id. at 221.

analyzed in the general terms of retroactive effect of new law in civil cases or in the specific FLSA framework.

Generally, a law should not be applied retroactively when such application "produces inequitable results, penalizing parties who ordered their affairs in reasonable reliance on a rule of law that was later invalidated. Such inequity is undesirable, not only because of the harm to the party involved, but also because it discourages adherence to contemporary laws." Mineo v. Port Auth. of N.Y. & N.J., 779 F.2d 939, 944 (3d Cir. 1985), cert. denied, 478 U.S. 1005 (1986); see also Walsche v. First Invs. Corp., 981 F.2d 649, 653 (2d Cir. 1992) (upholding the dismissal of federal claims, stating "[w]here a new rule of law upsets the settled expectations of the parties, it was believed equitable to permit those who may have relied on prior law to continue under the same legal understanding with which it was commenced. In this way, the new rule of law would be left to application in future cases"). This is clearly a case where such "settled expectations" have been upset. In addition, FLSA specifically provides an absolute defense to an employer "if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Wage and Hour Division of the Department of Labor] . . . . Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." 29 U.S.C. § 259(a).[5]

---

[5]    Plaintiff contends that applicability of this "safe harbor" is a question of fact that must await trial, citing to EEOC v. Home Insurance Co., 672 F.2d 252 (2d Cir.), aff'd in part, rev'd in part, 913 F.2d 498 (8th Cir. 1990), and Hultgren v. County of Lancaster, 753 F. Supp. 809 (D. Neb. 1990). Neither of these cases involves the invalidation of a regulation by a Court. Rather, EEOC involves the interpretation of two opinion letters and a regulation, and Hultgren the interpretation of two opinion letters and an Interpretive Bulletin. Furthermore, Hultgren is a decision after trial that does not speak to whether the good-faith defense could have been decided pre-trial, and in EEOC, the Second Circuit observed only that

In arguing that defendants cannot rely on this defense, plaintiff claims that "As discussed in the Second Circuit's opinion in <u>Coke</u>, the circumstances of the DOL's adoption of 29 C.F.R. § 552.109 should certainly have put defendants on notice that this interpretation was not authoritative, or was qualified or incomplete." Plaintiff's Memo at 11. As support for this proposition, plaintiff does not cite to the Second Circuit opinion in <u>Coke</u>, because it is simply not true that the Second Circuit ever engaged in any discussion as to whether employers should have been on notice about the supposed infirmity in 29 C.F.R. § 552.109 that escaped the notice of the many courts that had previously considered the regulation. Rather, plaintiff cites to a Tennessee case, neglecting to note that it was subsequently reversed by the Sixth Circuit. In <u>Marshall</u> v. <u>Baptist Hospital, Inc.</u>, 668 F.2d 234 (6th Cir. 1981), the Court concluded that the hospital's reliance on the rule contained in the second sentence of an administrative interpretation insulated it from retroactive liability for minimum wages.[6] In its opinion, the Sixth Circuit noted as follows:

> The Congressional purposes behind the Portal to Portal Act are stated in its first section. Congress found in 1947 that the federal courts were interpreting the minimum wage law "in disregard of long established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation;" that such interpretations "created . . . continuous uncertainty on the part of . . . both employer and employee;" and that employees were receiving "windfall payments including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in the agreed rates of pay;" and that individuals could potentially receive payment "for engaging in

---

summary judgment is "rarely appropriate where the moving party's state of mind is a material issue." 672 F.2d at 257. Under the truly "rare" circumstances here, availability of this defense to defendants is clearly not foreclosed.

[6] <u>Marshall</u> involved the interpretation of an administrative ruling contained in a Handbook issued by the Department of Labor. Even had <u>Marshall</u> not been reversed, the District Court decision is poor support for the proposition advanced by plaintiff – a regulation promulgated by the Department of Labor stands on an entirely different footing than such a ruling.

> activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged. . . ." 29 U.S.C. § 251(a).
>
> The language and legislative history of this Act indicate that courts should be hesitant to impose retroactive minimum wage liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability. <u>See</u> [H.R. No. 71, 80th Cong., 1st Sess. (1947), <u>reprinted in</u> 1947 U.S.C.C.A.N. 1029, 1936].

<u>Id.</u> at 237-38.

It should be noted that in the case before this Court, this was not a situation involving ambiguous interpretive rulings or "conflicting rules"[7] as Plaintiff intimates – there was and is a regulation on the books that unambiguously extends the companionship exemption to agencies such as defendants.   Under the circumstances, there can be no question that even if <u>Coke</u> were upheld, defendants could not be held liable for FLSA overtime for any period of time pre-<u>Coke</u>.

While plaintiff repeatedly emphasizes the proposition that only a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" is necessary at this stage, no case cited by plaintiff approximates the flimsy legal basis of this proceeding:  a single plaintiff, who has not yet filed her own consent, challenging a policy that throughout the time she was employed did <u>not</u> "violate the law."[8]  If there is no colorable legal basis for a claim, no notice should be sent.  In

---

[7]    <u>In re Farmers Insurance Exchange Class Representatives' Overtime Pay Litigation</u>, 300 F. Supp. 2d 1020 (D. Or. 2003), cited by plaintiff at Plaintiff's Memo at 12, involved the ever difficult application of the administrative employee exemption to a particular type of insurance industry employee, a far different inquiry than the unambiguous regulations that control this case absent <u>Coke</u>.  It is of interest, however, that when the Court had to assess the applicable statute of limitations and the employer's good-faith defenses it determined that the employer's conduct was "willful" only after the date of a judicial decision that found against employers. <u>Id.</u> at 1052-53.

[8]    Many of the cases cited by plaintiff for the general propositions that early notice is favored and the standard for collective action certification is not "stringent" (<u>see</u> Plaintiff's Memo at 8, 9) involve application of a FLSA exemption based on whether a particular employee is "employed in a bona fide executive, administrative or professional capacity[.]"  <u>See, e.g.</u>, <u>Hoffman v. Sbarro, Inc.</u>, 982 F. Supp. 249

Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 230 (S.D.N.Y. 2003), the Court acknowledged the difference in the threshold showings for Rule 23 class certification and FLSA collective action, but nevertheless sua sponte dismissed their FLSA claims for relief, since plaintiffs clearly had "no FLSA claims of their own." Similarly, a court will not expand the scope of a notice where, as a matter of law, there is no legal basis to do so. See LeGrand v. Education Mgmt. Corp., No. 03 Civ. 9798, 2004 WL 1962076, at **2-3 (S.D.N.Y. Sept. 2, 1976) (refusing to authorize opt-in notice to potential class member going back six years).

In essence, plaintiff asks this Court to assume that the Coke decision will be affirmed by the Supreme Court or that certiorari will be denied, and to make the further assumption that the Coke decision will be applied retroactively. To send out class notice on the basis of such assumptions can only invite the kind of confusion that the case management advocated by Sperling was intended to prevent, and does not serve to further the principles of FLSA, which specifically protects employers from the type of liability plaintiff seeks to impose. Notice at this stage would be entirely inappropriate.

## C.    Plaintiff Is An Inadequate Class Representative

Because plaintiff Vaicaitiene was terminated before the Coke decision was issued, she has no colorable individual claim against defendants. She is therefore not only an inadequate

---

(S.D.N.Y. 1997); Jacobsen v. Stop & Shop Supermkt. Co., No. 02 Civ. 5915, 2003 WL 21136308 (S.D.N.Y. 2003); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91 (S.D.N.Y. 2003). This is a far different inquiry than the question of whether the concededly applicable regulation at issue here will be held enforceable or unenforceable. In other FLSA cases cited by plaintiff, defendant employer did not seem to have a FLSA exemption to claim at all. See, e.g., Foster v. Food Emporium, No. 99 Civ. 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000); Thiebes v. Wal-Mart Stores, Inc., No. Civ. 98-802, 1999 WL 1081357 (D. Or. Dec. 1, 1999). With respect to the ADEA cases cited by plaintiff (Krueger v. New York Tel. Co., Nos. 93 Civ. 0178, 0179, 1993 WL 276058 (S.D.N.Y. July 21, 1993); Jackson v. New York Tel. Co., 163 F.R.D. 429 (S.D.N.Y. 1995)), it has been observed that "it is relatively easy to satisfy the similarly situated standard" in such cases. Pfaahler v. Consultants for Architects, Inc., No. 99 C 6700, 2000 WL 198888, at *3 (N.D. Ill. Feb. 8, 2000). In any event, as stated above, no case cited by plaintiff bears any resemblance to the unique circumstances presented by plaintiff's claims herein.

class representative, but this entire collective action is fatally flawed and subject to dismissal.
See Vengurlekar, 220 F.R.D. at 230.

## POINT II

## <u>THE NOTICE PROPOSED IS OVERLY BROAD</u>

Whether or not it would be appropriate to send any notice prior to resolution of
the legal issues discussed in Point I, the notice proposed by plaintiff is so broad that it cannot be
the viable basis for any discovery order directed to defendants or for a mass mailing.

A.    **Plaintiff Has Not Shown That She Is Similarly Situated To "All Non-Exempt Employees"**

The claims articulated by the plaintiff in her complaint are specific to her
employment by Partners in Care as a home health aide.  Plaintiff has articulated no basis
whatsoever for the expansion of her claims to all non-exempt employees of defendants.  The
only affidavit submitted is that of plaintiff, and the only proof of any policy annexed to her
affidavit pertains to home health aides.  The courts will not use their power to search out
potential plaintiffs under these circumstances.  See Levinson v. Primedia, No. 02 Civ. 2222,
2003 WL 22533428, at **1-2 (S.D.N.Y. Nov. 6, 2003) (motion to send notice denied where
showing limited to plaintiffs' own circumstances, even though there were 70 named plaintiffs);
Reed v. Mobile Cty. Sch. Sys., 246 F. Supp. 2d 1227, 1231-34 (S.D. Ala. 2003) (even where
plaintiffs produced over 80 opt-in consent forms, conditional certification of class consisting of
all non-exempt employees that may be owed overtime denied as overly broad where plaintiffs
have made no showing that they and members of proposed class are similarly situated); Donihoo
v. Dallas Airmotive, Inc., No. Civ. A. 3:98-CV-0109-P, 1998 WL 91256, at *2 (N.D. Tex. Feb.
23, 1998) (limiting notice to persons with same job description); McQuay v. AIG, Inc., No.
4:01CV00661 WRW, 2002 WL 32475212, at *3 (E.D. Ark. Oct. 25, 2002) (limiting notice

-12-

where no demonstration that actual duties performed sufficiently the same).  Having presented a

pleading and a supporting affidavit that speak only to her experiences as a home health aide, and

which make no claims about any other type of employee, plaintiff cannot now hope to send

notice to all other non-exempt employees of both defendants.

**B.    Plaintiff Has Not Shown That She Is Similarly Situated To Employees Of Both Defendants**

It would be similarly inappropriate for plaintiff to send the proposed notice to the

employees of both defendants.   The mere fact that Visiting Nurse Service Of New York

("VNSNY") is the parent corporation of Partners in Care does not entitle plaintiff to send notice

to its employees.  VNSNY does not employ home health aides.  See Haas Aff., ¶ 6.  VNSNY

therefore has no employees who are "similarly situated" to plaintiff, and notice cannot properly

be issued.  Thus, in Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Or. 2002), the Court

refused to find the putative class members to be "similarly situated" even though all were

employed by different subsidiaries and affiliates of the same corporate defendant.  Similarly, in

Belcher v. Shoney's, Inc., 927 F. Supp. 249, 252 (M.D. Tenn. 1996), the Court was careful to

carve out certain "concept" restaurants owned by Shoney's, noting that of the 24 affidavits

submitted, only one was filed by anyone who had worked at one of these other restaurants, and

that was over 12 years ago.  The fact that all the restaurants were part of the same corporate

family was not dispositive.  Whatever the corporate structure, there must be some showing that

plaintiff is "similarly situated" to employees of a company other than plaintiff's employer before

they may be included in the class.

Plaintiff's showing does not justify sending notice to any VNSNY employee.

Although she now paints herself as an employee of both Partners in Care and VNSNY, the

exhibits to her own affidavit and the Complaint demonstrate that she was indeed employed only

-13-

by Partners in Care. This conclusion is reinforced by the statements contained in the Conolly Affidavit and the Haas Affidavit. Despite plaintiff's suggestion to the contrary, any commonality of officers or directors (or the identity of counsel) will not determine whether notice should issue, and plaintiff cites no case to suggest that such factors are dispositive. See Plaintiff's Memo at 2, 15. As to the "joint-employer" issue, plaintiff's claim that there is "no question" that Partners in Care and VNSNY are joint employers begs the question. Plaintiff apparently bases this claim on three factors, that "plaintiff cared for VNSNY patients," that plaintiff "was directly supervised and controlled by VNSNY personnel" and that "compensation policies at issue were formulated by VNSNY personnel." Plaintiff's Memo at 15. The mere fact that a person cares for patients who are clients of a company surely does not suffice to make her an employee of that company. As for the claim of supervision by VNSNY personnel, as set forth in the accompanying affidavits, while care of a particular patient would be overseen by a registered nurse,[9] supervision of plaintiff's work schedule and assignments was handled by her employer, Partners in Care. Such supervision is consistent with a "typical, legitimate subcontracting arrangement." See Zheng v. Liberty Apparel Co., 355 F.3d 61, 75 (2d Cir. 2003). In any event, the nurses who visit patients are employed not by VNSNY, but generally by a subsidiary of VNSNY, Visiting Nurse Service of New York Home Care. See Haas Aff., ¶ 3; Conolly Aff., ¶ 5. Plaintiff's theory about who formulates compensation policies appears to be mere speculation based on claimed overlap among the officers and directors of defendants.

---

[9]    Visiting Nurse Service of New York Home Care and Partners in Care must both operate in accordance with State Department of Health regulations and with regulations governing Medicaid and Medicare reimbursement for home health services. Among other things, these regulations require that a registered nurse prepare a plan of care and coordinate services (42 C.F.R. § 484.30(a)), including assignment and supervision of a home health aide. See 42 C.F.R. § 484.36(c), (d). The regulations specifically provide that a home health agency such as VNSNY Home Care may utilize home health aides it does not employ. See 42 C.F.R. § 484.36(d)(4).

Such allegations do not establish a "joint employer" relationship under any variant of the "economic reality" test. See generally Zheng, 355 F.3d at 67-69. It should be noted that in paragraph 8 of her complaint, plaintiff articulated three of the more commonly accepted indicia of the joint employer relationship, the factual basis for which defendants denied in their Answer. As set forth in the accompanying affidavits, it is Partners in Care, not VNSNY, that has the authority to hire and fire the home health aide employees of Partners in Care such as plaintiff. It is Partners in Care, not VNSNY, that supervises, directs and controls their work, and it is Partners in Care, not VNSNY, that prescribes their work hours and rate of pay. In any event, as the cases cited above demonstrate, what is important is some showing that plaintiff is indeed "similarly situated" to the claimed class. No such proof has been submitted. See also Pfohl v. Farmers Ins. Grp., No. CV03-3080 DT, 2004 WL 554834, at **3-7 (C.D. Cal. Mar. 1, 2004).

Plaintiff claims that Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303 (S.D.N.Y. 1998), is "right on point" with respect to her request to send notice to employees of both defendants. Plaintiff's Memo at 15. However, Realite does not stand for the proposition that employment by one company automatically entitles a plaintiff to send notice to employees of the parent corporation. In Realite, plaintiffs had submitted 10 affidavits presenting proof with respect to practices at 15 restaurants, with a promise of additional affidavits within a week. Judge Sotomayor also noted that "a large number of current and former employees of the 15 Ark Restaurants have already opted into the case." 7 F. Supp. 2d at 308. The Court's determination to permit notice thus in no way amounted to any simplistic assumption based on corporate ownership. Indeed, Judge Sotomayor in discussing the Belcher's case expressed approval of that Court's decision to omit certain Shoney's restaurants from the notice, as "these other theme restaurants were sued on the sole grounds that they were commonly owned by the defendant." Id. at 309.

Plaintiff also cites <u>Jackson</u>, 163 F.R.D. 429, in support of her request, suggesting by her parenthetical that notice was sent in that case to "employees of parent corporation." However, it appears that while both defendants in that case were subject to the court's order, the order was only to provide information with respect to one company, New York Telephone. <u>Id.</u> at 432-33. If anything, then, <u>Jackson</u> also suggests that a parent corporation will not automatically be swept up into a collective action notice.

**C.     The Proposed Time Frame Of Three Years Is Inappropriate**

In order to extend the normal FLSA limitations period from two years to three years, a plaintiff must present evidence that the employer affirmatively knew it was violating the FLSA or that it was acting in "reckless disregard" of the FLSA. <u>McLaughlin</u> v. <u>Richard Shoe Co.</u>, 486 U.S. 128, 133, 135 n.13 (1988); <u>see</u> 29 U.S.C. § 255(a).

The notice devised by plaintiff herein suggests a time-frame of three years. No reasonable jury could find a willful violation of FLSA where a home health agency's payment policies conformed to regulations in effect for 30 years. <u>See</u> <u>generally</u> n.7, <u>supra</u>. Accordingly, utilization of the three-year statute of limitations is inappropriate.

**D.     Under The Terms Of The Proposed Notice, Plaintiff Would Not Be A Member Of The Class**

Although the notice as proposed is overly broad for all the reasons stated above, it should be noted that, as currently drafted, the proposed class would not include plaintiff, since, as her pay stubs indicate, she was paid overtime. <u>See</u> Exhibit C to Vaicaitiene Aff. In fact, she was paid overtime in accordance with the terms of the Employee Handbook and the Collective Bargaining Agreement, which provide for payment at time and a half minimum wage or at the regular rate, whichever is greater. <u>See</u> Conolly Aff., ¶ 11. Payment of overtime at 1.5 times

minimum wage complies with New York State Law. See 12 N.Y.C.R.R. § 142-2.2. A class as

haphazardly defined as the one suggested cannot be a valid basis for discovery and notice.

*          *          *

For all these reasons, the proposed notice is defective and must be rejected.

**CONCLUSION**

For the reasons set forth above and in the accompanying affidavits, this Court

should not commit its power and authority to the notice demanded by plaintiff. Defendants

respectfully request that the Court deny plaintiff's motion in its entirety.

Dated:     New York, New York
           May 20, 2005


Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP


By: _____
            Kathy H. Chin (KC-7635)
Attorneys for Defendants
Office and Post Office Address:
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000

-17-