UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

JURJITA VAICAITIENE, on behalf of herself and all
others similarly situated,

                                       Plaintiff,

                -against-

PARTNERS IN CARE, INC.; and VISITING NURSE
SERVICE OF NEW YORK, INC.,

                                Defendants.

:     04-CV-9125 (RMB) (THK)
:     (Electronically Filed)
:
:
:     **DECLARATION OF**
:     **KATHY H. CHIN IN**
:     **OPPOSITION TO**
:     **MOTION FOR NOTICE**
:
:
:

------------------------------------------------------------------------x

KATHY H. CHIN states, under penalty of perjury, as follows:

    1.    I am a member of the law firm of Cadwalader, Wickersham & Taft LLP, attorneys for defendants. I am fully familiar with the facts and circumstances set forth herein. I make this declaration to describe for the Court certain procedural aspects of this proceeding and of Coke v. Long Island Care At Home, Ltd., 376 F.3d 118 (2d Cir. 2004), pet. for cert. filed, 73 U.S.L.W. 3603 (U.S. Mar. 29, 2005) (No. 04-1315).

    2.    Annexed hereto as Exhibit A is a copy of the electronic docket for this case as available on the PACER system earlier today. It is apparent from the docket that no individual has filed an "opt-in" consent form with the Clerk, including plaintiff.

    3.    Annexed hereto as Exhibit B is a copy of the Second Circuit docket for the Coke case, as available on the PACER system earlier this week. As these docket entries confirm, defendants-appellees Long Island Care At Home and Maryann Osborne filed an application for rehearing in the Coke case in the Second Circuit on September 7, 2004. The application was accompanied by six motions for leave to file amicus briefs in support of the application. The application was denied on January 10, 2005. At the same time, the Second Circuit denied all six motions for leave to file amicus briefs.

4.     Long Island Care At Home and Maryann Osborne moved the Second Circuit on January 17, 2005 to stay the mandate.  Approximately two months later, on March 22, 2005, an order was filed granting their motion.  The mandate was ordered stayed pending application to the Supreme Court for certiorari review.  A copy of the order is annexed hereto as Exhibit C.

5.     The petition for certiorari was filed in the Supreme Court of the United States shortly thereafter.  Annexed hereto as Exhibit D is a copy of the petition for certiorari, without appendices.  On March 30, 2005, the attorney for petitioners sent a letter to the Clerk of the Second Circuit regarding the filing, as reflected in the Second Circuit docket.  A copy of the letter is annexed hereto as Exhibit E.  Pursuant to Rule 41(d)(2)(B) of the Federal Rules of Appellate Procedure, filing the petition for certiorari and notifying the circuit clerk effects a continuation of the stay of the mandate until final disposition by the Supreme Court.

6.     Annexed hereto as Exhibit F is a copy of the Supreme Court docket for the Coke case as available on the Court's website.  The docket confirms that the petition has been filed, and that since this filing, five amicus briefs, opposition to the petition, and a reply have been filed.  According to the docket, these papers have been distributed for conference of June 2, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2005

_____
KATHY H. CHIN

# EXHIBIT A

Case 1:04-cv-09125    Document 27-2    Filed 05/20/2005    Page 2 of 6

CASREF, CLOSED, ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:04-cv-09125-RMB-THK

| | |
|---|---|
| Vaicaitiene v. Partners in Care, Inc. et al | Date Filed: 11/18/2004 |
| Assigned to: Judge Richard M. Berman | Jury Demand: None |
| Referred to: Magistrate Judge Theodore H. Katz | Nature of Suit: 710 Labor: Fair Standards |
| Cause: 28:1331 Fed. Question: Other | Jurisdiction: Federal Question |

**Plaintiff**

**Jurjita Vaicaitiene**
*on behalf of herself and all others
similarly situated*

represented by **Karl J. Stoecker**
Law Offices of Karl J. Stoecker
275 Madison Avenue
New York, NY 10016
(212) 818-0080
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Karl J. Stoecker**
Law Offices of Karl J. Stoecker
275 Madison Avenue
New York, NY 10016
212-818-0080
Fax: 212-684-4923
Email: kjs@kjslawfirm.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Partners in Care, Inc.**

represented by **Kathy Hirata Chin**
Cadwalader, Wickersham & Taft LLP
100 Maiden Lane
New York, NY 10038
212-504-6542
Fax: 212-5045614
Email: kathy.chin@cwt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Visiting Nurse Service of New York, Inc.**

represented by **Kathy Hirata Chin**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/18/2004 | 1 | COMPLAINT against Partners in Care, Inc., Visiting Nurse Service of New York, Inc.. (Filing Fee $ 150.00, Receipt Number 526308) Document filed by Jurjita Vaicaitiene.(laq, ) Additional attachment(s) added on 11/30/2004 (laq, ). (Entered: 11/19/2004) |
| 11/18/2004 | | SUMMONS ISSUED as to Partners in Care, Inc., Visiting Nurse Service of New York, Inc.. (laq, ) (Entered: 11/19/2004) |
| 11/18/2004 | | Magistrate Judge Theodore H. Katz is so designated. (laq, ) (Entered: 11/19/2004) |
| 11/18/2004 | | Case Designated ECF. (laq, ) (Entered: 11/19/2004) |
| 12/15/2004 | 2 | STIPULATION AND ORDER: defendants time to answer or move against the complaint is extended to 2/4/05. (Signed by Judge Richard M. Berman on 12/15/04) (db, ) (Entered: 12/15/2004) |
| 12/15/2004 | | Set Answer Due Date purs. to 2 Stipulation and Order as to Partners in Care, Inc. answer due on 2/4/2005; Visiting Nurse Service of New York, Inc. answer due on 2/4/2005. (db, ) (Entered: 12/15/2004) |
| 01/10/2005 | 3 | ORDER OF DISCONTINUANCE without prejudice and without costs; provided that within 30 days, plaintiffs may, apply for restoration.... (Signed by Judge Richard M. Berman on 1/10/05) (jf, ) (Entered: 01/13/2005) |
| 01/12/2005 | 5 | ENDORSED LETTER addressed to Judge Berman from Kathy H. Chin dated 1/12/05 re: request that defendants' time to respond to the complaint be extended. Conference on 1/14/05 at 9:30 a.m. (Signed by Judge Richard M. Berman on 1/12/05) (yv, ) (Entered: 01/14/2005) |
| 01/13/2005 | 4 | ENDORSED LETTER addressed to Judge Richard M. Berman from Karl J. Stoecker dated 1/11/05 re: Counsel for plaintiff writes to request restoration of this action to the Court calendar. 1/14/05 @9:30. So Ordered. (Signed by Judge Richard M. Berman on 1/13/05) (jco, ) (Entered: 01/13/2005) |
| 01/21/2005 | 6 | NOTICE of Appearance by Kathy Hirata Chin on behalf of Partners in Care, Inc., Visiting Nurse Service of New York, Inc. (Chin, Kathy) (Entered: 01/21/2005) |
| 01/21/2005 | 7 | RULE 7.1 DISCLOSURE STATEMENT. Document filed by Partners in Care, Inc., Visiting Nurse Service of New York, Inc..(Chin, Kathy) (Entered: 01/21/2005) |
| 02/03/2005 | 8 | ENDORSED LETTER addressed to Judge Richard M. Berman from Kathy Chin dated 2/2/05 re: counsel for dfts request to file a motion to dismiss or alternatively stay these proceedings. Pl. to respond with brief (2-3) pp letter by 2/10/05. Counsel thereafter to set conference with court deputy. There is not stay in the interim. Take up discovery issues with the |

| | | Magistrate. (Signed by Judge Richard M. Berman on 2/3/05) (dle, ) (Entered: 02/04/2005) |
|---|---|---|
| 02/09/2005 | 9 | STIPULATION AND ORDER: all defendants time to answer or move against the complaint is extended to 2/28/05. (Signed by Judge Richard M. Berman on 2/8/05) (db, ) (Entered: 02/10/2005) |
| 02/09/2005 | | Set Answer Due Date purs. to 9 Stipulation and Order as to Partners in Care, Inc. answer due on 2/28/2005; Visiting Nurse Service of New York, Inc. answer due on 2/28/2005. (db, ) (Entered: 02/10/2005) |
| 02/25/2005 | 10 | STIPULATION AND ORDER (Final); dfts time to answer or move agaisnt the complaint shall be,and hereby is extended to 3/7/05; final extension. (Signed by Judge Richard M. Berman on 2/25/05) (pl, ) Modified on 2/28/2005 (pl, ). (Entered: 02/28/2005) |
| 02/25/2005 | | Set Answer Due Date purs. to 10 Stipulation and Order as to Partners in Care, Inc. answer due on 3/7/2005; Visiting Nurse Service of New York, Inc. answer due on 3/7/2005. (pl, ) (Entered: 02/28/2005) |
| 03/02/2005 | 11 | ENDORSED LETTER addressed to Judge Richard M. Berman from Karl J. Stoecker dated 2/9/05 re: requesting permission to file motion to dismiss. Request to file motion to dismiss is respectfully denied at this time (without prejudice) in view of the 2d Circuit ruling in Coke, 376 F.3d 118 (2d Cir. 2004); see also Antwi, 349 F. Supp 2d 663 (S.D.N.Y.) (Signed by Judge Richard M. Berman on 3/2/05) (kw, ) (Entered: 03/04/2005) |
| 03/03/2005 | 12 | ENDORSED LETTER addressed to Judge Richard M. Berman from Kathy H. Chin dated 3/1/05 re: bringing to the Court's attention a scheduling issue. See Court's most recent (3/2/05) endorsement. (Signed by Judge Richard M. Berman on 3/3/05) (kw, ) (Entered: 03/04/2005) |
| 03/03/2005 | 15 | ENDORSED LETTER addressed to Judge Richard M. Berman from Karl J. Stoecker dated 2/9/05 re: request to file motion to dismiss is respectfully denied at this time (without prejudice) in view of the 2d Circuit ruling in Coke, 376 F. 3d 118(2d Cir. 2004); see also Antwi, 349 F. Supp 2d 663 (S.D.N.Y.). (Signed by Judge Richard M. Berman on 3/2/05) (sac, ) (Entered: 03/09/2005) |
| 03/07/2005 | 13 | ANSWER to Complaint. Document filed by Partners in Care, Inc., Visiting Nurse Service of New York, Inc..(Chin, Kathy) (Entered: 03/07/2005) |
| 03/07/2005 | 14 | AFFIDAVIT OF SERVICE. Document filed by Partners in Care, Inc., Visiting Nurse Service of New York, Inc.. (Chin, Kathy) (Entered: 03/07/2005) |
| 03/15/2005 | 16 | ENDORSED LETTER addressed to Judge Berman from Karl Stoecker dated 3/14/05: re plntf's request for a pre motion conferencere: conference on 3/30/05 at 10:30. Deft to respond by 3/21/05. (Signed by Judge Richard M. Berman on 3/15/05) (cd, ) (Entered: 03/17/2005) |
| 04/14/2005 | 17 | STIPULATION AND ORDER; Plaintiff shall serve and file her papers in |

| | | |
|---|---|---|
| | | support of motion for notice to similarly situated individuals on or before 04/20/05; Defendants' papers in opposition to the motion shall be served and filed on or before 5/9/05; plaintiffs reply papers, if any, shall be served and filed on or before 05/16/05; (Signed by Judge Richard M. Berman on 4/14/05) (djc, ) (Entered: 04/18/2005) |
| 04/19/2005 | | ***REJECTION OF ATTEMPTED PAPER FILING IN ECF CASE. The following document(s) notice of change of address by Mr. Karl J. Stoecker, was rejected by the Clerk's Office and must be FILED ELECTRONICALLY on the Court's ECF System. (snu, ) (Entered: 05/02/2005) |
| 04/22/2005 | 18 | FIRST MOTION for Pre-Trial *Notice to "similarly situated" individuals*. Document filed by Jurjita Vaicaitiene. Return Date set for 5/16/2005 09:30 AM. (Stoecker, Karl) (Entered: 04/22/2005) |
| 04/22/2005 | 19 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial. Referred to Magistrate Judge Theodore H. Katz. (Signed by Judge Richard M. Berman on 4/22/05) (yv, ) (Entered: 04/26/2005) |
| 05/06/2005 | 20 | NOTICE of Change of Address by Karl J. Stoecker on behalf of Jurjita Vaicaitiene. New Address: Law Offices of Karl J. Stoecker, 18 East 41st Street, New York, New York, USA 10017, 212-818-0080. (Attachments: # 1)(Stoecker, Karl) (Entered: 05/06/2005) |
| 05/06/2005 | 21 | FILING ERROR - WRONG DOCUMENT TYPE SELECTED FROM MENU - FIRST MOTION to Certify Class. Document filed by Jurjita Vaicaitiene. (Stoecker, Karl) Modified on 5/13/2005 (kg). (Entered: 05/06/2005) |
| 05/06/2005 | 22 | MOTION to Certify Class. Document filed by Jurjita Vaicaitiene. (Stoecker, Karl) (Entered: 05/06/2005) |
| 05/06/2005 | 23 | FILING ERROR - WRONG DOCUMENT TYPE SELECTED FROM MENU - MOTION to Certify Class. Document filed by Jurjita Vaicaitiene. (Stoecker, Karl) Modified on 5/13/2005 (kg). (Entered: 05/06/2005) |
| 05/13/2005 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DOCUMENT TYPE ERROR. Note to Attorney Karl Stoecker to RE-FILE Document 21 FIRST MOTION to Certify Class, 23 MOTION to Certify Class. Use the document type Memorandum of Law in support of Motion and Declaration in Support of Motion found under the document list Responses and Replies. (kg) (Entered: 05/13/2005) |
| 05/17/2005 | 24 | MEMORANDUM OF LAW in Support re: 18 FIRST MOTION for Pre-Trial *Notice to "similarly situated" individuals.*. Document filed by Jurjita Vaicaitiene. (Stoecker, Karl) (Entered: 05/17/2005) |
| 05/18/2005 | 25 | STIPULATION AND ORDER, Set Deadlines/Hearing as to 22 MOTION to Certify Class: Responses due by 5/20/2005; Replies due by |

| | | 5/27/2005. (Signed by Judge Theodore H. Katz on 5/9/05) (sac, ) (Entered: 05/18/2005) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/20/2005 01:32:50 | | | |
| **PACER Login:** | cw1204 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:04-cv-09125-RMB-THK |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

# EXHIBIT B

Home    PACER    Opinions                                    Help

# General Docket
## US Court of Appeals for the Second Circuit

Second  Circuit  Court  of  Appeals

Court of Appeals Docket #:03-7666-cv

Nsuit:      3710     LABOR LAWS-Fair Labor Standard
Coke v. Long Island Care at

Appeal from: EDNY (CENTRAL ISLIP)

Case type information:

Lower court information:
        District:      02-cv-2010

        Trial Judge    Thomas C. Platt
        MagJudge:
        Date Filed:    04/02/02

        Date                    5/30/2003
        order/judgement:
        Date NOA filed:         6/24/2003

Fee status:Paid
Panel Assignment:

Panel:    JMW    RAK    JG
Date of decision          7/22/04

Prior cases:    NONE

Current cases:  NONE

 Docket as of April 25, 2005          7:12 pm

☐

Official Caption 1/

------------------

Docket No. 03-7666

EVELYN COKE, individually and on

behalf of others similarly situated,

Plaintiff - Appellant,

v.

LONG ISLAND CARE AT HOME, LTD. and MARYANN OSBORNE,

Defendants - Appellees.

 Docket as of April 25, 2005         7:12 pm

 ☐


 Docket as of April 25, 2005         7:12 pm

 ☐


Evelyn  Coke                        Craig  Becker Esq.
Plaintiff-Appellant                 [ ret ]
                                    Service Employee International
                                    25 E. Washington St.
                                    Chicago  , IL ,  60602
                                    312-236-7800

Long Island Care at                 Daniel S. Alter Esq.
Defendant-Appellee                  [ ret ]
                                    Alter & Alter
                                    300 E. 42nd St.
                                    New York , NY , 10017
                                    212-867-7777

Maryann  Osborne                    Daniel S. Alter Esq.(See above)
Defendant-Appellee                  [ LD ret ]

Evelyn  Coke                        Dean  Kokkoris Esq.
Plaintiff-Appellant                 [ ret ]
                                    Michael Shen & Associates
                                    225 Broadway
                                    New York  , NY ,  10007
                                    212-227-0300

Home Care Association of New Yo      Edwin G. Schallert Esq.
Movant                              [ LD n ]
                                    Debevoise & Plimpton LLP
                                    919 3rd Ave.
                                    New York  , NY , 10022
                                    212-909-6000

 Docket as of April 25, 2005         7:12 pm

 ☐


U.S. Dept. of Labor                 Ford F. Newman Esq.
Amicus Curiae                       [ ret ]
                                    U.S. Dept. of Labor, SOL-EB
                                    200 Constitution Ave., N.W.
                                    Washington  , DC ,  20210
                                    202-693-5555

New York State Association of H      Joel L. Hodes Esq.
Movant                              [ LD n ]

```
                              Whiteman Osterman & Hanna, LLP
                              1 Commerce Plaza
                              Albany  , NY , 12260
                              518-487-7600

Evelyn  Coke                  Leon Marc Greenberg Esq.
Plaintiff-Appellant           [ ret ]

                              225 Broadway
                              New York  , NY , 10007
                              212-227-4841

Evelyn  Coke                  Michael  Shen Esq.
Plaintiff-Appellant           [ ret ]
                              Michael Shen & Associates
                              225 Broadway
                              New York  , NY , 10007
                              212-227-0300

Continuing Care Leadership Coal Roxanne G. Tena-Nelson Esq.
Movant                        [ LD n ]
                              CCLC
                              555 W. 57th St.
                              New York , NY , 10019
                              212-258-5330

Home Care Council of New York C Stephen E. Zweig Esq.
Movant                        [ LD n ]
```

Docket as of April 25, 2005        7:12 pm

```
[]
```

```
                              Ford & Harrison, LLP
                              100 Park Ave.
                              New York , NY , 10017
                              212-453-5900

New York City                 Susan  Choi-Hausman Esq.
Movant                        [ LD n ]
                              Corporation Counsel, N.Y.C. Depar
                              100 Church St.
                              New York  , NY , 10007
                              212-788-1159 or 1073

National Association for Home C William A. Dombi Esq.
Movant                        [ LD n ]
                              Center for Health Care Law
                              228 7th St., S.E.
                              Washington , DC , 20003
                              202-547-5262
```

Docket as of April 25, 2005        7:12 pm

```
[]
```

6/30/03 Copy of district court judgment RECEIVED.
        [03-7666]

6/30/03 Copy of district court memorandum and order
        RECEIVED. [03-7666]

7/11/03 Appellant Evelyn Coke Form C filed, with
        proof of service. [03-7666] Form C deadline
        satisfied.

7/11/03 Appellant Evelyn Coke Form D filed, with
        proof of service. [03-7666] Form D deadline
        satisfied.

7/17/03 Notice of appeal acknowledgment letter from
        Arnold S. Klein for Appellee Maryann Osborne,
        Appellee Long Island Care at, Michael Shen
        for Appellant Evelyn Coke, Leon Marc
        Greenberg for Appellant Evelyn Coke received.

7/24/03 Scheduling order #1 filed. Record on appeal
        due on 8/21/03. Appellant's brief and
        appendix due on 8/28/03. Appellee's brief due
        on 9/29/03. Argument as early as of 11/10/03.
        (Pre-Argument Conference scheduled for August
        7, 2003 at 10:30 am --SB ).

7/24/03 Pre-Argument Conference Notice and Order from
        Stanley Bass filed.

 8/7/03 First pre-argument conference held by Staff
        Counsel SB.

 8/7/03 New scheduling order number 2 filed. New
        record on appeal due date is 10/1/03. New
        appellant's brief due date is 10/6/03. New

LI

        appellee's brief due date is 11/5/03, . New
        argument week as early as 12/15/03.(SB)

 8/8/03 Notice to counsel:Order filed August 7, 2003

9/19/03 Letter dated 9/16/03 from Julia Hiatt, Legal
        Assistant, informing the Court that Dean
        Kokkoris and Craig Becker are counsel of
        record for the plaintiff, received

10/6/03 Record on appeal index in lieu of record
        filed.

10/10/03 Appellant Evelyn Coke brief FILED with proof
         of service.

10/10/03 Appellant Evelyn Coke joint appendix filed
         w/pfs. Number of volumes: 1.

11/3/03 New scheduling order number 3 filed. New
        appellee's brief due date is 11/26/03, . New
        argument week as early as 1/5/04. (SB)

11/4/03 Notice to counsel re: Scheduling order #3
        filed.

11/26/03 Appellee Long Island Care at, Appellee
         Maryann Osborne defective letter brief filed.
         Notice sent to party to correct by 12/10/03.
         (Need motion to attach district court
         memorandum and missing corporate disclosure
         statement)

12/5/03 Appellee Long Island Care at, Appellee
        Maryann Osborne defective appellee's letter
        brief cured. Satisfy defective document
        response due.

12/5/03 Appellee Long Island Care at, Appellee

Docket as of April 25, 2005          7:12 pm

        Maryann Osborne motion to attach district
        court memorandum FILED (w/pfs). [2495395-1]

12/8/03 New party added: U.S. Dept. of Labor.

12/8/03 Amicus Curiae U.S. Dept. of Labor brief filed
        with proof of service.

12/9/03 Letter dated 12/5/03 from Craig Becker, Esq.,
        informing the Court that he is not opposed to
        appellees' motion to file letter brief with
        district court memorandum received

12/10/03 Appellant Evelyn Coke motion to extend time
         to file reply brief FILED (w/pfs).
         [2497583-1]

12/12/03 Appellee Long Island Care at, Appellee
         Maryann Osborne LETTER BRIEF filed with proof
         of service. Satisfy appellee's brief due.

12/12/03 Order(endorsed on appellant's letter
         submitted by Craig Becker, Esq. filed stating
         re: The above request is hereby granted.(SB)
         Note: Appellant requests to file a 10 page
         reply brief.

12/12/03 Notice to counsel re: Granted motion to file
         appellees' brief, order, and motion for
         extension of time.

12/12/03 Order FILED GRANTING motion for extended time
         [2497583-1] by Appellant Evelyn Coke,
         endorsed on motion form dated 12/10/03.
         Extended appellant's reply brief due on
         12/26/03.(SB)

12/12/03 Order FILED GRANTING motion to attach

district court memorandum [2495395-1] by
Appellee Long Island Care at, Maryann Osborne
Docket as of April 25, 2005          7:12 pm

☐

, endorsed on motion form dated 12/5/03. (SB)

12/18/03 Proposed for argument the week of 3/1/04.

12/29/03 Appellant Evelyn Coke reply brief filed with
         proof of service. Satisfy appellant's reply
         brief due.

1/21/04 Letter dated 1/13/04 from Craig Becker, Esq.,
        suggesting that the U.S. Dept. of Labor be
        invited to argue on behalf of the appellee
        received

1/22/04 APPELLEE    Long Island Care at,  Maryann
        Osborne, 28(J) letter received.

1/27/04 Set for argument on 3/4/04.

1/29/04 APPELLEE    Long Island Care at,  Maryann
        Osborne, 28(J) letter received.

2/6/04 Amicus Curiae   U.S. Dept. of Labor motion to
       allow oral argument filed with proof of
       service.

2/6/04 U.S. Dept. of Labor defective motion filed.
       Notice sent to

       party to correct by 2/13/04.(missing motion
       information form)

2/11/04 U.S. Dept. of Labor defective motion cured.

2/20/04 Order FILED GRANTING motion to allow oral
        argument by Amicus Curiae  U.S. Dept. of
        Labor, endorsed on motion dated 2/6/2004

2/20/04 Notice to counsel in re: order dated 2/20/04
Docket as of April 25, 2005          7:12 pm

⊓

3/4/04 Case heard before WALKER, CH.J; KATZMANN, C
       .JJ; GLEESON, D.J
CD DATE: 3/4/04

7/22/04 Judgment of the district court is Affirmed in
        part; Vacated in part; and Remanded by
        published signed opinion filed. (JMW)

7/22/04 Judgment filed.

7/22/04 Notice to counsel in re: Opinion filed.

8/2/04 Appellee  Long Island Care at, Appellee
       Maryann Osborne motion extended time(to file
       petition for rehearing with suggestion for
       rehearing en banc) filed with proof of
       service.

8/5/04 Letter received from Roni Glaser requesting
       an oral argument tape.  Fee pd.  Forwarded to
       calendar.  173817

8/9/04 Order FILED GRANTING motion extended time to
       file petition for rehearing(by Sept. 7,
       2004)by Appellee  Long Island Care at,
       Appellee  Maryann Osborne, endorsed on motion
       dated 8/2/2004.

       Before: JMW, Cheif Judge, RAK, C.J., Gleeson,
       D.J.(AH)

8/9/04 Oral argument tape PICKED UP.  RONI GLASER

8/10/04 Errata sheet re: filed.(JMW)

8/10/04 Notice to counsel in re: Errata sheet.

Docket as of April 25, 2005          7:12 pm

!|

8/11/04 Notice to counsel in re: Granted motion for
        extension of time to file petition for
        rehearing.

8/20/04 Letter received from Timothy K. Beeken
        requesting tape of the oral argument.  Fee
        Paid.  Forward to Calendar. Receipt # 174030.

8/20/04 Appellee  Long Island Care at, Appellee
        Maryann Osborne motion be relieved as
        attorney filed with proof of service.

9/1/04 Appellee  Long Island Care at, Appellee
       Maryann Osborne motion be relieved as
       attorney(Meltzer, Lippe, Goldstein &
       Breitstone, LLP) filed with proof of service.

9/2/04 Appellee  Long Island Care at, Appellee
       Maryann Osborne motion be substituted as
       attorney filed with proof of service.

9/3/04 Oral argument tape mailed to Timothy Beeken

9/7/04 Appellee  Long Island Care at, Appellee
       Maryann Osborne Petition for rehearing and
       petition for rehearing en banc filed with
       proof of service.

9/7/04  Movant    Home Care Council of New York City, Inc. motion file brief as amicus curiae filed with proof of service.

9/7/04  Movant    Home Care Association of New York State, Inc. motion file brief as amicus curiae filed with proof of service.

9/7/04  MOVANT    Home Care Council of New York City, Inc., brief received.(Problem: Pending motion for leave to file)

Docket as of April 25, 2005           7:12 pm

9/7/04  MOVANT    Home Care Association of New York State, Inc., brief received.(Problem: Pending motion for leave to file)

9/7/04  Movant    New York State Association of Health Care Providers, Inc. motion file brief as amicus curiae filed with proof of service.

9/7/04  MOVANT    New York State Association of Health Care Providers, Inc., brief received .(Problem: Pending motion for leave to file)

9/10/04  Movant    National Association for Home Care & Hospice motion file brief as amicus curiae filed with proof of service.

9/10/04  MOVANT    National Association for Home Care & Hospice, brief received.(Problem: Pending motion for leave to file)

9/13/04  Movant    New York City motion file brief as amicus curiae filed with proof of service.

9/13/04  MOVANT    New York City, brief received .(Problem: Pending motion to file)

9/14/04  Movant    Continuing Care Leadership Coalition, Inc. motion file brief as amicus curiae filed with proof of service.

9/14/04  MOVANT    Continuing Care Leadership Coalition, Inc., 20 briefs received. Pending motion to file.

9/15/04  Movant Continuing Care Leadership Coalition's amended Certificate of service filed.

9/20/04  Extra copies of amicus brief from  MOVANT
Docket as of April 25, 2005           7:12 pm

Continuing Care Leadership Coalition, Inc.,
received.

9/29/04 Order FILED GRANTING motion be relieved as
attorney by Appellee  Long Island Care at,
Appellee  Maryann Osborne, endorsed on motion
dated 9/14/2004. IT IS HEREBY ORDERED that
the motion by Ford & Harrison, LLP to be
relieved as counsel for appellees is GRANTED.
Before: JMW, Chief Judge, RAK, C.J., JG, D.J
.(TWY)

9/29/04 Order FILED GRANTING motion be relieved as
attorney by Appellee  Long Island Care at,
Appellee  Maryann Osborne, endorsed on motion
dated 9/14/2004. IT IS HEREBY ORDERED that
the motion by Meltzer, Lippe, Goldstein &
Breitstone, LLP to be relieved as counsel for
appellees is GRANTED. Before: JMW, Chief
Judge, RAK, C.J. JG, D.J.(TWY)

9/29/04 Order FILED GRANTING motion be substituted as
attorney by Appellee  Long Island Care at,
Appellee  Maryann Osborne, endorsed on motion
dated 9/14/2004. IT IS HEREBY ORDERED that
the motion by appellees for leave to
substitute in Daniel S. Alter, Esq., as the
counsel of record in connection with their
petition for rehearing in this matter is
GRANTED. Before: JMW, Chief Judge, RAK, C.J.,
JG, D.J.(TWY)

10/4/04 Notice to counsel in re: Granted motions to
withdraw as counsel, and granted motion to
substitute counsel.

1/10/05 Order FILED DENYING motion Petition for
rehearing by Appellee  Long Island Care at,
Appellee  Maryann Osborne, endorsed on motion
dated 9/14/2004,  Order FILED DENYING motion
petition for rehearing en banc by Appellee
Long Island Care at, Appellee  Maryann
Osborne, endorsed on motion dated 9/14/2004
.(AH)

Docket as of April 25, 2005         7:12 pm

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  Home Care Council of
New York City, Inc., endorsed on motion dated
9/14/2004.(AH)

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  New York City,
endorsed on motion dated 9/14/2004.(AH)

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  National Association

for Home Care & Hospice, endorsed on motion
dated 9/14/2004.(AH)

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  New York State
Association of Health Care Providers, Inc.,
endorsed on motion dated 9/14/2004.(AH)

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  Home Care
Association of New York State, Inc., endorsed
on motion dated 9/14/2004.(AH)

1/10/05 Order FILED DENYING motion file brief as
amicus curiae by Movant  Home Care
Association of New York State, Inc., Movant
Continuing Care Leadership Coalition, Inc.,
endorsed on motion dated 9/14/2004.(AH)

1/11/05 Notice to counsel in re: Denied petition for
rehearing with suggestion for rehearing en
banc and denied motions to file as amici.

1/17/05 Appellee  Long Island Care at, Appellee
Maryann Osborne motion to stay the mandate
filed with proof of service.

1/21/05 Appellant  Evelyn Coke,  memorandum in
Docket as of April 25, 2005          7:12 pm

opposition to motion stay the mandate filed
with proof of service.

1/25/05 Letter dated 1/25/05 from Daniel Alter, Esq.,
in response to memorandum in opposition to
motion to stay mandate, received

3/22/05 Order FILED GRANTING motion stay the mandate
by Appellee  Long Island Care at, Appellee
Maryann Osborne, endorsed on motion dated
1/17/2005. IT IS HEREBY ORDERED that the
motion by appellee to stay mandate pending
application to the Supreme Court for
certiorari review is GRANTED. Before: Hon.
John M. Walker, Jr., Chief Judge, Hon. Robert
A. Katzmann, Circuit Judge, Hon. John Gleeson
, District Judge.(TWY)

3/22/05 Notice to counsel in re: Granted motion to
stay the mandate.

4/5/05 Letter dated 3/30/05 from Daniel Alter, Esq.,
regarding FRAP 41(d)(2)(B) automatic stay
received

4/20/05 Letter received from Marc Fulkert requesting
tape of the oral argument. Fee Paid.

Forwarded to Calendar. Receipt # 176893.

Docket as of April 25, 2005          7:12 pm

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/17/2005 12:04:40 | | |
| **PACER Login:** | cw1204 | **Client Code:** |
| **Description:** | dkt report | **Case Number:** 03-7666 |
| **Billable Pages:** | 15 | **Cost:** 1.20 |

# EXHIBIT C

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse at Foley Square    40 Centre Street, New York, NY 10007    Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): __03-7666__       Caption [use short title]

Motion for: __Stay of the Mandate__      Coke v. Long Island Care at Home, Ltd.

Set forth below precise, complete statement of relief sought:
__Stay of the mandate for 90 days__
__pending application to the Supreme Court__
__for certiorari review.__

JAN 17 2005

MOVING PARTY: __Long Island Care at Home Ltd.,__
__& Maryann Osborne__
☐ Plaintiff    ☒ Defendant
☐ Appellant/Petitioner    ☒ Appellee/Respondent

OPPOSING PARTY: __Evelyn Coke__

MOVING ATTORNEY: __Daniel S. Alter, Esq.__
[name of attorney, with firm, address, phone number and e-mail]
__c/o Alter & Alter__
__300 East 42nd Street, 10th Floor__
__New York, New York 10017__
__(212) 867-7777__
__danny.alter@verizon.net__

OPPOSING ATTORNEY [Name]: __Harold Craig Becker, Esq__
[name of attorney, with firm, address, phone number and e-mail]
__(lead counsel)__
__Services Employees International Union__
__25 East Washington, Suite 1400__
__Chicago, IL 60602__

Court-Judge/Agency appealed from: __Hon. Thomas A. Platt, Eastern District of New York__

Please check appropriate boxes:

Has consent of opposing counsel:
   A. been sought?    ☐ Yes   ☒ No
   B. been obtained?    ☐ Yes   ☒ No

Is oral argument requested?    ☐ Yes   ☒ No
(requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes   ☐ No
If yes, enter date __N/A__

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below?   ☐ Yes   ☐ No
   N/A

Has this relief been previously sought
in this Court?    ☐ Yes   ☒ No

Requested return date and explanation of emergency:

Signature of Moving Attorney: _____ Date: __January 17, 2005__    Has service been effected?   ☐ Yes   ☐ No

### ORDER

Before: Hon. John M. Walker, Jr., *Chief Judge*, Hon. Robert A. Katzmann, *Circuit Judges*, Hon. John Gleeson, *District Judge**

IT IS HEREBY ORDERED that the motion by appellee to stay mandate pending application to the Supreme Court for certiorari review is GRANTED.

MAR 22 2005

FILED
MAR 22 2005

Date

FOR THE COURT:
ROSEANN B. MACKECHNIE, Clerk
by _____
Tracy W. Young
Motions Staff Attorney

* The Honorable John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

# EXHIBIT D

No. _____

IN THE

# Supreme Court of the United States

❖

LONG ISLAND CARE AT HOME, LTD. and MARYANN OSBORNE,

*Petitioners,*

—v.—

EVELYN COKE,

*Respondent.*

ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES
COURT OF APPEALS FOR THE SECOND CIRCUIT

## PETITION FOR A WRIT OF CERTIORARI

DANIEL S. ALTER, ESQ.*
C/O ALTER & ALTER
300 East 42nd Street, 10th Floor
New York, New York 10017
(212) 867-7777

*Counsel for Petitioners*

*Counsel of Record

i

## QUESTIONS PRESENTED

1. Whether 29 C.F.R. § 552.109(a)—which has exempted third-party employers of home health care aides from federal minimum wage and overtime pay requirements for the past 30 years—warrants judicial deference and is therefore valid and enforceable.

2. Whether a court may deny *Skidmore* deference to an agency regulation, and thereby invalidate the rule, without first affording interested parties an opportunity to submit evidence in support of the regulation's "power to persuade."

ii

# RULE 29.6 STATEMENT

Petitioner Long Island Care at Home, Ltd. has no parent company, and there are no publicly held companies that hold any stock of Long Island Care at Home, Ltd.

iii

## TABLE OF CONTENTS

PAGE

QUESTIONS PRESENTED ....................... i

RULE 29.6 STATEMENT ......................... ii

TABLE OF AUTHORITIES....................... v

OPINIONS BELOW .............................. 1

JURISDICTION................................... 1

STATUTORY AND REGULATORY
    PROVISIONS INVOLVED................... 1

STATEMENT OF THE CASE..................... 3

    1.   The Statutory and Regulatory
        Scheme................................... 3

    2.   Litigation History ....................... 5

    3.   The Effects of Invalidating 29 C.F.R.
        § 552.109(a) ............................. 8

REASONS FOR GRANTING THE PETITION.. 11

    1.   This Cases Raises Issues of
        Exceptional Importance ................. 13

    2.   This Court Needs to Resolve an
        Important Circuit Split Regarding
        the Enforceability of 29 C.F.R.
        § 552.109(a) ............................. 15

iv

PAGE

3.  The Court of Appeals' Decision
    Conflicts with the Consistent
    Decisions of this Court Regarding
    Judicial Deference to Agency
    Rulemaking .............................    17

CONCLUSION ...................................    27

**Appendices:**

Appendix A—Decisions and Orders of the
    United States Court of Appeals For
    the Second Circuit ..........................    1a

Appendix B—Decision of the United States
    District Court for the Eastern District
    of New York .................................    36a

Appendix C—Brief of the Secretary of Labor
    as Amicus Curiae............................    55a

Appendix D—Sworn Statements Submitted
    in Support of Petitioners' Motion to
    Stay the Issuance of the Mandate ...........    79a

v

# TABLE OF AUTHORITIES

**Cases:**                                                      PAGE

*Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632
    (6th Cir. 2004) ................................. 23, 26

*American Medical Ass'n v. United States*,
    887 F.2d 760 (7th Cir. 1989) ................     20

*Auer v. Robbins*, 519 U.S. 452 (1997) ...........     21

*Barnhart v. Walton*, 535 U.S. 212 (2002) ..... 15, 21, 22

*Boesche v. Udall*, 373 U.S. 472 (1963) .......... 22, 25

*Brown v. United States*, 327 F.3d 1198
    (D.C. Cir. 2003) .............................     23

*Chevron U.S.A. Inc. v. Natural Resources
    Defense Council, Inc.*, 467 U.S. 837
    (1984) .......................................*passim*

*Christensen v. Harris County*, 529 U.S. 576
    (2000) ....................................... 18, 21

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ..     18

*Coke v. Long Island Care at Home, Ltd.*,
    267 F. Supp. 2d 332 (E.D.N.Y. 2003),
    *aff'd in part and rev'd in part*,
    376 F.3d 118 (2d Cir. 2004) .................     15

*Edelman v. Lynchburg College*, 535 U.S. 106
    (2002) ....................................... 18, 22

*Johnson v. Volunteers of America, Inc.*,
    215 F.3d 559 (10th Cir. 2001) ........... 12, 15, 16

vi

PAGE

*Madison v. Resources for Human Dev., Inc.*,
    39 F. Supp. 2d 542 (E.D. Pa. 1999) . . . . . . . . . .   16

*Norwegian Nitrogen Products Co. v.
    United States*, 288 U.S. 294 (1933) . . . . . . . . . .   22

*Olmstead v. Zimring*, 527 U.S. 581 (1999) . . . . . . .   15

*Pesquera Mares Australes Ltda. v.
    United States*, 266 F.3d 1371
    (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Rice v. Souix City Memorial Park
    Cemetery, Inc.*, 349 U.S. 70 (1955) . . . . . . . . . .   13

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) . . . *passim*

*Thomas Jefferson University v. Shalala*,
    512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Terwilliger v. Home of Hope, Inc.*,
    21 F. Supp. 2d 1294 (N.D. Okla. 1998) . . . . .   16

*Udall v. Tallman*, 380 U.S. 1 (1965) . . . . . . . . . . . . .   22

*United States v. City of Fulton*, 475 U.S. 657
    (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*United States v. Mead Corp.*, 533 U.S. 218
    (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*United States v. Shimer*, 367 U.S. 374 (1961) . . .   25

**Statutes, Rules, & Regulations:**

5 U.S.C. § 553(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . .   20

29 U.S.C. § 213(a)(15) . . . . . . . . . . . . . . . . . . . . . . . .*passim*

29 C.F.R. Part 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

vii

|  | PAGE |
|---|---|
| 29 C.F.R. § 552.2(c) | 18 |
| 29 C.F.R. § 552.3 (2003) | 4 |
| 29 C.F.R. § 552.6 (2003) | *passim* |
| 29 C.F.R. § 552.109(a) (2003) | *passim* |

**Statutory & Regulatory History:**

H.R. Conf. Rep. No. 93-953 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2862 .................. 4

39 Fed. Reg. 35,382 (Oct. 1, 1974) .............. 4, 5

40 Fed. Reg. 7404 (Feb. 20, 1975)............... 4, 5

66 Fed. Reg. 5481 (Jan. 19, 2001) .............. 21

67 Fed. Reg. 16,668 (April 8, 2002).............. 24

Petitioners Long Island Care at Home Ltd. and Maryann Osborne ("Petitioners") respectfully petition this Court for a writ of certiorari to review the judgment of the United States Court of Appeals for the Second Circuit in this case.

## OPINIONS BELOW

The opinion of the court of appeals is reported at 376 F.3d 118. (1a-30a).[1] The opinion of United States District Court for the Eastern District of New York is reported at 267 F. Supp. 2d 332. (36a-54a).

## JURISDICTION

The judgment of the court of appeals was entered on July 22, 2004. A petition for rehearing with suggestion for rehearing *en banc* was denied on January 10, 2005 (31a-32a). Petitioners' motion to stay issuance of the mandate was granted by the court of appeals on March 22, 2005. (33a-35a). The jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

## STATUTORY AND REGULATORY PROVISIONS INVOLVED

1. In pertinent part, section 13(a)(15) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(15) ("§ 213(a)(15)") provides:

(a) Minimum wage and maximum hour requirements

The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and

---

[1]    Numbers followed by the letter "a" within parentheses indicate page references to the appendix to this petition.

2

section 207 of this title shall not apply with respect to—

(15) any employee . . . employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary [of Labor]).

2. In pertinent part, 29 C.F.R. § 552.3 provides:

**Domestic service employment.**

As used in section 13(a)(15) of the Act, the term *domestic service employment* refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed. * * *

3. In pertinent part, 29 C.F.R. § 552.6 provides:

**Companionship services for the aged or infirm.**

As used in section 13(a)(15) of the Act, the term *companionship services* shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or infirmity, cannot care for his or her own needs. * * *

4. In pertinent part, 29 C.F.R. § 552.109(a) provides:

**Third party employment.**

(a) Employees who are engaged in providing companionship services as defined in [29 C.F.R.] § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of section 13(a)(15). * * *

3

## STATEMENT OF THE CASE

This case concerns whether the Labor Department regulation governing the application of federal minimum wage and overtime pay requirements to home health care workers employed by health care agencies warrants judicial deference and is valid. Rejecting the holdings of every other court to consider the issue, including that of another circuit, the court of appeals invalidated a keystone regulation for the home health care community that has been in place for more than 30 years.

### 1.    The Statutory and Regulatory Scheme

In 1974, Congress extended the FLSA's minimum wage and overtime pay requirements to include "domestic service" employees. *See* Fair Labor Standards Amendments of 1974, PL 93-259, § 7, 55 Stat. 88 (1974). Congress simultaneously excluded from such coverage, however, "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . ." *Id.* (codified at 29 U.S.C. § 213(a)(15)). Congress defined neither "domestic service employment" nor "companionship services," but instead left the specification of those terms entirely to the Department of Labor. *See id.* (leaving exemption's application "as such terms are defined and delimited by regulations of the Secretary"). Indeed, as reflected in the House Conference Report, Congress "expect[ed] the Secretary to immediately undertake a program utilizing all feasible administrative procedures to apprise employers of their responsibilities under the Act and to notify employees of their rights and entitlements under the Act." H.R. Conf. Rep.

4

No. 93-953 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2862, 2865.[2]

The Secretary complied. The Department of Labor commenced a formal notice-and-comment rule making proceeding in October 1974. *See* 39 Fed. Reg. 35,382 (Oct. 1, 1974). In February 1975, the agency promulgated regulations governing the application of the FLSA to domestic service employees. *See* 40 Fed. Reg. 7404 (Feb. 20, 1975).

For the purposes of applying § 213(a)(15), the Secretary defined "domestic service employment" to mean "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3.[3] The Secretary likewise defined "companionship services" to mean "those services which provide fellowship, care, and protection for a person who, because of advanced age or infirmity, cannot care for his or her own needs." 29 C.F.R. § 552.6.[4] Finally,

---

[2]    The Secretary was also instructed by the Conference Committee to "adopt regulations and enforcement procedures to require that employers are reasonably apprised of when their obligation regarding the payment of the minimum wage commences." H.R. Conf. Rep. No. 93-953 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2862, 2865.

[3]    29 C.F.R. § 552.3 further states that "domestic service employment" includes "employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive."

[4]    In addition, the regulation explains that "[s]uch services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services." 29 C.F.R. § 552.6. Furthermore, although

5

the agency's regulations directed that "[e]mployees who are engaged in providing companionship services as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of section 13(a)(15)." 29 C.F.R. § 552.109(a).[5]

These regulations have been in place since 1975. Since then, Congress has amended § 213 of the FLSA seven times, and it has never suggested any disapproval for § 552.109(a).

## 2.  Litigation History

In 2002, respondent Evelyn Coke ("Respondent") commenced this action in the United States District Court for the Eastern District of New York. (36a). Respondent alleged that "she was employed as a 'home

---

employees performing "companionship services" may also perform "general household work," the regulation makes clear that such work must be "incidental, *i.e.*, [that it] does not exceed 20 percent of the total weekly hours worked." *Id.* Finally, the regulation states that the "term 'companionship services' does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse." *Id.*

[5]    The final version of 29 C.F.R. § 552.109(a) promulgated by the Department of Labor—which exempts home health care workers employed by third-party employers from federal minimum wage and overtime pay requirements—differed significantly from the original version that appeared in the agency's notice of proposed rulemaking. The first version of the regulation did not exempt third-party employees from the requirements of the FLSA. *See* 39 Fed. Reg. 35,382 (Oct. 1, 1974). Upon further consideration, however, the agency changed its view and explained that the FLSA's companionship services exemption could be "available to . . . third party employers since they apply" under § 213(a)(15) "to 'any employee' engaged 'in' the enumerated services." 40 Fed. Reg. at 7405.

6

health care attendant' by [Petitioners], who did not pay
her minimum wage or overtime compensation." (4a, 37a-
38a). Although Respondent maintained that "she was
entitled to" such compensation under the FLSA (38a),
she conceded that "the 'companionship services' exemp-
tion to the FLSA, as defined and interpreted by [Depart-
ment of Labor] regulations, applie[d] to her employment
and that if the regulations at issue [were] enforceable,
she [could] not prevail." (5a). Respondent stated that
"the purpose of this action was to determine the validity
of" 29 C.F.R. §§ 552.6 and 552.109(a) (37a), and
described this litigation as "a test case" (5a).[6]

Petitioners moved for judgment on the pleadings pur-
suant to Rule 12(c) of the Federal Rules of Civil Pro-
cedure, invoking the FLSA exemption implemented by
29 C.F.R. §§ 552.6 and 552.109(a). (36a-37a). Respondent
opposed the motion by arguing that both regulations were
invalid because they were "inconsistent with Congress's
intent of extending coverage of the FLSA to domestic ser-
vice employees." (42a). Specifically, Respondent asserted
that "the definition of 'companionship services' in Sec-
tion 552.6 [was] overbroad and that Section 552.109(a)
improperly extend[ed] the [minimum wage and overtime
pay] exemption to employees who are employed by an
agency." (42a-43a).

The district court rejected Respondent's arguments.
Applying the standard of review for administrative
action laid down in *Chevron U.S.A. Inc. v. Natural
Resources Defense Council, Inc.*, 467 U.S. 837 (1984)
("*Chevron*"), the district court afforded §§ 552.6 and
552.109(a) the highest level of judicial deference. (44a-

---

[6]    Respondent's complaint also asserted "identical" claims
"under the Labor Law of the State of New York and the New York
Minimum Wage Act." (38a).

7

52a). The district court recognized that Congress had expressly delegated to the Secretary of Labor the authority to define and delimit the terms contained in § 213(a)(15) (37a), and that §§ 552.6 and 552.109(a) embodied a long-standing, contemporaneous construction of the statute by the agency charged with its administration (45a-46a). After reviewing the relevant statutory and regulatory history, as well as the existing case law addressing the validity of §§ 552.6 and 552.109(a), the district court concluded that the regulations were a reasonable construction with of FLSA. (52a). The court therefore held that §§ 552.6 and 552.109(a) carried the force of law and granted Petitioners' motion for judgment on the pleadings. (54a).

On appeal, the Second Circuit affirmed the district court's decision in part and reversed in part. (4a). Applying *Chevron*, the court of appeals upheld 29 C.F.R. § 552.6. (3a). Petitioners do not seek review of that holding.

Unlike the district court, however, the court of appeals invalidated 29 C.F.R. § 552.109(a). (3a-4a). In so doing, the Second Circuit again began its analysis by applying *Chevron*. Guided by this Court's ruling in *United States v. Mead Corp.*, 533 U.S. 218 (2001) ("*Mead*")—that an agency regulation "qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority," *id.* at 226-27—the court of appeals decided that such deference was unwarranted here.[7] The Second Circuit rested this determination upon two considerations. First, the

_____

[7]   Notably, the court did *not* hold that § 552.109(a) was inconsistent with the plain language of the statute.

8

court noted that the Department of Labor had placed § 552.109(a) within a regulatory subpart entitled, "Interpretations" rather than under the heading of "General Regulations." (22a). Second, the court emphasized that the Department of Labor did not list § 552.109(a) among those regulations " 'required by' " § 215(a)(15). (23a). On those bases, the court concluded that "§ 552.109(a) does not qualify for *Chevron* deference because, by the [agency's] own account, it was self-consciously not promulgated in the exercise of Congress's delegated authority pursuant to § 215(a)(15)." (*Id.*).

The court of appeals then set out to determine whether § 552.109(a) should nevertheless receive judicial deference under what it characterized as *Mead*'s "vague prescription to 'tailor deference to variety,' " and considered whether § 552.109(a) had the " 'power to persuade' " under the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ("*Skidmore*"). (25a). Upon examining several factors, the court of appeals held that the regulation was invalid because it was inconsistent with legislative intent, other Department of Labor regulations, and the agency's actions over time. (26a). The court further concluded that the Department of Labor— which had submitted an *amicus* brief on appeal arguing that the challenged regulations warranted *Chevron* deference—had failed to "proffer valid reasoning in support of § 552.109(a)'s enforceability." (*Id.*).

Accordingly, the Second Circuit gave no deference whatsoever to the Labor Department's considered judgment.

## 3.  The Effects of Invalidating 29 C.F.R. § 552.109(a)

Petitioners currently employ approximately forty home health care aides, who provide companionship services to approximately thirty homebound patients. (79a).

9

Pursuant to § 552.109(a)'s exemption from federal minimum and overtime wage requirements, Petitioners pay their employees $8.00 per hour for an average 70-hour work week, or approximately $560.00 per week. (79a-80a). Without § 552.109(a)'s exemption, however, Medicaid reimbursement limitations on home health care services will create tremendous and unsustainable losses for Petitioners and many other agency employers of home health care workers. (80a, 84a (invalidation of § 52.109(a) "will have serious negative impact on the access and quality of care for tens of thousands of older and disabled individuals receiving services . . . based upon significant increased costs for home care services, costs that cannot be absorbed by a financially fragile health care sector that disproportionately relies on government reimbursement")).

To avoid such losses, Petitioners must now limit each employee's workweek to forty hours, thereby avoiding higher overtime pay rates. (80a). Petitioners may also be forced to reduce hourly wages. (*Id.*). In consequence, most of Petitioners' employees will suffer an average 43% weekly salary reduction. (*Id.*).

This hardship will not be limited to Petitioners' employees. Industry experts and major home health care providers agree that home health care workers across New York State will likewise suffer. (103a, 92a-93a, 128a-133a). "While elimination of the third-party employer exemption would increase overtime rates for home care workers, information from agencies throughout New York State establishes that it would not increase—and in many cases would reduce—actual earnings for workers." (1132a).

But the impact of the Second Circuit's ruling extends much farther. As an unavoidable consequence of § 552.109(a)'s invalidation, thousands of homebound

10

elderly and infirm people will receive compromised care. In order to compensate for the lost exemption, home health care agencies must limit the number of hours that each employee may work. Hence, patients will have to accept services from a greater number of workers, each of whom will work fewer hours. According to both home health care providers and state regulators, this scenario will generate serious problems affecting care.

The relationship between patient and home care aide is intimate and confidential. "The home attendant spends up to 24 hours each day in a client's home, tending to needs of an extremely personal nature, such as bathing or toileting." (96a-97a). It usually takes considerable time to establish the necessary trust and comfort level between caregiver and client, "and clients often are very unwilling to enter into such a relationship with more than one or two such individuals." (97a; *see also* 81a).

Consequently, the need to use multiple caregivers for an individual client often creates a "troubling dynamic" that "assaults the dignity of patients, undermines the quality of care that they receive, and is therefore detrimental to their well being." (79a; *see also* 97a ("Experience shows that clients often are unwilling to accept alternative coverage when a home attendant takes vacation or sick leave, preferring to suffer lack of what may often be very necessary care until the person with whom the client is comfortable returns from leave.")). This problem is further compounded by the fact that there are likely only a limited number of home care workers who will accept shortened work shifts at multiple work sites, thus leaving many patients unattended for hours. (103a). In such circumstances, "home care patients would either be denied some periods of care or receive care with less continuity," *i.e.*, patients would be forced to receive ser-

11

vices from multiple health care workers. (*Id. see also* 132a).

Either outcome is problematic. Depriving homebound individuals of needed care and companionship is an unacceptable option. So is the idea of using multiple workers to provide care for a single patient. "Continuity of care is so widely recognized to affect the quality of patient care that New York State regulation requires home care agencies to ensure continuity of care to the extent possible." (132a (citation omitted)). But, by creating this Hobson's choice, the decision of the court of appeals has placed the home health care community in an impossible situation—endangering the well-being of thousands of patients and workers alike.

## REASONS FOR GRANTING THE PETITION

By invalidating § 552.109(a), the court of appeals jettisoned *thirty* years of administrative practice, congressional acquiescence, judicial approval, and labor-market structure. This ruling will have a profoundly negative impact on the home health care sector. The delicate equilibrium fostered by § 552.109(a) is a critical component in sustaining the ability of home health care providers to supply much needed services to many thousands of elderly and infirm individuals. In the absence of this regulation, an entire community of patients and caretakers will be thrust into sudden and dangerous disarray. This result will hurt everyone affected.

Because the public funding that pays for these services is both strictly limited and shrinking (102a, *see also* 85a-86a; 129a), the Second Circuit's ruling has already disrupted the way in which tens of thousands of homebound people residing in New York State (and possibly many thousands more living in other regions) receive impor-

12

tant health care assistance. It has also significantly
decreased the availability of work for home health care
aides and their attendant income. In combination, these
consequences threaten the important public policy favor-
ing home care—in many cases leaving institutionaliza-
tion as a patient's only available health care option,
despite its higher economic costs and its enormous toll
on patients' quality of life.

This Court should grant the petition for three com-
pelling reasons. First, this case raises issues of excep-
tional importance regarding the proper allocation of
hundreds of millions of dollars each year in federal,
state, and local funding for health cares services. The
impact of this ruling on the care provided to homebound
people, and the economic well being of their immediate
care providers, also raises matters of exceptional impor-
tance. Indeed, the court of appeals' ruling affects the
fundamental viability of home health care as an option to
institutionalization, which is an issue of extreme impor-
tance for all parties involved.

Second, the decision below directly conflicts with the
decision of the Tenth Circuit in *Johnson v. Volunteers of
America, Inc.*, 215 F.3d 559 (10th Cir. 2001), which
upheld § 552.109(a) under *Chevron*. The application of
federal minimum wage and overtime pay requirements
to home health care workers, and the impact that those
requirements have on the provision of such impor-
tant services, should not vary between federal judicial
circuits.

And third, the judgment of the court of appeals departs
from the consistent decisions of this Court regarding
judicial deference to agency rulemaking. The Second
Circuit's misapplication of *Chevron* and *Mead* evades
the Department of Labor's manifest intent to exercise its
statutory authority in defining the boundaries of

13

§ 213(a)(15)—rewriting those boundaries as that court saw fit. Moreover, the court of appeals' misapplication of *Skidmore* puts in jeopardy the efficacy of many administrative decisions that warrant some but not controlling deference from the courts. The Second Circuit invalidated § 552.109(a) under *Skidmore* at the pleading stage of these proceedings, without any consideration of facts that support the agency's judgment. Guidance to the lower federal courts as to the necessary development and the proper scope of a factual record when determining a regulation's "power to persuade" would be of great benefit in a wide variety of cases involving the intersection of *Chevron*, *Mead*, and *Skidmore*.

## 1. This Case Raises Issues of Exceptional Importance

The fundamental question presented by this case—whether § 552.109(a) is valid and enforceable—undeniably raises issues of exceptional importance. The "problem" created by the court of appeals' invalidation of § 552.109(a) reaches far "beyond the academic or episodic." *Rice v. Souix City Memorial Park Cemetery, Inc.*, 349 U.S. 70, 74 (1955). It will have a staggering impact on home health care costs throughout this region, and it will force largely government-funded agencies to restructure their business operations in ways that will seriously harm their patients and employees.

For example, New York City alone estimates that the Second Circuit's decision will "increase the cost of the City's Medicaid-funded personal care program to the elderly and disabled by over $263 million annually." (93a). Consequently, the city's "Medicaid funding will need to increase from $1.592 billion to about $1.855 billion annually in order to sustain its current client services." (*Id.*). Indeed, across New York State, home care

14

agencies "cannot bear the cost of compliance with the [Second Circuit's] holding without additional revenues from external sources, which are unlikely to be forth-coming." (102a).

Furthermore, one health care expert has identified a serious harm to the broader health care system that will flow from invalidating § 552.109(a). She observes that, "[b]y creating disruptions in the continuity of care by home health agencies, the [Second Circuit's] decision impairs the ability of hospitals to discharge patients to more appropriate home and community settings in a timely manner, and thus increases the average length of stay and creates a new financial burden on already finan-cially fragile acute care institutions." (86a-87a). She estimates that "a one day increase in the length of stay for patients in New York hospitals that are discharged to home health agencies would cost the health care system $96 million." (*Id.*).

The human toll of this ruling is likewise costly. The added strain on municipal, county, and state budgets triggered by the invalidation of § 552.109(a) will upset the "delicately balanced system that makes home care— a desired alternative to institutionalization—an afford-able and safe option for tens of thousands of home care patients in New York State." (103a). Health care experts fear that, without adequate government funding, home care agencies "will be unable to continue providing qual-ity, affordable companionship services to elderly and infirm patients throughout New York." (101a). Conse-quently, there is deep concern that the increased expense of such services will "undermine New York's commit-ment" to home care as a feasible option to institution-alization. (87a-88a; *see also* 103a ("Many patients may be forced into nursing homes if home care providers can no longer assure adequate and safe services.")).

15

Also disturbing are the serious hardships that home health care workers will unavoidably sustain as a result of the court of appeals' decision. The invalidation of § 552.109(a) will necessarily result in slashed income, scheduling changes, and workplace dislocations, as health care agencies try to stretch limited government funding in order to cover demands for care. (80a, 84a, 88a, 92a-97a, 101a-104a, 130a-133a). In a bitter twist, the Second Circuit's ruling will effectively penalize the very category of workers that Respondent purports to represent. (130a-131a).

This case warrants *certiorari* review. Simply put, "in view of the importance of the question presented to the [government programs] and affected individuals," *Olmstead v. Zimring*, 527 U.S. 581, 596 (1999) (granting *certiorari* to review construction of federal regulations requiring major reallocation of state resources for community care of mentally disabled), and in view of its tremendous financial ramifications, *see, e.g., Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (granting *certiorari* where invalidation of social security regulation would have "create[d] additional Social Security costs of $80 billion over ten years"), this Court should grant the petition.

## 2. This Court Needs to Resolve an Important Circuit Split Regarding the Enforceability of 29 C.F.R. § 552.109(a)

By invalidating § 552.109(a), the Second Circuit extended the FLSA's minimum wage and overtime pay requirements to homecare workers employed by health care agencies. In *Johnson v. Volunteers of America, Inc.*, 215 F.3d 559 (10th Cir. 2001) ("*Johnson*"), however, the Tenth Circuit squarely held that § 552.109(a) was entitled to *Chevron* deference and upheld the application of § 213(a)(15)'s exemption from those FLSA requirements

16

to *all* home health care aides—whether employed directly by patients or by third parties. *See* 215 F.3d at 562. These two decisions are in direct conflict and create an untenable situation.[8]

The consistency (and thus quality) of care for homebound people across the country cannot turn upon the inconsistent enforcement of federal regulations. The availability of crucial health care services and the structure of homecare delivery systems should not vary between even two federal judicial circuits *because of* a disagreement among judges over the status of federal law. The ramifications of this disagreement are both unfair and inefficient. Too many lives are profoundly affected by § 552.109(a), and too many limited public resources are allocated according to its directive, for this Court to leave unresolved the conflict created by the Second Circuit. *Certiorari* review is especially warranted here.[9]

---

[8]    Every district court that has considered § 552.109(a) has likewise enforced the regulation. *See Coke v. Long Island Care at Home, Ltd.*, 267 F. Supp. 2d 332, 341 (E.D.N.Y. 2003) (37a); *Madison v. Resources for Human Dev., Inc.*, 39 F. Supp. 2d 542, 545 n. 3 (E.D.Pa. 1999); *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294, 1299 n. 2 (N.D.Okla. 1998).

[9]    The court of appeals tried to downplay its split with the Tenth Circuit by noting that *Johnson* was decided one year before this Court's decision in *Mead*. (21a-22a). But *Mead*'s gloss on *Chevron* neither explains nor ameliorates the circuit conflict created by the Second Circuit's invalidation of § 552.109(a). In *Mead*, this Court expressly stated that it had left the *Chevron* rule as it was found, *see Mead*, 533 U.S. at 237-38, *see also id.* at 250 (Scalia, J., dissenting), and other courts have likewise understood *Mead* to have simply "reaffirmed" a "well established principle," *Pesquera Mares Australes Ltda. v. United State*, 266 F.3d 1372, 1380 (Fed. Cir. 2001). Consequently, *Mead* is not an intervening change in law that might diminish the discrepancy in law between the Second and Tenth Circuits.

*(footnote continued)*

17

### 3.  The Court of Appeals' Decision Conflicts with the Consistent Decisions Of this Court Regarding Judicial Deference to Agency Rulemaking

In *Mead*, this Court held that the

> administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and the agency interpretation claiming deference *was promulgated in the exercise of that authority.*

533 U.S. at 226-27 (emphasis added).

Here, the court of appeals did not dispute that Congress gave the Department of Labor authority to promulgate § 552.109(a). But the court below did dispute that § 552.109(a) satisfies the second prong of *Mead*'s directive. The Second Circuit concluded that "§ 552.109(a) does not qualify for *Chevron* deference because, by the [agency's] own account, it was self-consciously not promulgated in the exercise of Congress's delegated authority pursuant to § 213(a)(15)." (23a). The opposite is true. Contrary to the Second Circuit's assertion, the Department of Labor has consistently and openly maintained that it exercised its statutory authority in promulgating § 552.109(a).[10]

---

In any event, the practical reality demonstrates the significance of this conflict. § 552.109(a) is still enforceable in the Tenth Circuit and, in that region, homecare is being provided under that regulatory regime. If *Mead* somehow affected the validity of the Tenth Circuit's decision in *Johnson*, it is important that this Court grant *certiorari* in this case and say so. The equitable provision of social services requires the consistent application of federal law.

[10]  This determination is the lynchpin of the court of appeals' holding and it rests upon two basic mistakes. First, the court of appeals overemphasized the agency's inclusion of § 552.109(a) within

18

Perhaps the agency's most obvious assertion of statutory authority appears in § 552.109(a) itself. The regulation expressly extends the FLSA's minimum wage and overtime pay exemptions to third party employers "*by virtue of section [2]13(a)(15).*" 29 C.F.R. § 552.109(a)

---

Subpart B of the regulations, entitled "Interpretations." (23a). Based largely upon this heading, the court of appeals inferred that § 552.109(a) is an "interpretive" rather than a "legislative" regulation, and therefore does not qualify for *Chevron* deference. (22a). This characterization is deeply flawed. As the court of appeals itself acknowledged (22a-23a), § 552.109(a) affects individual rights and obligations, which is an "important touchstone for distinguishing those rules that may be 'binding' or have the 'force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (describing "legislative type" rules). Moreover, the dichotomy upon which the court of appeals relies in this case is suspect, given this Court's recent statement that, "[o]f course, the framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *see also Edelman v. Lynchburg College*, 535 U.S. 106, 123-24 (2002) (O'Connor, J., concurring in the judgment).

Second, because § 552.109(a) is not among the definitions listed in 29 C.F.R. § 552.2(c), the court of appeals reasoned that the agency had "effectively conceded" that § 552.109(a) was not promulgated under § 213(a)(15). (23a). This conclusion is also incorrect. § 552.109(a)'s exemption from FLSA requirements applies solely to "[e]mployees who are engaged in companionship services"—a category of employees specifically defined in 29 C.F.R. § 552.6. *See* 29 C.F.R. § 552.109(a). The definition contained in 29 C.F.R. § 552.6 *is* one of the definitions listed in 29 C.F.R. § 552.2(c). Thus, § 552.109(a) governs the application of a regulatory definition that the agency undeniably promulgated under § 213(a)(15). This close connection between § 552.109(a) and the Department of Labor's undisputed exercise of statutory authority belies any supposed concession by the agency that § 552.109(a) was not likewise promulgated. At worst, the interrelationship among 29 C.F.R. §§ 552.2(c), 552.6, and 552.109(a) makes the legislative status of § 552.109(a) ambiguous—an ambiguity that is dispositively settled by the agency's own reasonable interpretation. *See Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994); *see also infra* at 21-22.

19

(2003) (emphasis added). Thus, the very text of § 552.109(a) makes clear that the Department of Labor drew its regulatory authority straight from the statute.

The Code of Federal Regulations elsewhere supports this reading. Beneath the list of regulations contained in subparts A and B is a section that identifies the source of authority for *all* of Part 552. The statement reads:

> AUTHORITY: Secs. 13(a)(15) and 13(b)(21) of the Fair Labor Standards Act, as amended (29 U.S.C. 213(a)(15), (b)(21)), 88 Stat. 62; sec. 29(b) of the Fair Labor Standards Amendments of 1974 (Pub. L. 93-259, 88 Stat. 76), *unless otherwise noted.*

29 C.F.R. Part 552 (2003) (emphasis added), at page 253. Besides this unequivocal reference to § 213(a)(15), Part 552 identifies no other authority for § 552.109(a). The inference is therefore unavoidable; the Department of Labor promulgated § 552.109(a) pursuant to § 213(a)(15).

Indeed, that "such authority was invoked" by the Department of Labor, *Mead*, 533 U.S. at 237, is again confirmed by the agency's 1974 Notice of Proposed Rulemaking for Employment of Domestic Services Employees ("1974 NPR"). In relevant part, the 1974 NPR states:

> To implement the 1974 Amendments [to the FLSA], it is proposed to . . . add a new 29 C.F.R. Part 552 defining and delimiting, in Subpart A, the terms . . . "employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves," and setting forth, in Subpart B, a statement of policy and interpretation concerning the application of the [FLSA] to domestic service employees. *These . . . additions are proposed pursuant to the authority in section[ ] . . . [2]13(a)(15) of the [FLSA], as amended.*

20

39 Fed. Reg. 35,382, 35,382 (Oct. 1, 1974) (emphasis added). § 552.109(a) was one of the "additions" to 29 C.F.R. Part 552 identified by the 1974 NPR, albeit in a form that was substantially different from its final version.[11]

Over 25 years later, the Department of Labor once again reaffirmed its deliberate exercise of statutory authority. In January 2001, the agency proposed to amend § 552.109(a). The Notice of Proposed Rulemaking ("2001 NPR") made plain that the proposed amendment was

> issued *under the authority provided by section 13(a)(15)* of the FLSA (29 U.S.C. 213(a)(15)), which grants the Secretary of Labor *legislative rulemaking authority* to define and delimit the terms "employee employed in domestic services" for the

---

[11]    Because the final version of § 552.109(a) contained the opposite rule than was originally proposed in the 1974 NPR, the court of appeals expressed "concern" in *dictum* as to whether the agency's rulemaking notice was sufficient under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b)(3)(A). (21a). This concern was unfounded.

The critical APA inquiry here is whether "parties affected by the final rule were put on notice that their interests were at stake," or, stated differently, "whether potential commentators would have known that an issue in which they were interested was on the table and was to be addressed by a final rule." *American Medical Ass'n v. United States*, 887 F.2d 760, 768 (7th Cir. 1989) (internal quotation marks omitted). It is "irrelevant whether the proposal contained in the NPR was favorable to a particular party's interest," because "the obligation to comment is not limited to those *adversely* affected by the proposal." *Id.* (emphasis in original).

The Labor Department's promulgation of § 552.109(a) satisfied this standard. The 1974 NPR surely put the world on notice that an FLSA exemption for third party employers was "on the table" and "open[ ] for discussion." *Id.* at 768-69 (internal quotation marks omitted). Hence, the regulation is procedurally valid under the APA.

21

>    purposes of exempting such workers from the min-
>    imum wage and overtime pay requirements of the
>    FLSA.

66 Fed. Reg. 5481, 5487 (Jan. 19, 2001) (emphasis added).
This straightforward proclamation of legislative rule-
making dispels any doubt that the Department of Labor
used its statutory authority in promulgating § 552.109(a).

But even assuming that there remains in the regulatory
history some lingering uncertainty as to the agency's
intentions vis-à-vis § 552.109(a), the decision below still
veers far from this Court's teaching on judicial deference.
"Courts grant an agency's interpretation of its own reg-
ulations considerable legal leeway," *Barnhart*, 535 U.S.
at 217; *see also Christensen*, 529 U.S. at 588, and such
interpretations are "controlling unless plainly erroneous
or inconsistent with the regulation," *Auer v. Robbins*, 519
U.S. 452, 461 (1997) (internal quotation marks omitted).
Indeed, courts "*must* defer to the [agency's] interpreta-
tion unless an alternative reading is compelled by the
regulation's plain language or by other indications of the
[agency's] intent at the time of the regulation's promul-
gation." *Thomas Jefferson University*, 512 U.S. at 512
(emphasis added and internal quotation marks omitted).

The pivotal question in this case for the court of
appeals was whether the Department of Labor deliber-
ately exercised its statutory authority to define and
delimit the concept of "companionship services" when,
in 1975, the agency promulgated § 552.109(a). (23a).
The Department's statements regarding § 552.109(a) "at
the time of the regulation's promulgation" strongly indi-
cate that the Secretary of Labor invoked that authority.
*Thomas Jefferson University*, 512 U.S. at 512 (internal
quotation marks omitted). But any claimed ambiguity on
this point was dispelled by the agency's *amicus* filing in
the court of appeals. In that brief, the Department of

22

Labor described § 552.109(a) as a "legislative rule[ ]" (56a), which was "promulgated in 1975 *in response to* an express delegation of authority by Congress" (62a (emphasis added)). The agency further maintained that "section 552.109(a) serves to 'define and delimit' the terms of the 'companionship services' exemption *under Congress' express delegation of authority*." (66a (emphasis added)). Thus, the Department of Labor confirmed that the Secretary had deliberately invoked the agency's statutory authority in promulgating § 552.109(a). That confirmation should have been conclusive. It "reflect[s] the agency's fair and considered judgment on the matter in question," and therefore warranted controlling deference. *Auer*, 519 U.S. at 462.

Accordingly, by undertaking a *de novo* examination of a regulatory scheme that was implemented *thirty* years ago through notice-and-comment rulemaking, the Second Circuit fundamentally misapplied *Chevron*'s directive as well as other bedrock principles of administrative law.[12] Given the serious and adverse consequences of the Second Circuit's ruling, this Court should grant the petition in order to ensure that *Mead*'s clarification regarding the appropriate application of *Chevron* deference is

---

[12]    "[T]his Court will normally accord particular deference to an agency interpretation of longstanding duration," *Barnhart*, 535 U.S. at 220 (internal quotation marks omitted), especially when the challenged regulation is a contemporaneous construction of a statute by the agency charged with its administration, *see Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315 (1933). Moreover, where, as here, Congress has amended the relevant statutory provision numerous times without expressing disapproval for an agency interpretation, the "conclusion is plain"—Congress "did not regard [the agency's action] as inconsistent with the [statute]." *Boesche v. Udall*, 373 U.S. 472, 483 (1963); *see also Barnhart*, 535 U.S. at 220; *Edelman*, 535 U.S. at 118. The court of appeals gave short-shrift to these important rules of administrative law.

23

not actually used by lower courts to undermine the authority of agencies to administer the law.

The Second Circuit's application of *Skidmore* is equally troubling, and presents a serious threat to the enforceability of many agency rules, regulations, and interpretations that merit some level of judicial deference. Under *Skidmore*, an informal agency regulation may command deference "proportional to its power to persuade," and thus may "claim the merit of its . . . thoroughness, logic, and expertness, its fit with prior interpretations, *and any other sources of weight.*" *Mead*, 533 U.S. at 235 (internal quotation marks omitted); *see also Skidmore*, 323 U.S. at 140 (validity of challenged regulation "will depend upon . . . *all* those factors which give it the power to persuade" (emphasis added)). As the Sixth Circuit recently described this standard, "*Skidmore* permits courts to give consideration to an agency's expertise and ability to persuade, not its ability to speak with legal effect. . . . *Skidmore* thus permits an agency to *earn* the weight given to it by the courts." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 643 (6th Cir. 2004) (emphasis in original).

However, an agency's ability to "earn" persuasive force for a regulation may turn upon a factual presentation. Thus, *Mead* recognizes that the proper analysis under this standard is not limited to abstract argumentation and claimed expertise, but also includes consideration of "*any* other sources of weight." 533 U.S. at 235 (emphasis added). A *Skidmore* analysis may therefore require proceedings beyond the pleading stage, including evidentiary submissions. *See, e.g., Brown v. United States*, 327 F.3d 1198, 1206 (D.C. Cir. 2003) (considering "affidavits of various Treasury officials" in upholding under *Skidmore* agency's methodology in calculating locality pay increases). That depth of consideration was absent here.

24

The Second Circuit acknowledged that, "[u]nlike most, if not all, of the other courts that have considered the issues in this appeal," it reviewed Respondent's case "before summary judgment and, thus, without any factual development." (4a (footnote omitted)). Given that the court struck out on its own to undertake a *Skidmore* analysis, this was a serious misstep. By invalidating § 552.109(a) under *Skidmore* without a factual record, the court of appeals denied Petitioners the ability to identify and present important "sources of weight" from which the regulation could derive substantial support.

For example, when the Department of Labor withdrew the 2001 NPR in 2002, the agency reported that "numerous commenters on the proposed rule, including multiple government agencies . . . , seriously called into question the Department of Labor's conclusion that there would be little economic impact" from changing § 552.109(a). 67 Fed. Reg. 16,668 (April 8, 2002). That rulemaking record, which prompted the agency "to withdraw the proposed rule and terminate [its] rulemaking action," could very well bolster the persuasiveness of the regulation as it stands now. *Id*. And yet, the court of appeals had none of that information to consider before invalidating § 552.109(a). Similarly, the court of appeals had no evidence to consider from private and governmental members of the home health care community, who certainly could "bring the benefit of specialized experience to bear on the subtle questions in this case" regarding the important economic and quality control functions served by § 552.109(a). *Mead*, 533 U.S. at 235.

When the stakes of invalidating a long-standing regulation are as high as they are here, and the consequences are as potentially harmful, courts should make every effort to review "all those factors which give [a regulation] the power to persuade." *Skidmore*, 323 U.S. at 140.

25

The court of appeals disregarded this important rule and acted prematurely. The court's analysis merely preferred its own policy choices over those of the Department of Labor,[13] and ironically faulted the Department of Labor

---

[13]    The court of appeals invalidated § 552.109(a) because it is supposedly inconsistent with congressional purpose, inconsistent with other regulations and with the agency's own views over time, and is based upon invalid reasoning. (26a-29a). The court's analysis on each of these points is deeply flawed.

To start, the court's conclusion that it is "implausible, to say the least, that Congress, wishing to expand FLSA coverage would have wanted the [Department of Labor] to eliminate coverage for employees of third party employers who had previously been covered" (27a), overlooks two crucial considerations. First, Congress has amended § 213 of the FLSA seven times since its enactment in 1974 and has never disapproved § 552.109(a). This legislative record is strong evidence that Congress believes that § 552.109(a) is consistent with the statute. *See Boesche*, 373 U.S. at 483. Second, § 213(a)(15)'s legislative history suggests that Congress was trying to balance its desire to extend FLSA coverage to domestic employees against its wish to foster close, consistent and cost-controlled relationships between caregivers and clients. § 552.109(a) is certainly a reasonable accommodation of these competing legislative interests and thus warrants substantial deference. *See United States v. City of Fulton*, 475 U.S. 657, 667-68 (1986); *United States v. Shimer*, 367 U.S. 374, 383 (1961).

Similarly, the court's observation that § 552.109(a) is "jarringly inconsistent" with § 552.3 is traceably misguided. (27a). § 552.109(a) does not directly implicate § 552.3's definition of "domestic service employment;" it expressly corresponds to § 552.6's definition of "companionship services." *See* 29 C.F.R. § 552.109(a) (referencing § 552.6). Together, §§ 552.6 and 552.109(a) thus regulate the application of minimum wage and overtime pay requirements to "companionship services," which is a statutory subset of "domestic service employment." *See* 29 U.S.C. § 213(a)(15). This subset exemption for "companionship services" carved out by § 552.109(a) easily coexists with § 552.3's narrower exemption for the general category of "domestic service employment." Nor, as the Second Circuit suggests, does any inconsistency arise from the fact that the Department of Labor has previously considered changing § 552.109(a). (28a). § 552.109(a) has

26

for having failed to "adequately explain[ ]" the rationale underlying § 552.109(a). (28a). Of course, the agency did not participate in the district court proceedings and no party ever had the opportunity to develop a factual record.

Not surprisingly, neither *Skidmore* nor *Mead* condones this approach, as it obviously undermines the presumption that informal agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. In consequence, this Court should grant the petition in order to instruct lower courts on the importance of giving agencies or other interested parties a full and fair opportunity "to *earn* the weight" of a challenged regulation. *Air Brake Sys.*, 357 F.3d at 643 (emphasis in original).

---

remained unchanged for 30 years, and agencies should feel free to consider revisions from time to time as good administration may require. *Chevron*, 467 U.S. at 863-64 ("An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis.")

Finally, the Second Circuit's criticism of the agency's 1974 construction of § 213(a)(15) is fundamentally confused. Based upon the agency's general *regulatory* definition of "domestic service employees"—which includes only domestic service employees who are employed directly by homeowners—the court found that the extension of the *statutory* exemption from minimum wage and overtime pay requirements to employees of third party employers was contrary to the "plain language" of the statute. (29a). But the statute empowers the Department of Labor to exempt from these requirements "*any* employee employed in domestic service employment *to provide companionship services.*" 27 U.S.C. § 213(a)(15) (emphasis added). Hence, § 552.109(a)'s exemption of home health care workers employed by third parties fits neatly into the statutory exemption for "*any* employee" hired "to "provide companionship services." *Id.* (emphasis added). The court of appeals' construction of § 213(a)(15) thus inexplicably ignores the statute's "companionship" qualifier.

27

## CONCLUSION

The petition for a writ of certiorari to review the judgment of the United States Court of Appeals for the Second Circuit should be granted.

Dated:  New York, New York
        March 29, 2005

Respectfully submitted,

DANIEL S. ALTER, ESQ.*
C/O ALTER & ALTER
300 East 42nd Street, 10th Floor
New York, New York 10017
(212) 867-7777

*Counsel for Petitioners*

*Counsel of Record

# EXHIBIT E

DANIEL S. ALTER, ESQ.
c/o Alter & Alter
300 East 42nd Street, 10th Floor
New York, New York 10017
(212) 867-7777

March 30, 2005

*By Telecopier & U.S. Mail*

Hon. Roseann B. MacKechnie
Clerk of the Court
United States Court of Appeals
  for the Second Circuit
United States Courthouse
40 Foley Square
New York, New York 10007

Re:    *Coke v. Long Island Care at Home*, Dkt. No. 03-7666

Dear Ms. MacKechnie:

I represent appellees Long Island Care at Home, Ltd. and Maryann Osborne ("Appellees") in the above-referenced appeal.  On March 22, the Court granted Appellees' motion to stay issuance of the mandate in this appeal pending their application to the Supreme Court of the United States for a writ of *certiorari*.  A copy of the March 22nd order is included with this letter for your convenience.

Today, Appellees filed their petition for *certiorari* review in the United States Supreme Court.  Accordingly, pursuant to Rule 41(d)(2)(B) of the Federal Rules of Appellate Procedure, I write respectfully both to notify this Court of Appellees' filing and to request that Rule 41's automatic stay of this Court' mandate pending the Supreme Court's final disposition of the case be implemented.

Respectfully submitted,

Daniel S. Alter
*Attorney for Appellees*

cc:    Harold Craig Becker, Esq.
       *Lead Counsel for Appellant Evelyn Coke*

# EXHIBIT F

No. 04-1315
Title:                    Long Island Care at Home, Ltd., et al., Petitioners
                         v.
                         Evelyn Coke
Docketed:                March 31, 2005
Lower Ct:                United States Court of Appeals for the Second Circuit
  Case Nos.:             (03-7666)
  Decision Date:         July 22, 2004
  Rehearing Denied:      January 10, 2005

~~~Date~~~  ~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~~~~~

Mar 29 2005  Petition for a writ of certiorari filed. (Response due May 2, 2005)
Apr 29 2005  Brief amicus curiae of Home Care Association of New York State, Inc. filed.
Apr 29 2005  Brief amicus curiae of Home Care Council of New York City, Inc. filed.
Apr 29 2005  Brief amicus curiae of Continuing Care Leadership Coalition, Inc. filed.
Apr 29 2005  Brief amici curiae of City of New York and New York State Association of Counties
             filed.
May 2 2005   Brief amicus curiae of National Association for Home Care & Hospice filed.
May 2 2005   Brief of respondent Evelyn Coke in opposition filed.
May 10 2005  Reply of petitioners Long Island Care at Home, Ltd., et al. filed.
May 17 2005  DISTRIBUTED for Conference of June 2, 2005.

~~~Name~~~~~~~~~~~~~~~~~~~~~    ~~~~~~~Address~~~~~~~~~~~~~~~~~~~~    ~~~Phone~~~

**Attorneys for Petitioner:**
Daniel S. Alter                      Alter & Alter                              (212) 867-7777
                                     300 East 42nd Street, 10th Floor
                                     New York, NY  10017
Party name: Long Island Care at Home, Ltd., et al.

**Attorneys for Respondent:**
Harold Craig Becker                  25 E. Washington                           (312) 236-4584
                                     Suite 1400
                                     Chicago, IL  60602
Party name: Evelyn Coke

**Other:**
William A. Dombi                     Center for Health Care                     (202) 547-5262
                                     228 Seventh Street SE
                                     Washington, DC  20003
Party name: National Association for home Care & Hospice

John Longstreth            1735 New York Avenue NW      (202) 628-1700
                                     Suite 500
                                     New York, NY  20006
Party name: Home Care Association of New York State, Inc.


Peter G. Bergmann          Cadawalader Wickersham & Taft LLP      (212) 504-6000
                                     One Financial Center
                                     New York, NY  04292005
Party name: Home Care Council of New York City, Inc.


Aaron J. Schindel            Proskauer Rose LLP      (212) 969-3000
                                     1585 Broadway
                                     New York, NY  10036
Party name: Continuing Care Leadership Coalition, Inc.


Leonard J. Koerner         Corporation Counsel for the City of New York   (212) 788-1159
                                     100 Church Street
                                     New York, NY  10007
Party name: City of New York and New York State Association of Counties