UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

JURJITA VAICAITIENE, on behalf of herself and all     :     04-CV-9125 (RMB) (THK)
others similarly situated,                                                  (Electronically Filed)

                                  Plaintiff,

                                                    **AFFIDAVIT OF**
                -against-                                  **JAY M. CONOLLY**
                                                    **IN OPPOSITION TO**
PARTNERS IN CARE, INC.; and VISITING NURSE       **MOTION FOR NOTICE**
SERVICE OF NEW YORK, INC.,

                                   Defendants.

------------------------------------------------------------------x

STATE OF NEW YORK   )
                              : ss.:
COUNTY OF NEW YORK )

JAY M. CONOLLY, being duly sworn, deposes and says:

1. I am the Director of Human Resources for defendant Partners in Care, a position I have held since October 1, 2000. I have been with Partners in Care since July 1999. I am fully familiar with the facts and circumstances set forth herein.

2. Jurgita Vaicaitiene applied to Partners in Care for employment in August 2002. Following training at Partners in Care, Ms. Vaicaitiene was hired as a home health aide on September 6, 2002. She was separated from employment on March 19, 2003 following her resignation on March 12, 2003. Ms. Vaicaitiene was considered eligible for re-hire at that time. She was re-hired on May 30, 2003 and subsequently terminated on March 23, 2004. Due to the circumstances of her termination, she is not considered eligible for re-hire.

3. Only Partners in Care has the authority to hire and fire Partners in Care home health aides. Our parent company, Visiting Nurse Service Of New York ("VNSNY"), does not hire and fire Partners in Care home health aides or any of our employees. As noted above, Ms. Vaicaitiene was hired by Partners in Care. She was also trained by Partners in Care at our offices located at 1250 Broadway, New York, New York. She was finally fired by Partners in Care in a meeting that took place at our offices.

4. Partners in Care home health aides are supervised on a daily basis by Partners in Care employees whose sole function is to act as home health aide supervisors. The role of the Partners in Care supervisors is described in the Partners in Care "Employee Handbook for Home Health Aides" (the "Handbook"). A copy of a 2002 version of the Handbook is annexed to Ms. Vaicaitiene's affidavit as Exhibit B. Information regarding supervisors may be found at pages 9-10 and 24-25. The role of the supervisor is very different from the role of the so-called visiting nurse, which is also described in the Handbook at pages 25-26. To ensure the highest quality of care for patients and to comply with applicable regulations governing Medicare and Medicaid reimbursement and State Department of Health regulations governing certified home health agencies, a nurse will make compliance visits to a patient's home to ascertain that members of the team caring for the patient, including the home health aide, are following the Plan of Care. If there are concerns about a Partners in Care aide's performance, those concerns will be reported to the home health aide's supervisor at Partners in Care. The visiting nurse does not have daily supervisory responsibilities with respect to any home health aide. That is the function of Partners in Care.

5. Defendant VNSNY does not employ the nurses who visit patients in their homes. In most cases, the nurses are employees of Visiting Nurse Service Of New York Home

Care. Nurses employed by Partners in Care conduct home visits when a home health aide is in training or new to the company.

      6.      It is also up to Partners in Care to maintain payment records, to establish rates of payment for individual aides, and to pay the home health aides. As is evident from the exhibits attached to Ms. Vaicaitiene's affidavit, she was paid by Partners in Care and the policies pursuant to which she was paid are those of Partners in Care.

      7.      The Handbook annexed to Ms. Vaicaitiene's affidavit as Exhibit B and the page of the Handbook annexed as Exhibit D clearly describe the payment policies for home health aides. Ms. Vaicaitiene, like all home health aides employed by Partners in Care, was given a copy of the Handbook at the beginning of her employment by Partners in Care and she apparently retained it (at least until she turned it over to her attorney). The payment policy provides for overtime at the rate of time and a half minimum wage or payment at the regular hourly rate, whichever is greater.

      8.      Because Partners in Care is party to a Collective Bargaining Agreement with 1199 National Health and Human Service Employees Union, members of the bargaining unit covered by the Agreement are compensated in accordance with its terms by Partners in Care. Home health aides employed by Partners in Care in New York City are members of the bargaining unit. Ms. Vaicaitiene was such a member, as is indicated by her Dues Check-off Authorization form, a copy of which is annexed hereto as Exhibit A.

      9.      During the time Ms. Vaicaitiene was employed by Partners in Care, the Collective Bargaining Agreement required participation in, and contribution by, Partners in Care to a benefit fund, a training fund, and various benefits, such as vacation pay. The Agreement

also set forth minimum rates of pay per hour of work for home health aides, adjustments for experience, and, with respect to overtime, provided that "Employees who work in excess of forty (40) hours per week receive the greater of 1.5 times the applicable New York State Minimum Wage or their straight time hourly Incumbent Rate of Pay, whichever is greater."

10. All home health aides who are members of the bargaining unit at Partners in Care are paid by Partners in Care in accordance with the terms of the Collective Bargaining Agreement. A copy of Article X of the Collective Bargaining Agreement as it existed when Ms. Vaicaitiene was employed by Partners in Care, entitled "WAGES", is annexed hereto as Exhibit B.

11. Throughout the time she was employed by Partners in Care, Ms. Vaicaitiene was compensated in accordance with the terms of the Collective Bargaining Agreement. Among other things, she was compensated for overtime in accordance with its terms. It is simply untrue that Ms. Vaicaitiene was not paid overtime, as is evident even from review of the pay stubs annexed to her affidavit as Exhibit C. The "Ot/Diff" or overtime differential line item designates what was paid to Ms. Vaicaitiene in that pay period over and above payment for the hours worked at her regular rate of pay. Each pay stub attached to her affidavit shows that payment was made for overtime hours at the rate of time and a half minimum wage.

12. In sum, Ms. Vaicaitiene was compensated in accordance with her expectations at the time, in accordance with the terms of the Collective Bargaining Agreement negotiated by the Union, and in accordance with all applicable laws to the best of the knowledge

and understanding of her employer, Partners in Care. VNSNY did not hire her, did not pay her, did not terminate her, and did not supervise her.

WHEREFORE, I respectfully request that the Court deny plaintiff's motion.

_____
JAY M. CONNOLLY

Sworn to before me this
20th day of May, 2005.

_____
Notary Public

JENNIFER GORDON
Notary Public - State of New York
No. 02GO6096607
Qualified in New York County
My Commission Expires Aug. 4, 2007

-5-

# EXHIBIT A

# DUES CHECK OFF AUTHORIZATION

TO: _Partners in Care_  Copy.

You are hereby authorized and directed to deduct an initiation fee from my wages or salary as required by New York's Health & Human Service Union 1199 / SEIU, AFL-CIO as a condition of my membership; and in addit thereto, to deduct my membership dues from my wages or salary; and in addition thereto, to deduct each mont an amount equal to monthly membership dues to be applied to past unpaid dues until the entire amount of unpaid past dues has been deducted and paid; and to remit all such deductions to New York's Health & Hum Service Union 1199 / SEIU, AFL-CIO, 310 West 43rd Street, New York, NY 10036, no later than the tenth of each month immediately following the date of deduction, or pursuant to the date provided in the Collective Bargaining Agreement.

This deduction is a voluntary act on my part and shall be irrevocable for a period of one (1) year or until the termination date of the Collective Bargaining Agreement, whichever is sooner, and shall, however, renew itse from year to year unless I give written notice of the revocation of this authorization addressed to the 1199/ SE Dues and Membership Department at 310 West 43rd Street, New York, NY 10036.

☐ Signature: _Valcait_  Date: 9/6/02
Print Name: VALCAITIENE JURGITA
Social Security No.: 352 / 96 / 6457
Address: 8693 Bay Pkwy Apt 6  Bklyn
Zip Code: N.Y. 11214

Date walked in: 9/6/02

---

# POLITICAL ACTION FUND
# CHECK OFF AUTHORIZATION

TO: PARTNERS IN CARE

I hereby authorize New York's Health & Human Service Union 1199 / SEIU, AFL-CIO, to file this payroll deduction form on my behalf with my employer to withhold ☐ $5.00 per month or ☐ $_____ per month and forward that amount to the 1199 / SEIU Political Action Fund, 310 West 43rd Street, New York. 10036. This authorization is made voluntarily based on my specific understanding that:
1. The signing of this authorization form and the making of these voluntary contributions are not conditions o my employment by my Employer or membership in any Union;
2. I may refuse to contribute without any reprisal;
3. The $5.00 monthly contribution is only a suggestion, and I may contribute more or less without fear of favo or disadvantage from 1199 / SEIU or my Employer; and
4. The 1199 / SEIU Political Action Fund uses the money it receives for political purposes, including but n limited to, making contributions to and expenditures on behalf of candidates for federal, state, and local offices, and addressing political issues of public importance.

This authorization shall remain in full force and effect until revoked by me in writing.

☐ Signature: _____  Date: _____
Print Name: VALCAITIENE JURGITA
Social Security No.: ____ / ____ / ____
Address: _____
Zip Code: _____

Date given to employer: _____

# EXHIBIT B

(Article XXIV), to assign and reassign Home Health Aides to particular Patients, cases or geographic areas. Employees are required to comply with working on holidays and weekends as set forth in the Employee Handbook.

6. The Contracting Entity and/or Patient's preference is paramount and always governs. No Employee placed with a Patient can be bumped by a more senior Employee, placed or unplaced.

7. This Article shall not apply with respect to emergency or temporary replacement of Home Health Aides by temporary or "on-call" employees. For such purposes, the Employer shall utilize a listing of "on-call" employees irrespective that more senior Employees may be unplaced.

8. In the event of a conflict as to vacation scheduling, the more senior Employee shall be given preference, if practicable.

ARTICLE X

WAGES

1. Minimum Rates

The following minimum hourly rates of pay per hour of work by Home Health Aides covered by this Agreement shall be effective as of date of execution of this Agreement and on each subsequent anniversary of the date of execution of the Agreement, as follows:

|  | Date of Execution (1999) | First Anniversary (2000) | Second Anniversary (2001) | Third Anniversary (2002) |
|---|---|---|---|---|
| Base Rate (Upon Certification): | $ 6.15 | $ 6.35 | $ 6.55* | $ 6.75* |
| Precertification Training Rate (Prior to Certification): | $ 5.65 | $ 5.85 | $ 6.05* | $ 6.25* |
| Equivalent Precertification Rate** (Prior to Certification): | $ 5.95 | $ 6.15 | $ 6.35* | $ 6.55* |

(handwritten annotation: "TRAINEE" with bracket joining the 2000 column values)

---

\* These stated rates are subject to adjustment as set forth in Section 4 of this Article X.

\*\* A newly hired, but not certified, Home Health Aide who meets the criteria to be eligible to complete the competency evaluation program only, in lieu of training, as set forth in New York State Department of Health Memorandum 92-24 at page five (5) ("Equivalent Experience"), shall receive the Equivalent Precertification Rate rather than the Precertification Training Rate.

2. **Adjustment For Experience Upon Hire For Certified Home Health Aides**

(a) The hiring rate for Certified Home Health Aides with one or more years of experience in a Certified Home Health Aide position at time of hire shall be the Base Rate set forth in Section 1 of this Article X increased by the applicable cents per hour set forth in the following chart, which rate shall become the Employee's Incumbent Rate.

**Certified Home Health Experience Hiring Rate Differential**

| Years of Experience | Differential |
|---|---|
| One year, but less than two years of experience | $ 0.20 |
| Two years, but less than three years of experience | $ 0.35 |
| Three years, but less than four years of experience | $ 0.50 |
| Four years, but less than five years of experience | $ 0.70 |
| Five or more years of experience | $ 0.85* |

---

\*Hiring Rate not to exceed $7.50 per hour.

(b) The foregoing experience rate schedule is only applicable upon hire of a then Certified Home Health Aide. Thereafter, the Employee is only entitled to increases

11

to his/her Incumbent Rate in accordance with Section 5 of this Article X.

    3.    Adjustment For Experience Upon Certification For Home Health Aides With Equivalent Experience

(a) An Employee eligible for, and hired at the Equivalent Precertification Rate, with greater than two years of Equivalent Experience at time of hire shall, effective upon certification, receive an hourly rate equal to the Base Rate set forth in Section 1 of this Article X increased by the applicable cents per hour set forth for his/her Equivalent Experience at time of hire in the following chart, which rate shall become the Employee's Incumbent Rate upon certification.

| Equivalent Experience Hiring Rate Differential | |
| --- | --- |
| Years of Experience | Differential |
| Two years, but less than three years of Equivalent Experience | $0.15 |
| Three years, but less than four years of Equivalent Experience | $0.30 |
| Four years, but less than five years of Equivalent Experience | $0.50 |
| Five or more years of Equivalent Experience | $0.65 |

(b) The foregoing equivalent experience rate schedule is only applicable upon certification. Thereafter, the Employee is only entitled to increases to his/her Incumbent Rate in accordance with Section 5 of this Article X.

4. Notwithstanding Sections 1, 2 and 3, above, it is expressly agreed that $0.05 of the increase effective on the second anniversary of the date of execution of this Agreement (Year 2001) and $0.10 of the increase effective on the third anniversary of the date of the execution of this Agreement (Year 2002) in the Base, Precertification, Equivalent Precertification and Hiring Rates set forth in Sections 1, 2 and 3 of this Article X are contingent upon, and will not go into effect unless, the number of referrals of cases from hospitals to VNS for the provision of home health services to adult patients during the previous Calendar Year has

12

exceeded the number of such cases referred by hospitals in Calendar Year 1997 (i.e., 56,524).

5.  **Incumbent Rate Increases**

(a) Effective upon the date of execution of this Agreement, each Employee employed as of that date under this Agreement shall receive a fifteen (15) cents per hour increase in his/her hourly Incumbent Rate of pay, less any Merit Program Increase implemented for such Employee in Calendar Year 1999. The Employer's Merit Increase Program will be discontinued on such effective date.

(b) Effective on the First Anniversary of the date of execution of the Agreement (Year 2000), each Employee employed as of that date under this Agreement shall receive a twenty (20) cents per hour increase in his/her hourly Incumbent Rate of pay.

(c) Effective on the Second Anniversary of the date of execution of the Agreement (Year 2001), each Employee employed as of that date under this Agreement shall receive a fifteen (15) cents per hour increase in his/her hourly Incumbent Rate of pay. In addition, effective on that same date, if the number of referrals of cases from hospitals to VNS for the provision of home health care services to adult patients during Calendar Year 2000 has been equal to or greater than the number of such cases referred by hospitals in Calendar Year 1997 (i.e., 56,524), each Employee employed as of that date under this Agreement shall receive an additional five (5) cents per hour increase in his/her hourly Incumbent Rate of Pay.

(d) Effective on the Third Anniversary of the date of execution of this Agreement (Year 2002), each Employee employed as of that date under this Agreement shall receive a ten (10) cents per hour increase in his/her hourly Incumbent Rate of Pay. In addition, effective on that same date, if the number of referrals of cases from hospitals to VNS for the provision of home health care services to adult patients during Calendar Year 2001 has been equal to or greater than the number of such cases referred by hospitals in Calendar Year 1997

13

(i.e., 56,524), each Employee employed as of that date under this Agreement shall receive an additional ten (10) cents per hour increase in his/her hourly Incumbent Rate of Pay.

(e) Notwithstanding Section 5(a)-(d), above, any Employee whose Incumbent Rate is, or would become, $7.50 per hour or greater, shall receive in lieu of any increase over such $7.50 per hour rate, a lump sum bonus equal to the same cents per hour, i.e., cents per hour over $7.50 times the number of hours the Employee worked during the proceeding twelve (12) months, with fifty percent (50%) of the lump sum paid on the date hourly rate increases are implemented for Employees, and fifty percent (50%) paid six months thereafter.

6. Employees who are denied entry to a Patient's home shall be entitled to one (1) hour of pay at their regular Incumbent Rate of Pay provided that (a) the Employee reports the denial of entry to the Employer within one-quarter hour of its occurrence, and (b) the Employee receives the Employer's permission to leave the Patient's home. Employees will be paid for actual time if required by the Employer to remain at a specific location for more than one (1) hour.

7. Employees assigned to remain in a Patient's home for a full twenty-four (24) hours in a day ("Sleep-in Cases") shall receive twelve (12) hours of pay for each such day assigned.

8. Employees who work in excess of forty (40) hours per week receive the greater of 1.5 times the applicable New York State Minimum Wage or their straight time hourly Incumbent Rate of Pay, whichever is greater.

## ARTICLE XI

### HOURS

1. Due to the manner in which cases are referred to the Agency, there can be no guaranteed work day, week or year, or hours of work.

14