UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JURJITA VAICAITIENE, on behalf of herself and all others similarly situated,

Plaintiff,

- against -

PARTNERS IN CARE, INC.; AND VISITING NURSE SERVICE OF NEW YORK, INC.;

Defendants.

No. 04 Civ. 9125 (RMB)(THK)
(Electronically Filed)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR NOTICE**

LAW OFFICES OF KARL J. STOECKER
18 East 41st Street
New York, New York 10017
Telephone: (212) 818-0080

Attorneys for Plaintiff

**Preliminary Statement**

By this motion for notice, plaintiff seeks to apprise others who may have a claim for overtime against defendants of the pendency of this action and afford them opportunity to participate if they so choose. Issuance of notice at an early stage is imperative in FLSA collective actions because, unlike typical class actions, the statute of limitations continues to run against absent putative plaintiffs until they opt into the action. Any delay in the issuance of notice could result in claims becoming time-barred.

The Court is not now called upon to address the merits of plaintiff's claims nor even to determine whether those to whom the notice will be sent are, in fact, similarly situated to the plaintiff. It is well-settledd that consideration of the merits at this juncture would be inappropriate. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177 (1974)(court has no "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

The only "issue" raised by this motion is, essentially, whether plaintiff has made a modest showing that there may be others who were denied overtime by the defendants. Given that defendants, by their own admission, employ more than

3800 home health aides and the Court has before it defendant's written compensation policies which confirm its policy of denying overtime compensation to home health aids, this issue is easily resolved.

Rather than address the similarly situated standard, defendant's proffer a wholesale assault on the merits of plaintiff's claims based solely on the premise that the Second Circuit's Coke decision is, in defendant's words, "currently under review." This, of course, is incorrect. The Second Circuit has denied an application for rehearing and a petition for certiorari has been filed, but not yet ruled upon. Thus, at present Coke is viable law, with precedential value, and is not, as defendants assert, "under review." As discussed below, defendant's attenuated argument that "no mandate has issued" in Coke is irrelevant to its status *as precedent*, and, indeed, as controlling authority in this Circuit.

**Argument**

**I.**

**THE SECOND CIRCUIT'S COKE DECISION HAS PRECEDENTIAL VALUE**

Defendants' arguments address to the status of Coke conflates the doctrine of law of the case (the issue addressed in the criminal cases they cite at page 7 of their brief) with that of stare decisis. The cases cited by defendants hold only that an appellate decision is not binding "on the proceedings

below", i.e., does not become law of the case, until a mandate issues. United States v. Simmons, 923 F.2d 934 (2d Cir.), cert. denied, 500 U.S. 919, 956 (1991). Those cases, with the exception of United States v. Swan, 327 F. Supp.2d 1068 (D. Nebraska 2004), do not address the precedential value of an appellate decision in other cases, where a mandate has not yet issued. This critical distinction was discussed by the Court in Friel Prosthetics, Inc., v. Bank of America, 2005 WL 348263 *1 n.4 (D. Maryland Feb. 9, 2005), which held that a motion to stay a mandate affects only the parties to the case in which the mandate is stayed and has no effect on the precedential value of the appellate decision in other cases. See also Abukar, v. Ashcroft, 2004 WL 741759 *2 n.3 (D. Minn., March 17, 2004)(noting distinction).

A result other than that reached in Friel would do violence to the principles of equal treatment underlying the doctrine of stare decisis.[1] The Second Circuit issued its opinion in Coke on July 22, 2004 - more than ten months ago. Auto-citing Coke reveals no reversal and only that a petition for certiorari has been filed.[2] Thus for all intents and

---

[1] Even in Swan the court recognized that stare decisis, "does not draw its force from the policy that protects final judgments", but rather from "principles of stability and equal treatment underlying the development of legal doctrine." 327 F. Supp.2d at 1071 quoting 18 James Wm. Moore. Et al., Moore's Federal Practice § 131.13[3] (3d d. 2004).

[2] Even the Second Circuit docket available on PACER gives no indication that Coke is not yet viable. It reveals only that a motion to stay the mandate pending application to the Supreme Court for *certiorari* review was granted

purposes, Coke appears to be "good law." Only an individual with knowledge of the contents of the letter annexed as Exhibit E to the Chin affidavit could piece together that, technically, a mandate (which under ordinary circumstances issues automatically) has not yet issued.[3]  Defendant's approach thus ensures disparate treatment of similarly situated litigants. Those with inside knowledge of letters written to the clerk of the circuit court would have an advantage over out-siders whose thorough research revealed that Coke is "good law." This would do violence to the very principle of equal treatment underlying the doctrine of stare decisis.

      In sum, there is absolutely no indication that Fed. R. App. P. 41 was designed to place the precedential status of published appellate opinions in limbo for indefinite periods of time based on such nuts-and-bolts vagaries as whether a party who has moved for certiorari has sent a letter so advising the clerk of the circuit court.[4]  Unlike Swan, there is no prospect

---

and makes cryptic reference to the letter annexed as Exhibit E to the Chin Affidaivt which defendants contend triggers a continuation of the stay pursuant to Fed. R. App. P. 41(d)(2)(B). There is no indication on the face of the docket that the foregoing letter actually notifies the circuit clerk that a petition for certiorari has been filed thereby triggering a continuation of the stay. Thus neither Shepardizing, auto-citing or examining the docket sheet itself, would reveal that Coke is not yet viable precedent.

[3] Counsel for defendants in this action submitted an amicus brief to the Supreme Court in connection with the petition for certiorari in Coke and has apparently been coordinating its efforts with the defendants in that case. This would explain how Ms. Chin came to have knowledge of the contents of Exhibit E to the Chin affidavit. See Chin Affidavit, Exhibit F at 2.

[4] Rule 41's limited concern with technical, ministerial matters relating solely to the parties in the action at issue, is immediately apparent upon consideration of its principal provisions. Thus it provides, for example, that "[u]nless the court directs that a formal mandate issue, the mandate consists of a certified copy of the judgment, a copy of the

of the Second Circuit's reversing or withdrawing its well-considered opinion in Coke. The Coke defendants filed an application for rehearing and that application was accompanied by six motions for leave to file amicus briefs in support thereof. Chin Aff. ¶ 3. The Second Circuit denied all of these applications, thereby conclusively refuting any notion that it is inclined to reconsider its July 22, 2004, decision. Id.[5]

In any event, even in the unlikely event Coke is overturned by the Supreme Court, the notice plaintiff has requested would still be appropriate. As discussed in the Vaicaitiene Affidavit, plaintiff expended more than twenty percent of her time on non-exempt activities such that the "companionship services" exemption does not apply to her. 29 C.F.R. 552.6. Defendant's contention that plaintiff has not pled "a *claim* based on the 20% exception to the companionship services exemption" is a non-sequitor. Defts. Br. at 7 n.4 (emphasis added). FLSA exemptions are affirmative defenses to be pled and proved by the defendants. Schwind v. EW & Associates, Inc., 357 F.Supp.2d 691, 697 (S.D.N.Y. 2005). Plaintiff is not required to anticipate every affirmative defense defendants may chose to assert and to pled facts to overcome them in the

court's opinion, if any, and any direction about costs. The manifest purpose of a stay of the mandate is solely to suspend enforcement of any remedy granted *in the case at hand*, not to sow confusion about the state of the law by calling into doubt the precedential value of reported appellate opinions.

[5] The Second Circuit, of course, could have issued its decision in Coke as an unpublished opinion with no precedential value. That it choose not to do so indicates its intention to have it accorded precedential effect.

complaint. Here she has pled that she worked more than forty hours per week and was not paid overtime and that is enough.

Defendants cite Mike v. Safeco Ins. Co. of America, 274 F. Supp.2d 216 (D. Conn. 2003), for the proposition that determining the applicability of the "20% exception" to the compansionship services exemption would require "individualized showings" regarding plaintiff's "day-to-day" tasks, and that notice is therefore inappropriate.[6] The overwhelming weight of authority, however, holds otherwise. Courts routinely require the issuance of notice in FLSA collective actions in which the "white collar" or other exemptions are at issue. As the collection of authorities set forth in the recent case of Pendlebury v. Starbucks Coffee Co., 2005 WL 84500 at *3 (S.D. Florida, Jan. 3, 2005), suggests, the decision in Mike is an anomoly. See also Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 682 (D. Kansas 2004)(rejecting argument that exemption issue "unique to each employee" precludes certification as a collective action and notice); Jacobsen v. The Stop & Shop Supermarket Co., 2003 WL 21136308 *4 (S.D.N.Y 2003)(rejecting defendant's contention that factual dispute as to applicability of managerial exemption to plaintiff precludes collective action certification and notice); Camp v. The

[6] The executive, professional and administrative ("white collar") and other, exemptions only apply where an employee's "primary duty" is the performance of exempt work. 29 C.F.R. 541.700. The foregoing regulation establishes a 50 percent benchmark for the "primary duty" requirement noting that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id.

Progressive Corporation, 2002 WL 31496661 (E.D. La. Nov. 8, 2002)(notice appropriate in "white collar" exemption case); Bontempo v. Westwood One Broadcasting Services, Inc., 2002 WL 1925911 (N.D. Ill., May 3, 2002)(notice appropriate in "outside sales employee" exemption case where issue is whether plaintiff devoted more than 20% of his time to activities other than outside sales); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp.2d 1342, 1346-1351 (N.D. Georgia 2002)(notice appropriate in "white collar" exemption case where plaintiff's "primary duty" (time spent on various tasks) at issue); Richards v. Computer Sciences Corp. 2001 WL 34664162 *5 (D. Conn., Sept. 28, 2001)(court distinguishes Mike as a "unique" case and holds that notice is appropriate notwithstanding dispute as to applicability of "white collar" exemption).

  Indeed, courts have even certified "white collar" exemption cases as class actions under the much more stringent criteria of Fed. R. Civ. P. 23 notwithstanding that they turn on the "primary duty" (fifty precent) threshold and thus entail an examination amount of how class members spent their time on a day-to-day basis. See, e.g., McLaughlin v. Liberty Mutual Insurance Company, 224 F.R.D. 304 (D. Mass. 2004); In re Farmers Ins. Exch. Claims representatives' Overtime Pay Litigation, 2003 WL 23669376 * 5-6 (D. Oregon, May 19, 2003).

  Here, the only evidence before the Court indicates

that non-exempt tasks were part and parcel of plaintiff's job duties as a home health aide, such that she was not alone in performing non-exempt work which, provided it exceeds the 20 percent limitation of 29 C.F.R. 552.6., renders the "companionship services" exemption inapplicable. Vaicaitiene Aff. ¶¶ 4-5, 8-9 (attesting, among other things, that she spent approximately thirty (30) percent of her time on non-exempt tasks and that the task code form provided by defendants assigned codes for time spent on non-exempt tasks, including, non-patient-related general household work such as "clean[ing]", "grocery shopping", "laundry", "travel time" and other "non-personal" matters).

**II.**

**NOTICE FOR THE PRE-COKE TIME PERIOD IS APPROPRIATE**

As discussed above, plaintiff can prevail on her FLSA overtime claims regardless of whether Coke is reversed by the Supreme Court because she exceeded the twenty percent limitation of 29 C.F.R. 552.6 such that the companionship services exemption is not applicable. Accordingly there is no basis to limit the notice to the post-Coke time period.

Defendant's arguments addressed to the retroactivety of Coke, moreover, are inappropriate addressed to the merits of plaintiff's claims and are irrelevant to this motion. We nonetheless address them briefly below.

Assuming arguendo that Coke announced a "change" in the law (a proposition plaintiff vigorously contests)[7], the general rule is that such decisions apply retroactively. Harper v. Virginia Department of Taxation, 509 U.S. 86, 97 (1993). Mineo v. Port Authority of N.Y. & N.J., 779 F.2d 939, 943 (3rd Cir. 1986), upon which defendants principally rely, recognized the general rule:

> "[i]t is a time honored principle that courts will apply the law in effect at the time they decide a case. . . As a result, a recent decision is generally applied even to a dispute that arose prior to the Court's holding. This approach reinforces the rubric advanced by Blackstone "that judges do not make but merely 'discover' law."

Id. at 943 (citations omitted).

In Mineo the court went on to apply the limited exception recognized in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), which set forth a three-part analysis for determining the retroactive effect of new law in civil cases. Chevron, and thus Mineo, however, are no longer good law following the Supreme Court's decision in Harper, which impliedly, if not expressly, overruled Chevron. Harper held that "the legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has done so' must 'prevai[l] over any claim based on a

[7] Coke, of course, merely held that the Department of Labor's ("DOL") interpretation was inconsistent with the statute (FLSA), which has always required the payment of overtime to home health aides.

Chevron Oil analysis." 509 U.S. at 98 (quoting Judge Souter's majority opinion in James B. Beam Distilling Co. v. Georgia, 501 U.S. 529 (1991)).[8]

Accordingly, if consideration of the merits were appropriate now, Harper would mandate the retroactive application of Coke. At this juncture, however, the Court does not have to resolve the issue of Coke's retroactivity because that would entail a prohibited examination into the merits of plaintiff's claims and is beyond the limited scope of this motion for notice.

**III.**

**DEFENDANTS REMAINING ARGUMENTS ARE MERITLESS**

Defendants raise, but do not press, a smattering of additional arguments in opposition to plaintiff's motion, none of which have merit. First, defendants intimate, plaintiff is an inadequate "class representative" because she has not filed a consent form. Defts. Br. at 2, 10, 11. Apart from the fact that plaintiff is not acting as a "class representative" in this action, the named-plaintiff in an FLSA action is not required to file a consent form. Arias v. United States Service Industries,

[8] In any event, application of the Chevron analysis to the Second Circuit's decision in Coke would without doubt yield a determination that Coke should be applied retroactively. First, Coke did not announce a "new" principle of law. It merely held that a DOL "interpretation" of an existing law was erroneous. Second, non-retrospective operation of Coke will defeat Congress's purpose in enacting the FLSA. Finally, the effectuation of Congress' intention achieved by the retroactive application of Coke will not result in any "injustice or hardship" and defendants havn't articulated any on this motion.

Inc., 94 WL 193901 (D.D.C. May 4, 1994); Jeannine W. Wilkins v. University of Houston, 97 WL 1837 (S.D. Texas, November 22, 1977). In any event, plaintiff's submission of signed affidavits in this case clearly suffice in lieu of a consent form. Barrington v. Arkansas-Best Frieght System, Inc., 450 U.S. 728, 736 n.11 (1981)(assuming arguendo consent requirement applies it is satisfied by the submission of signed interrogatories).

Next defendants assert that plaintiff was "paid overtime in accordance with the provisions of the applicable Collective Bargaining Agreement." Defts. Br. at 3. This is irrelevant. It is well settled that a Collective Bargaining Agreement's ("CAB") compensation provisions do not trump the FLSA's overtime requirements and that plaintiff has an unqualified right to pursue her FLSA claims notwithstanding her status as a union member. Tran v. Tran 54 F.3d 115 (2d Cir. 1995).[9]

Next, defendants assert that plaintiff's pay-stubs indicate that she was paid "overtime" in compliance with both

[9] Next, defendants also note that Marshall v. Baptist Hospital, Inc., 473 F. Supp. 465 (M.D. Tenn. 1979), an opinion quoted by plaintiff's in her moving brief, was reversed by the Sixth Circuit. Plaintiff cited Marshall to attribute the source of quoted language. While it would have been proper to note Marshall's subsequent history, and plaintiff apologizes for this oversight, defendant's extended discussion of Marshall does not undercut the proposition that the applicability of 29 U.S.C. § 259(a)'s "safe harbor" is a question of fact which cannot be resolved on this motion. Equal Employment Opportunity Commission v. Home Insurance Co., 672 F.2d 252 *263-66 (2d Cir. 1982)(summary judgment on section 259(a) defense reversed). Contrary to defendants suggestions (Defts. Br. at 9) plaintiff does not now, and never has, contended that defendants are precluded from litigating the applicability of this defense at a trial in this action.

the CAB, the Employee Handbook and New York State law. Defendant then goes on to state, without qualification, that "Payment of overtime at 1.5 times minimum wage complies with New York State Law." Citing 12 N.Y.C.R.R. § 142-2.2. Defts Br. at 16-17. The later statement is false and defendant's "argument" in this regard is utterly disingenuous. The foregoing regulation, in fact, provides that employees must be paid 1.5 times their "regular rate" as calculated in accordance with federal law. It then goes even further than federal law in providing that exempt employees must be paid 1.5 times the minimum wage. Defendants' assertions regarding compliance with New York's overtime requirements beg the question of whether plaintiff is exempt - a hotly contested issue in this case which goes to the merits of plaintiff's claims and is not relevant to this motion.

Next, defendants assert that notice to employees of defendant Visiting Nurse Service of New York ("VNSNY") is inappropriate because, among other reasons (notwithstanding the representations on its web-site) it does not employ home health aides. Assuming – in light of defendants' sworn assertions - that VNSNY does not employ any home health aides other than though its subsidiary Partners in Care, plaintiff's request to sent notice to home health aides employed by VNSNY would appear to be moot. With regard to defendant VNSNY's status as a joint employer of plaintiff, however, there is clearly a factual issue

which cannot be resolved on, and is irrelevant to, this motion.

Defendants next assert that notice should be limited to persons employed with the last two years because the issue of defendant's wilfullness will undoubtedly be resolved in its favor. Defts. Br. at 16. The problem with this argument, and the reason it is routinely rejected and defendants do not cite any case so limiting notice, is because it creates the untenable situation of having to resend notice to "third-year" employees after their claims will in all liklihood be barred by the statute of limitations. Given that the issue of defendant's wilfullness can only be resolved at trial, exclusion of "third-year" employees would effectively deny them the opportunity to opt into the action before their claims are barred by the statute of limitations.

Finally, defendant contends that plaintiff has not shown she is similarly situated to other employees who were not paid overtime pursuant to the FLSA. Defts Br. at 12. The "similarly situated" standand is not so constrictive. Notice to all employees impacted by defendants' wrongful policy or practice of denying overtime pursuant to the FLSA is appropriate. Defendants are correct in asserting that plaintiff's have not identified any class of employees that they contend were not paid appropriate overtime other than home health aides. Nonetheless, if defendants are aware of any other

such employees or class or employees, they should be included among those receiving notice.

**Conclusion**

For all of the foregoing reasons, plaintiff respectfully requests that the Court grant its motion for notice and require the defendants to furnish the names and addresses of all non-exempt current and former employees of defendants who were not paid overtime at any time during the past three years.

Dated: New York, New York
May 27, 2005

LAW OFFICES OF KARL J. STOECKER

By:____________________________
Karl J. Stoecker (KS-6034)
18 East 41st Street
New York, New York 10017
Telephone: (212) 818-0080

.

