```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JURJITA VAICAITIENE, on behalf of    :
herself and all others similarly     :
situated,                            :
                                     :
              Plaintiff,             :   04 Civ. 9125 (RMB)(THK)
                                     :
                                     :   MEMORANDUM OPINION AND
        -against-                    :          ORDER
                                     :
                                     :
PARTNERS IN CARE, INC. and           :
VISITING NURSE SERVICE OF NEW YORK   :
INC.,                                :
                                     :
              Defendants.            :
                                     :
------------------------------------X
```
**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This action was brought pursuant to the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 207 et seq., New York Labor Law § 160, and 12 N.Y.C.R.R. § 142-2.2. Plaintiff Jurjita Vaicaitiene,[1] formerly employed by Defendant Partners in Care, Inc. ("Partners in Care") as a home health aide, alleges that she, and other employees of Defendants Partners in Care and Visiting Nurse Service of New York ("VNSNY"), the parent company of Partners in Care, did not receive required overtime compensation for hours worked in excess of forty hours per week.[2] Plaintiff moves for an order authorizing collective action, directing Defendants to

---

[1] The case was filed with Plaintiff's first name spelled as "Jurjita," but it is spelled "Jurgita" in her affidavit and other submissions.

[2] Defendant Partners in Care is a wholly owned subsidiary of Defendant VNSNY.

provide the names and addresses of similarly situated current and former employees, and authorizing notice to be mailed to such individuals for the purpose of obtaining their written consent to join this action as plaintiffs. Defendants contend that class notice is premature, and that the scope and time frame of the proposed notice is overly broad.

I. <u>Applicable Legal Standards</u>

A. <u>FLSA Employer Requirements</u>

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee[ ] compensation for all work or employment engaged in by employees covered by the Act.'" <u>Reich v. New York City Transit Auth.</u>, 45 F.3d 646, 648-49 (2d Cir. 1995) (quoting <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590, 602, 64 S. Ct. 698, 705 (1944)).

The FLSA requires employers to pay overtime compensation for "employment in excess of [forty hours per week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Certain employees are exempt from the Act's overtime requirements, including, "any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in

domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). "[B]ecause the FLSA is a remedial act, its exemptions . . . are to be narrowly construed," and "an employer bears the burden of proving that its employees fall within an exempted category of the Act." Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991)(citations omitted).

In Coke v. Long Island Care at Home, Ltd., 376 F.3d 118 (2d Cir. 2004), the Second Circuit reviewed two challenged regulations promulgated by the Department of Labor ("DOL") that define and interpret the "companionship services" exemption in § 213(a)(15). These regulations are relevant to the instant action. The first regulation defines the exemption as including:

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6. The Court concluded that the regulation was not arbitrary, capricious, or manifestly contrary to the statute, and thus was enforceable. See Coke, 376 F.3d at 129.

The second regulation applied the exemption to "[e]mployees who

3

are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a). The Court held that the regulation is unenforceable because it is inconsistent with Congress's likely purposes in enacting the 1974 amendments to the Act, other regulations, and other agency positions over time.[3] See Coke, 376 F.3d at 133.  The Court found, moreover, that the DOL "does not proffer valid reasoning for § 552.109(a)'s enforceability, evidencing a lack of thorough consideration." Id.  The Court affirmed the district court's decision in part, vacated in part, and remanded the case for further proceedings. See id. at 135.

On March 22, 2005, the Second Circuit granted a motion to stay the mandate in Coke, pending application to the Supreme Court for certiorari review. (See Declaration of Kathy H. Chin, Esq., dated May 20, 2005 ("Chin Decl.") ¶ 4, Exs. B & C.)  On March 29, 2005, appellees filed a petition for certiori in the Supreme Court. See Long Island Care at Home, Ltd. v. Coke, 73 U.S.L.W. 3603 (Mar. 29, 2005)(No. 04-1315).

---

[3] Although the Court found that, with regard to 29 C.F.R. § 552.6, the agency should be accorded the highest deference standard available to agencies, pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984), it found that § 552.109(a) only entitled the agency to the more limited level of deference established in Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161 (1944), and reaffirmed in United States v. Mead Corp., 533 U.S. 218, 121 S. Ct. 2164 (2001). See Coke, 376 F.3d at 121.

4

B.  <u>Collective Action for Similarly Situated Plaintiffs</u>

An employee claiming that the employer has violated the FLSA overtime provisions may bring a lawsuit under Section 216(b) of the FLSA which provides, in pertinent part, that:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"[U]nder the FLSA, potential plaintiffs must 'opt-in' to a collective action to be bound by the judgment (and to benefit from it)." <u>Hoffman v. Sbarro, Inc</u>., 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  A court has the discretionary power to authorize notification to "similarly situated" potential plaintiffs and to direct an employer defendant to disclose the names and addresses of the relevant parties.  <u>See</u> <u>Patton v. The Thomson Corp.</u>, 364 F. Supp. 2d 263, 266 (S.D.N.Y. 2005)(citing <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 169, 110 S. Ct. 482, 485 (1989); <u>Braunstein v. E. Photographic Labs., Inc.</u>, 600 F.2d 335, 336 (2d Cir. 1979)). Sending of notice to similarly situated individuals "comports with the broad remedial purpose of the Act, . . . as well as with the interest of the courts in avoiding multiplicity of suits." <u>Braunstein</u>, 600 F.2d at 336; <u>see also</u> <u>Hoffman</u>, 982 F. Supp. at 262 ("[C]ourts have endorsed the sending of notice early in the

proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.")

The requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to the approval of a collective action under the FLSA, and thus "no showing of numerosity, typicality, commonality and representativeness need be made." Foster v. Food Emporium, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000). Rather, in deciding whether to authorize class notice in an FLSA action, the Court "need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Hoffman, 982 F. Supp. at 261. "The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted." Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995). Plaintiffs may meet this burden by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Foster, 2000 WL 1737858, at *1 (quoting Hoffman, 982 F. Supp. at 261). A court must determine whether there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." Hoffman, 982 F. Supp. at 262.

"The Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists." Krueger v. New York Tel. Co., Nos. 93 Civ. 0178 & 93 Civ. 0179

(LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993); see also LeGrand v. Educ. Mgmt. Corp., No. 03 Civ. 9798 (HB)(HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004)("To the extent that defendants are attempting to argue the merits of the case, they are raising an issue that is not material to the current application."). Thus, "[w]hether the positions the Plaintiff held were exempt is not an issue when deciding whether to authorize notice in an FLSA action." Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003). Even if later in the proceedings "plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [the] case." Krueger, 1993 WL 276058, at *2 (emphasis in original); see also Patton, 364 F. Supp. 2d at 268 (authorization of notice "does not prejudice the defendants precisely because it is preliminary . . .[and] may be revisited if it later appears, after appropriate discovery, that the additional plaintiffs . . . are not similarly situated to [the named plaintiff]").

II.  Defendants' Claim that Notice is Premature

Defendants argue that the instant motion is premature since the only basis for Plaintiff's claim to being non-exempt from the Act is the Coke decision, which is not yet controlling. Defendant argues that Coke's precedential value has not taken effect because,

7

pursuant to Rule 41(d)(2)(B) of the Federal Rules of Appellate Procedure, the filing of the petition for certiorari, and the notification of the circuit clerk, effects a continuation of the stay of the mandate until final disposition by the Supreme Court.[4] (See Chin Aff. ¶ 5, Exs. D & E.)

Defendants cite to United States v. Simmons, 923 F.2d 934 (2d Cir. 1991), to support the proposition that "[a] Court of Appeals decision does not become effective until its mandate issues." Id. at 956. However, Simmons merely addressed the question of whether, in the absence of a mandate, a decision constituted the "law of the case" with respect to the specific parties involved. Id. It did not address the case's precedential value. A Second Circuit decision may have precedential value even in the absence of the Court's mandate, as occurs when a case becomes moot before a mandate is issued. See, e.g., United States v. Doe (In re Grand Jury Investigation), 399 F.3d 527, 529 n.1 (2d Cir. 2005)("We generally have discretion . . . to leave our order intact where the circumstances leading to mootness occur after we file our decision

---

[4] Although Defendants bear the burden of establishing a plaintiff's exemption from the Act, the Coke decision appears to be the primary basis upon which Plaintiff would assert she is non-exempt. However, in the event that Coke is reversed by the Supreme Court, Plaintiff may also have a claim under 29 C.F.R. § 552.6, based on her assertions that more than twenty percent of her employment consisted of general household work. In that event, the Court could determine whether the other plaintiffs who have joined the action are still similarly situated to Plaintiff, by having § 552.6 non-exempt status.

but before the mandate has issued"); Russman v. Bd. of Educ., 260 F.3d 114, 122 n.2 (2d Cir. 2001)("[T]he public value of settled precedent may also militate against vacatur . . . [which is] an important consideration when a [Second Circuit] case becomes moot before the Supreme Court"); Mfrs. Hanover Trust Co. v. Yanakas, 11 F.3d 381, 385 (2d Cir. 1993) (denying motion to vacate the Court's decision, before a mandate was issued, because, "once such a decision has been rendered, [the Court] decline[s] to allow [the parties] to dictate . . . whether the precedent it sets will remain in existence"); United States v. Nezaj, 655 F. Supp. 1176, 1179 (S.D.N.Y. 1987) (where the Second Circuit stayed its mandate pending expected resolution before the Supreme Court, court finds that "whether or not [the decision] controls as precedent, it is mightily persuasive, both in terms of its substance and its source"). In fact, the District Court (Berman, J.) previously denied Defendants' request to file a motion to dismiss, in view of the Second Circuit's ruling in Coke. (See Memorandum-Endorsed Order, dated Mar. 2, 2005.)

In any event, as discussed, this Court need not determine the ultimate merits of the underlying claims in order to grant a motion for class notice intended to facilitate case management. The Coke decision at least provides some support for Plaintiff's claim that she and others similarly situated were unlawfully deprived of overtime compensation.

III. <u>Plaintiff's Proposed Notice to Potential Plaintiffs</u>

Plaintiff requests that the Court direct notice of this action to the following "similarly situated" individuals:

> All non-exempt current and former employees of Partners in Care and Visiting Nurse Service of New York who were not paid overtime at any time during the past three years.

(<u>See</u> Pl.'s Memorandum of Law in Support of Motion for Notice, at 1.)

Plaintiff was employed by Defendant Partners in Care as a home health aide from approximately September 2002 through March 2004. (<u>See</u> Affidavit of Jurgita Vaicaitiene, dated Apr. 20, 2005 ("Vaicaitiene Aff.") ¶ 1.) Plaintiff's employment was terminated on March 23, 2004, and, due to the circumstances of her termination, she is "not considered eligible for re-hire." (Affidavit of Jay M. Conolly, Director of Human Resources for Partners in Care, dated May 20, 2005 ("Conolly Aff.") ¶ 2). As a home health aide, Plaintiff was responsible for the personal and medical care of VNSNY patients at their homes. (<u>See</u> Vaicaitiene Aff. ¶¶ 2-3 & 6.) Plaintiff claims that approximately 30% of her overall work with VNSNY patients consisted of general household work. (<u>See</u> <u>id.</u> ¶ 4.) Plaintiff claims that she "sometimes worked substantial amounts of overtime, i.e., hours in excess of forty per week," but was not paid the required amount of overtime compensation under the FLSA, of one and one-half times her regular wage rate. (<u>Id</u>. ¶ 10.) Plaintiff has provided several pay stubs

10

documenting that she was only paid one and one-half times the minimum wage rate for hours in excess of forty hours. (See Ex. C to Vaicaitiene Aff; see also Conolly Aff. ¶ 11.) The payment of this rate is a Partners in Care policy, as reflected in the "Employee Handbook for Home Health Aides":

> Staff will receive overtime pay, one and a half times (1.5 x) minimum wage or will receive payment at the regular hourly rate of pay (whichever is more) for all hours worked in excess of forty (40) hours during the week.

(See Partners in Care Employee Handbook for Home Health Aides ("Employee Handbook"), at 23, Ex. B to Vaicaitiene Aff.) Defendants concede that the Employee Handbook "clearly describe[s] the payment policy for home health aides," and that all home health aides at Partners in Care were given a copy of the policy at the commencement of their employment. (Conolly Aff. ¶ 7.)

Plaintiff has thus provided sufficient evidence in her affidavit and payroll records from which a jury could conclude that she was employed as a home health aide by an employer or agency other than the family or household using the services, and thus was non-exempt under the FLSA. Plaintiff has established that she routinely worked in excess of forty hours per week without overtime compensation that met FLSA requirements for non-exempt employees.[5]

---

[5] Defendants argue that Plaintiff "was paid overtime" in compliance with New York State Law, under 12 N.Y.C.R.R. § 142-2.2, because she was paid at one and one-half times the minimum wage rate. However, the regulation only permits such an overtime rate for exempt employees. For non-exempt employees, an employer is required to pay a wage rate of "one and one-half times the employee's regular rate." 12 N.Y.C.R.R. § 142-2.2. In addition, Defendants argue that their policy was governed by the Collective Bargaining Agreement negotiated by Plaintiff's Union. (See

11

Plaintiff has also demonstrated that she, and other home health aides employed by Partners in Care, were subject to a common policy or plan which may violate the FLSA overtime requirements.

   A.  Scope of the Notice

Defendants argue that the proposed notice is overly broad and that Plaintiff has not articulated a basis upon which to extend notice to "all non-exempt employees" of Partners in Care and VNSNY. The Court agrees. Plaintiff's affidavit and supporting documents, including the Employee Handbook, concern home health aides employed by Partners in Care.

Plaintiff has sufficiently shown that a "factual nexus" exists between her claims and other home health aides at Partners in Care who worked overtime hours. Plaintiff has offered evidence indicating that she may not have been properly compensated for her overtime hours, in violation of FLSA requirements for non-exempt employees, as reflected in Partners in Care's written policy for home health aides. Defendants have conceded that the policy applies to all home health aides at Partners in Care. Plaintiff has thus met her modest burden of demonstrating that there are similarly situated potential plaintiffs who worked as home health aides at Partners in Care.[6]  See Patton, 364 F. Supp. 2d at 267

---

Connoly Aff. ¶¶ 8-12.)  However, the Supreme Court has held that "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740-41, 101 S. Ct. 1437, 1445 (1981).

   [6] Although Plaintiff has not submitted evidence that other home health aides also worked hours in excess of forty hours per week, Defendants do not argue that she is atypical in that

(granting motion for notice because "[i]f [plaintiff] has a viable FLSA claim against [defendant] as the result of its classification of her position [as exempt from the overtime requirement], it is likely that there are other similarly situated employees who have a similarly viable claim"); Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB)(RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)(granting motion for notice where "substantial allegations by plaintiffs that defendants' actions violated the FLSA, as well as an admission by defendants that such actions reflect a company-wide policy, sufficiently demonstrate a factual nexus between plaintiffs' situation and other potential class members"); Gjurovich, 282 F. Supp. 2d at 104 ("factual nexus" established where the plaintiff identified current or former employees who held the same or similar positions and also "may not have received overtime compensation if he or she worked in excess of forty hours each week"); Harrington v. Education Mgmt. Corp., No. 02 Civ. 0787(HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002)(plaintiff satisfied his "modest preliminary burden" by stating in an affidavit that "he was regularly denied overtime pay, [and] his supervisors informed him that it was the defendants' policy not to pay [employees in his position] overtime compensation").

However, Plaintiff has provided no evidence that other categories of Defendants' employees are similarly situated to her.

---

regard. Moreover, the proposed notice only concerns potential plaintiffs who were "not paid overtime." Potential plaintiffs who did not work overtime hours during the relevant period, will either self-identify as being ineligible to "opt-in," or will be identified and excluded at an early stage in the litigation.

Plaintiff argues that VNSNY employees should be included in the notice because VNSNY and Partner in Care operate as a "joint employer," since Partners in Care is a subsidiary of VNSNY, and VNSNY nurses oversee the work of Partners in Care home health aides. Although the relationship between the two Defendant employers and Plaintiff may be relevant to the question of which entity may be ultimately liable for FLSA violations, if any, it is not necessarily relevant to the question of how to define the group of similarly situated potential plaintiffs. VNSNY does not employ any home health aides, and all VNSNY home health aide services are provided by Partners in Care on a contract basis. (See Affidavit of Marian Haas, Director of Human Resources, VNSNY Home Care, dated May 20, 2005 ("Haas Aff.") ¶ 5.) Visiting nurses employed by VNSNY Home Care, another subsidiary of VNSNY, meet with home health aides to review a patient's "Plan of Care," but do not supervise and control home health aides' work schedules or other terms or conditions of employment. (See id. ¶ 3.) Concerns related to a home health aide's work performance are directed to his or her supervisor at Partners in Care. (See Connolly Aff. ¶ 4.) Moreover, Plaintiff has failed to demonstrate that the payment policies at VNSNY are identical to those at Partners in Care.

Because Plaintiff has not demonstrated that there is a commonality between her and VNSNY employees, the notice should not extend to VNSNY employees.

B. Time frame for the Notice

Defendants argue that the notice should not include employees

14

who worked overtime prior to the Coke decision, because it would be inequitable for the decision to be applied retroactively to employers who had reasonably relied on a regulation later held unenforceable. They assert that they relied on the DOL regulations set forth in 29 C.F.R. §§ 552.6 and 552.109(a), and that they should receive the benefit of the absolute defense accorded to an employer under the FLSA "if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the [Wage and Hour Division of the Department of Labor] . . . [which is subsequently] modified or rescinded." 29 U.S.C. § 259(a). Defendants also argue that the proposed collective action is "fatally flawed" because Plaintiff's employment was terminated before the Coke decision, making her an "inadequate class representative."[7]

---

[7] In addition, Defendants argue that Plaintiff's failure to file a form consenting to be a party to this action, contributes to the conclusion that she is an "inadequate class representative." 29 U.S.C. § 216(b) requires employees who wish to become parties to an FLSA suit to file a consent form with the court. However, Defendants have not provided any support to suggest that a named plaintiff is required to file such a form before the Court may authorize notice to potential plaintiffs, and authority indicates otherwise. See Barrentine, 450 U.S. at 736 n.11, 101 S. Ct. at 1443 (29 U.S.C. § 216(b) is satisfied where plaintiffs individually signed at least two sets of interrogatories); Arias v. United States Serv. Indus., Inc., No. 93.2261, 1994 WL 193901, at *1 (D.D.C. May 4 1994)(named plaintiffs need not file consent forms where they "have hired a lawyer to file a complaint on their behalf, . . . clearly indicat[ing] their consent to suit") (internal quotations omitted). Moreover, if any question exists as to whether Plaintiff consents to this action, it should be clear from her affidavit stating that she is "the plaintiff in this action" that she intends to participate in the lawsuit. (See Vaicaitiene Aff. ¶ 1.)

15

"When [a court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect . . . as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Margo v. Weiss, 213 F.3d 55, 60 (2d Cir. 2000)(quoting Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993)). "[I]t is the general rule of long standing that judicial precedents normally have retroactive as well as prospective effect." Id. (quoting Welyczko v. U.S. Air, Inc., 733 F.2d 239, 240 (2d Cir. 1984))(internal quotation marks omitted). This rule is subject to "some exception[s], [where] courts may shape relief in light of disruption of important reliance interests or the unfairness caused by unexpected judicial decisions." Id. at n.2 (quoting Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 761-62, 115 S. Ct. 1745, 1752 (1995)(Kennedy, J., concurring)). However, issues of retroactivity — whether the employer actually violated the law or can satisfy an affirmative defense — go to the merits of the case, and are not appropriate for adjudication at this stage of the litigation. Moreover, as discussed, Plaintiff and the putative class may have valid FLSA claims regardless of the ruling in Coke. See note 4, supra. Accordingly, since there is a possibility that Coke will be applied retroactively, and Plaintiff and similarly situated individuals have potential claims which are not dependent on the Coke decision, notice should be given to home health aides who were employed both before and after the Coke decision.

Defendants further argue that providing notice to home health aides employed by Partners in Care during the past three years is inappropriate, as it conflicts with the FLSA statute of limitations. FLSA claims must be commenced "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In her Complaint, Plaintiff alleges that Defendants "knew or willfully and/or recklessly disregarded that its conduct . . . violated the FLSA." (Complaint ¶ 21.) A violation of the FLSA is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 1681 (1988).

Whether Defendants violated the FLSA, and whether they acted willfully, are issues involving the merits of the action, which cannot be resolved at this stage. See Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) ("[W]hether the defendants knew or recklessly disregarded the fact that a failure to pay [the plaintiffs] overtime violated the FLSA . . . is a disputed issue of fact and must be decided by a jury.") However, the statute of limitations is of concern at this stage because the limitations period for potential plaintiffs is only tolled after they "opt-in" to the case. See Hoffman, 982 F. Supp. at 260. If the Court were to later determine that Defendants acted willfully or recklessly, then those plaintiffs whose claims

arose between two and three years prior to the opt-in deadline, could find that their claims are time-barred if they are not included in the initial notice and given an opportunity to opt-in to the action as promptly as possible. Accordingly, in the interest of reaching all similarly situated potential plaintiffs, the notice should extend to those employed up to three years prior to this Opinion. See Patton, 364 F. Supp. 2d at 268 (granting notice to plaintiffs employed within last three years where Plaintiff alleged willful violation of the FLSA, in order to "help to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case"); Jacobsen v. Stop & Shop Supermarket Co., 02 Civ. 5915 (DLC), 2003 WL 21136308, at *4 (S.D.N.Y. May 15, 2003) (granting notice to employees who worked three years preceding the lawsuit, where plaintiff had not yet presented sufficient evidence of willful violations, since "he has not yet had the full discovery that will accompany certification of the class"); Harrington v. Educ. Mgmt. Corp., No. 02 Civ. 0787(HB), 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002) ("It would be premature at this juncture to reach a determination as to whether the defendants' violations, if any, have been willful and I see no reason to limit discovery on this issue.").

## CONCLUSION

For the reasons set forth above, the Court authorizes Plaintiff to send notice of the pending collective action to the class of similarly situated potential plaintiffs, defined as:

18

All current and former home health aide employees of Partners in Care who, during the three years preceding the date of this Opinion, worked in excess of forty hours per week and were not paid overtime at the rate of one and one-half times their regular wage.

Defendants are directed to furnish to Plaintiff the names and addresses of the class of potential plaintiffs, as defined, within thirty days of this Opinion.

As Plaintiff has yet to provide the Court with the proposed notice, it should promptly do so after attempting to reach an agreement with Defendants on its precise content.

SO ORDERED.

                                                                     THEODORE H. KATZ
                                     UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2005
New York, New York